# No. 25-11

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

---

STATE OF CONNECTICUT,

*Plaintiff-Appellee*,

v.

3M COMPANY,

*Defendant-Appellant*,

EIDP, INC., DUPONT DE NEMOURS, INC., CHEMOURS COMPANY,
CHEMOURS COMPANY FC, LLC, CORTEVA, INC.,

*Defendants*.

---

On Appeal from the United States District Court
for the District of Connecticut, No. 3:24-cv-00239

---

**OPENING BRIEF FOR
DEFENDANT-APPELLANT 3M COMPANY**

---

Paul D. Clement
Nicholas A. Aquart*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Supervised by principals of the firm
who are members of the Virginia bar.

Lauren R. Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
lgoldman@gibsondunn.com

*Counsel for 3M Company*

(Additional counsel listed on inside cover)

Amir C. Tayrani
Zachary Tyree
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, DC 20036
(202) 955-8500
atayrani@gibsondunn.com
ztyree@gibsondunn.com

*Counsel for 3M Company*

## DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1, Defendant-Appellant 3M Company states that it is a publicly traded corporation that does not have any parent corporation.  No publicly held corporation owns 10% or more of 3M Company's stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................1

STATEMENT OF JURISDICTION.................................5

STATEMENT OF THE ISSUE......................................5

STATEMENT OF THE CASE........................................5

    A.    PFAS and MilSpec AFFF ......................................5

    B.    The AFFF Multidistrict Litigation................................7

    C.    The State's Two Suits ............................................8

SUMMARY OF ARGUMENT ..........................................12

STANDARD OF REVIEW ...............................................17

ARGUMENT .....................................................................17

    I.    3M Is Undisputedly A Person That Acted Under Federal Authority. ........................................19

    II.    This Suit Relates To Actions 3M Took Under Color Of Federal Office.................................................20

        A.    3M Has Plausibly Alleged A Nexus Between This Suit And Its Production Of MilSpec AFFF For The U.S. Military.................................................21

            1.    The State Seeks Recovery In This Case For Purported Harm At Sites With Alleged PFAS Contamination Commingled From Both MilSpec AFFF And Non-AFFF Sources. ....................................23

            2.    Commingled PFAS From Various Sources Are Indistinguishable.......................................25

            3.    A Federal Court Must Decide The Causal Source Of The Alleged Contamination. ....................................26

B.     The State's Disclaimer Cannot Sever This Suit's Connection To MilSpec AFFF....................................................28

         1.     The Disclaimer Rests On A False Premise, As Courts Have Held In Nearly Identical Circumstances.........................................................................28

         2.     The Disclaimer Is Simply Artful Pleading. ...................37

         3.     The District Court's Reasoning Is Flawed. ...................39

III.     3M Has Asserted A Colorable Federal Defense. ...............................48

CONCLUSION ...............................................................................................52

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Agent Orange Prod. Liab. Litig.*,
  517 F.3d 76 (2d Cir. 2008) ...............................................................52

*In re Agent Orange Prod. Liab. Litig.*,
  818 F.2d 187 (2d Cir. 1987) .............................................................52

*Agyin v. Razmzan*,
  986 F.3d 168 (2d Cir. 2021) .................... 2, 17, 19, 20, 21, 36, 40, 41, 47, 48, 49

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
  357 F. Supp. 3d 1391 (J.P.M.L. 2018) ...........................................7, 8

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
  2022 WL 4291357 (D.S.C. Sept. 16, 2022) .....................................50

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
  2024 WL 1470056 (D.S.C. Feb. 29, 2024).......................................47

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................19

*Baker v. Atl. Richfield Co.*,
  962 F.3d 937 (7th Cir. 2020) .................. 3, 14, 22, 26, 30, 32, 33, 34, 41, 42, 45

*Boyle v. United Techs. Corp.*,
  487 U.S. 500 (1988).......................................................................8, 49

*In re Commonwealth's Motion to Appoint Counsel Against
  or Directed to Def. Ass'n of Phila.*,
  790 F.3d 457 (3d Cir. 2015) .......................................................21, 22

*Cuomo v. Crane Co.*,
  771 F.3d 113 (2d Cir. 2014) ...................... 8, 14, 22, 28, 29, 33, 48, 51

*Curiale v. A. Clemente, Inc.*,
  2023 WL 4362722 (D.N.J. July 5, 2023) .........................................35

iv

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Dart Cherokee Basin Operating Co. v. Owens*,
  574 U.S. 81 (2014)..............................................................18, 40, 41, 49

*Devlin v. Transp. Commc'ns Int'l Union*,
  175 F.3d 121 (2d Cir. 1999) ...................................................................37

*Federated Dep't Stores, Inc. v. Moitie*,
  452 U.S. 394 (1981)................................................................................37

*Giovinco v. Pullen*,
  118 F.4th 527 (2d Cir. 2024) .................................................................17

*Isaacson v. Dow Chem. Co.*,
  517 F.3d 129 (2d Cir. 2008) ................................ 18, 19, 20, 21, 22, 28

*Jefferson Cnty. v. Acker*,
  527 U.S. 423 (1999)...........................................................................22, 34

*Kircher v. Putnam Funds Tr.*,
  547 U.S. 633 (2006)................................................................................18

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*,
  590 U.S. 405 (2020)................................................................................38

*Maine v. 3M Co.*,
  2023 WL 4758816 (D. Me. July 26, 2023) .........................................47

*Maryland v. 3M Co.*,
  130 F.4th 380 (4th Cir. 2025) ............... 1, 3, 4, 14, 15, 16, 17, 18, 22, 26,27, 28,
    29, 30, 31, 33, 36, 37, 40, 41, 42, 43, 46, 48

*Maryland v. 3M Co.*,
  2024 WL 1152568 (D. Md. Feb. 12, 2024).........................................47

*Moore v. Elec. Boat Corp.*,
  25 F.4th 30 (1st Cir. 2022)....................................................................49

*Nessel v. Chemguard, Inc.*,
  2021 WL 744683 (W.D. Mich. Jan. 6, 2021).................................35, 45

# TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*New Hampshire v. 3M Co.*,
--- F.4th ---, 2025 WL 926229 (1st Cir. Mar. 27, 2025) ....................................42

*New Hampshire v. 3M Co.*,
665 F. Supp. 3d 215 (D.N.H. 2023)........................................................................47

*Puerto Rico v. Express Scripts, Inc.*,
119 F.4th 174 (1st Cir. 2024)................................... 15, 22, 34, 35, 36, 37, 43, 46

*Illinois ex rel. Raoul v. 3M Co.*,
111 F.4th 846 (7th Cir. 2024) .............................. 3, 14, 22, 26, 30, 31, 32, 33, 41

*Illinois ex rel. Raoul v. 3M Co.*,
693 F. Supp. 3d 948 (C.D. Ill. 2023) .....................................................................47

*Sacerdote v. Cammack Larhette Advisors, LLC*,
939 F.3d 498 (2d Cir. 2019) ...........................................................................38, 39

*Sawyer v. Foster Wheeler LLC*,
860 F.3d 249 (4th Cir. 2017) .................................................................................42

*Stark v. Starr*,
94 U.S. 477 (1877)..................................................................................................39

*Connecticut ex rel. Tong v. Exxon Mobil Corp.*,
83 F.4th 122 (2d Cir. 2023) ...................................................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)................................................................................................27

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007)....................................................................................18, 20, 48

*Willingham v. Morgan*,
395 U.S. 402 (1969).................................................... 4, 17, 18, 28, 29, 47, 48, 51

**Statutes**

28 U.S.C. § 1442......................................... 1, 5, 9, 13, 17, 19, 20, 21, 28, 29, 50, 52

28 U.S.C. § 1446....................................................................................................42

# TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

28 U.S.C. § 1447 ...................................................................5

**Regulation**

48 C.F.R. § 9.203(a) ..............................................................6

**Other Authorities**

Edward S.K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* (Oct. 1980).........50

EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* (Nov. 4, 2002) ............................................................50

U.S. Navy, *Military Specification: Fire Extinguishing Agent, Aqueous Film-Forming Foam (AFFF) Liquid Concentrate, Six Percent, for Fresh and Sea Water* 3 (Nov. 21, 1969) .................................................6

## INTRODUCTION

This appeal arises from the State of Connecticut's attempt to evade federal jurisdiction by bringing two suits—one in federal court, and one in state court—to recover for a single, indivisible injury. Connecticut is not the first state to try this gambit, and the Fourth Circuit just rejected Maryland's and South Carolina's efforts to divide claims in order to evade federal jurisdiction. *See Maryland v. 3M Co.*, 130 F.4th 380, 389–92 (4th Cir. 2025). As the Fourth Circuit recognized, some court will need to decide the extent to which alleged contamination stems from products produced according to military specifications; pursuant to the federal-officer removal statute, that court must be a federal one.

Connecticut seeks to hold 3M Company ("3M") liable for manufacturing and selling per- and polyfluoroalkyl substances ("PFAS"), a family of chemical compounds that have allegedly contaminated some of the State's natural resources. The State alleges that much of that contamination resulted from 3M's production of aqueous film-forming foam ("AFFF"), including AFFF that 3M supplied to the U.S. military pursuant to rigorous military specifications ("MilSpec"). The State agrees that its claims to recover for alleged PFAS contamination stemming from MilSpec AFFF should be litigated in federal court under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1), which provides jurisdiction over any lawsuit that has a nexus

to a defendant's actions as a federal contractor and that implicates a colorable government-contractor defense.

But in order to pursue part of its claim in its preferred state-court forum, the State split its claim for PFAS contamination into two cases: one purportedly seeking recovery for harm from AFFF-sourced PFAS, the other for harm from non-AFFF-sourced PFAS. In this "non-AFFF" case, the State disclaimed relief for PFAS contamination caused by AFFF. 3M removed both the "AFFF" and "non-AFFF" cases to federal court under the federal-officer removal statute. The district court remanded just this non-AFFF case based entirely on the State's disclaimer.

As 3M's notice of removal plausibly alleges, however, there is no ready way to tell whether particular PFAS compounds purportedly contaminating Connecticut's natural resources stemmed from AFFF or non-AFFF sources. Accordingly, the State's disclaimer is meaningless, and deferring to it would ignore the need to credit the defendant's theory of removal. *See Agyin v. Razmzan*, 986 F.3d 168, 175, 180–81 (2d Cir. 2021). Under 3M's theory, a specific PFAS compound (*e.g.*, PFOS or PFOA) from an AFFF source is chemically indistinguishable from the same PFAS compound from a non-AFFF source, and PFAS from both sources have commingled in the environment over time such that there is no ready way to distinguish between the two. Indeed, the State concedes that it seeks relief in *this* case at sites where the same PFAS compounds from both

2

MilSpec AFFF and non-AFFF sources have combined to cause a single injury. Because those MilSpec AFFF and non-AFFF PFAS compounds are chemically indistinguishable, any imposition of liability for such sites would necessarily hold 3M liable for its manufacture of MilSpec AFFF for the military. At the very least, a court would have to determine whether it is possible to disentangle the indistinguishable chemical compounds, and if so, a factfinder would need to determine what PFAS stemmed from which source and allocate liability accordingly. The State and the district court agreed that such circumstances would create "messy" and "complex and challenging" causation questions.

In short, the State's disclaimer does not change the need for *some* court to resolve questions of causation and allocation stemming from the commingling of AFFF and non-AFFF sources of PFAS in the environment. And as the Fourth and Seventh Circuits have recently explained in materially identical cases involving other States' attempts to divide their indivisible PFAS claims, that court must be a federal one pursuant to the federal-officer removal statute. *See Maryland*, 130 F.4th at 390–91; *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 848–49 (7th Cir. 2024) (citing *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944–46 & n.3 (7th Cir. 2020)). "Where the parties dispute difficult factual questions" that determine the availability of a contractor's federal defense, "a contractor acting at the government's direction

3

should have the opportunity to present their version of the facts to a federal, not a state, court." *Maryland*, 130 F.4th at 391 (internal quotation marks omitted).

The district court's contrary conclusion that the State's disclaimer obviates any nexus between this case and 3M's government-contractor defense was error. Instead of crediting the theory of the case set forth in 3M's notice of removal, as circuit law plainly requires, the court gave dispositive weight to the State's disclaimer, concluding that the causation and allocation questions presented here are simply "an ordinary, alternate causation defense" that can be resolved in state court. SA10. But those causation and allocation issues are questions about the scope of the federal defense; treating them as questions about the scope of the disclaimer does not change that reality. And Congress created federal-officer removal jurisdiction precisely so that federal courts can resolve such merits questions—including the accuracy or application of any potential model for supposedly distinguishing between AFFF and non-AFFF sources of PFAS, and whether the absence of such a model triggers the federal government-contractor defense—that drive the availability of defenses for actions taken under federal authority. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). This Court should follow the Fourth and Seventh Circuits and hold that this case implicates 3M's government-contractor defense and therefore belongs in federal court. And because 3M has plausibly

alleged the necessary elements for federal jurisdiction under the federal-officer removal statute, this Court should reverse.

## STATEMENT OF JURISDICTION

This appeal arises from 3M's removal of a case from state court to federal court. The district court had federal-officer removal jurisdiction under 28 U.S.C. § 1442(a)(1). This Court has jurisdiction under 28 U.S.C. § 1447(d), which provides that "an order remanding a case to the State court from which it was removed" pursuant to § 1442(a)(1) "shall be reviewable by appeal." The district court's remand order was entered on December 17, 2024, and 3M timely noticed its appeal on December 23, 2024. SA20; JA315.

## STATEMENT OF THE ISSUE

Whether the district court erred in holding that the federal-officer removal statute, 28 U.S.C. § 1442(a)(1), does not provide for federal jurisdiction, despite 3M's plausible removal allegations that the State's case concerning purported PFAS contamination of its natural resources relates to 3M's federally directed production of MilSpec AFFF and thus implicates 3M's colorable federal government-contractor defense.

## STATEMENT OF THE CASE

### A.  PFAS and MilSpec AFFF

PFAS are chemicals used in a broad variety of products, including consumer goods, food packaging, cookware, and upholstery. JA42. PFAS are also key

ingredients in AFFF, a firefighting foam widely used by the U.S. military on bases, airfields, and ships to extinguish life-threatening, fuel-based fires. JA20. In settings where fuel fires are both "a constant hazard and potentially devastating," AFFF saves lives and protects property. JA19.

Although the U.S. Naval Research Laboratory developed AFFF, the government required the assistance of chemical manufacturers to maintain a sufficient supply. JA19–20. The Department of Defense thus developed detailed specifications (MilSpec) for use by private manufacturers. JA19–20. AFFF suppliers must use rigorous inspection and testing procedures to "assure supplies . . . conform to [the] prescribed requirements." U.S. Navy, *Military Specification: Fire Extinguishing Agent, Aqueous Film-Forming Foam (AFFF) Liquid Concentrate, Six Percent, for Fresh and Sea Water* 3 (Nov. 21, 1969). The Navy carefully tests AFFF products for compliance with the MilSpec, after which it adds approved products to the "Qualified Products List." *Id.* at 2; *see also* 48 C.F.R. § 9.203(a).

Until recently, the specifications mandated that any AFFF produced for the U.S. military contain "fluorocarbon surfactants"—a class of PFAS chemicals. JA20. While the AFFF MilSpec no longer identifies PFAS by name, it still effectively requires the presence of these chemicals. JA20. As the Department of Defense acknowledges in the extant version of the AFFF MilSpec, it is not currently possible

for manufacturers to eliminate PFAS entirely "'while still meeting all other military specification requirements.'" JA20 (quoting MIL-PRF-24385F(4) § 6.6 (2020)).

3M manufactured and sold MilSpec AFFF to the federal government for over three decades. JA20. The U.S. military has used 3M's MilSpec AFFF at military facilities across the country, including at numerous sites in Connecticut. Those sites include "'the Air National Guard installation at Bradley International Airport in Windsor Locks; the Army National Guard installation in Windsor Locks; the Army National Guard installation in Groton; and the Naval Submarine Base New London.'" JA21 (quoting JA163).

### B. The AFFF Multidistrict Litigation

Over the past several years, States, public water providers, and private plaintiffs have brought product-liability suits against manufacturers of AFFF, alleging that "AFFF products used at airports, military bases, or certain industrial locations caused the release of" PFAS compounds "into local groundwater and contaminated drinking water supplies." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018). The Judicial Panel on Multidistrict Litigation centralized these actions into a single proceeding—the AFFF multidistrict litigation ("MDL")—in the District of South Carolina. *Id.* at 1396.

The Judicial Panel on Multidistrict Litigation concluded that consolidation would "promote the just and efficient conduct of this litigation." 357 F. Supp. 3d at

1394. That is partially because "the AFFF manufacturers likely will assert identical government contractor defenses in many of the actions." *Id.* The federal government-contractor defense immunizes government contractors from state tort liability when they produce equipment for the U.S. military pursuant to "'reasonably precise specifications'" issued by the government. *Cuomo v. Crane Co.*, 771 F.3d 113, 117 (2d Cir. 2014) (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)). In the MDL, the manufacturers are asserting the government-contractor defense based on their production of MilSpec AFFF for the Department of Defense.

## C. The State's Two Suits

In January 2024, following the lead of several other states, the State of Connecticut filed two separate actions against 3M and other defendants. JA42; JA136. The State framed the complaints as seeking recovery for PFAS contamination stemming from separate sources. One suit seeks damages and injunctive relief for harms allegedly caused by PFAS stemming from AFFF. *See* JA136–39. The other case seeks damages and injunctive relief for "all PFAS pollution in the State of Connecticut" but expressly disclaims recovery for "contamination or injury related to Aqueous Film Forming Foam." JA44; JA129.

The allegations in the two suits otherwise substantially overlap. Both complaints assert that 3M "designed, manufactured, marketed, distributed, and/or otherwise sold" products containing PFAS. JA46, 48; JA140, 142. Both complaints

8

allege that the same specific PFAS compounds from those products have contaminated the same natural resources: the "air, soil, sediment, biota, surface water, estuaries, submerged lands, wetlands, groundwater, [and] drinking water" in the State. JA49, 103; JA150–51, 226. Both complaints allege that PFAS have reached some of the same bodies of water, including the Connecticut and Farmington Rivers, JA61–62; JA170, and harmed the same species of wildlife, including shellfish in the Long Island Sound, JA63–64; JA172–73. Each cause of action that the State asserts in the non-AFFF complaint is also asserted in the AFFF complaint. JA98–112; JA213–38. And both complaints seek damages and injunctive relief, including an order to abate all PFAS contamination alleged in each complaint and recovery of the State's investigative expenses. JA129–30; JA255–56.

3M removed both cases to the U.S. District Court for the District of Connecticut, asserting jurisdiction under the federal-officer removal statute. *See* JA10 (citing 28 U.S.C. § 1442(a)(1)). The State did not object to 3M's removal of the "AFFF" suit, and the Judicial Panel on Multidistrict Litigation ("JPML") transferred that case to the MDL.

The State did object, however, to removal of the so-called "non-AFFF" case, and moved to remand it to state court. Mem. in Supp. of Mot. for Remand and for Costs and Fees, *Connecticut v. EIDP, Inc.*, No. 3:24-cv-00239 (D. Conn. Apr. 8,

2024), ECF 41-1. In its opposition brief, 3M explained that its notice of removal contained 16 paragraphs of detailed factual allegations showing that, notwithstanding the State's disclaimer, the "non-AFFF" case is inextricably intertwined with 3M's production of MilSpec AFFF. *See* Opp. to Mot. for Remand and for Costs and Fees at 9, *Connecticut v. EIDP, Inc.*, No. 3:24-cv-00239 (D. Conn. May 8, 2024), ECF No. 42 (citing JA21–27, 29–30).

As alleged in the notice of removal, PFAS from MilSpec AFFF and non-AFFF sources "have commingled at various locations across Connecticut," including many of the locations "expressly referenced in both of the State's complaints." JA26. AFFF and non-AFFF products contain and have allegedly released "the *same ten PFAS chemicals*" at issue in both cases. JA15–16 (emphasis added); *see* JA21. PFAS from the two sources thus "become indistinguishable from" one another once commingled in the environment. JA25–26. And the State's two complaints allege that the commingled PFAS caused a single, indivisible harm to many of the *same natural resources*. *See* JA21. Because the same PFAS compounds from different sources (including MilSpec AFFF) are chemically indistinguishable and have allegedly contaminated the same locations, 3M explained, it intends to invoke the federal government-contractor defense in this "non-AFFF" case as well. JA26–27. Specifically, 3M intends to argue that this chemical indistinguishability means 3M has a federal defense for all alleged contamination, or at a minimum it has a defense

10

for any contamination allocated to AFFF. Accordingly, this case falls within the federal-officer removal statute. JA26–27.

The district court held a hearing on the remand motion. At the hearing, the State acknowledged that the removability of this case "rises or falls on whether [its] disclaimer is effective." JA269. The State further conceded that it is seeking to recover in this case at sites "where [non-AFFF] PFAS and AFFF [PFAS] are commingled." JA295; *see* JA312. The court and the State agreed that the State's approach would create "messy" and "complex and challenging" questions about whether (and, if so, how) the State can disaggregate PFAS from various sources. JA272–73.

The district court nonetheless granted the State's motion to remand, concluding that "the State's disclaimer of any relief stemming from any form of AFFF" "defeats" the "'causal nexus' and the 'colorable federal defense'" required for 3M to remove this case to federal court under the federal-officer removal statute. SA7. As it had at the hearing, the court observed that the "federal and non-federal activities are arguably intertwined in this case" and that the factfinder would have to decide "whether, and perhaps in what amount, AFFF is present at any claimed site of contamination." SA12. It nevertheless concluded that because of the State's disclaimer, those questions were "merely an ordinary, alternate causation defense" under state law. SA10. The district court also speculated that the State would likely

11

"be able to identify some sites within the state" where there is no commingling, though the court acknowledged that the State "concede[s] that it seeks relief for sites where PFAS contamination from AFFF and non-AFFF sources may be commingled." SA11. In reaching its conclusion, the court expressly departed from the Seventh Circuit's reasoning in *Raoul* and instead relied on a few district court decisions that have since been overruled or undermined. SA9–10, 15–16.

3M timely noticed this appeal. JA315.

## SUMMARY OF ARGUMENT

A disclaimer does not erase federal-law issues when the State is seeking to recover at sites where 3M plausibly alleges that PFAS from MilSpec AFFF are inseparably commingled in the environment with PFAS from non-AFFF sources. As the Fourth and Seventh Circuits have recently and persuasively explained, that commingling means that this ersatz "non-AFFF" case inevitably implicates 3M's federal government-contractor defense. Whether framed as questions about the scope of the disclaimer or the scope of the federal defense, some court (or multiple courts if the State has its way) will need to decide whether PFAS contamination can be disentangled and if so to what degree. Under the federal-officer removal statute, that court needs to be a federal court. The district court therefore has jurisdiction over this case under 28 U.S.C. § 1442(a)(1). Every prerequisite for removal is readily satisfied.

12

I.     3M is undisputedly a "person" within the statute's meaning.  And 3M also undisputedly acted under federal authority when it manufactured and supplied MilSpec AFFF to the U.S. military.  The district court rightly concluded that 3M satisfies this element of federal-officer removal.

II.     This supposedly "non-AFFF" suit is plainly "for or relating to" 3M's exercise of federal authority.  28 U.S.C. § 1442(a)(1).  That is because—based on the plausible allegations in 3M's notice of removal and the State's express concession before the district court—the State seeks to recover in this case for alleged harms that were caused at least in part by MilSpec AFFF.  The State concedes that it seeks remediation of natural resources at sites where alleged PFAS from MilSpec AFFF and non-AFFF sources have commingled in the environment. The same PFAS compounds, like PFOS or PFOA, are chemically indistinguishable whether they derive from MilSpec AFFF or non-AFFF sources.  Thus, although the State purports to disclaim any relief for MilSpec AFFF, 3M has plausibly alleged that the State has no ready way to segregate the sources of contamination at each site.

It would therefore be erroneous for a court in this "non-AFFF" case to suggest at this stage that 3M could be held liable for *only* non-AFFF-sourced PFAS contamination.  Any relief would necessarily sweep in at least some MilSpec AFFF

for which 3M has a federal defense. That is especially true given the Complaint's request for injunctive relief, which is indivisible by its nature.

In any event, the parties will at least need to present expert testimony or other evidence to determine whether there is an accurate means of apportioning liability and remedies between PFAS from MilSpec AFFF and non-AFFF sources—and if so, to assist the jury in making the apportionment determination. Those decisions— whether framed in terms of the scope of the disclaimer or the scope of the federal defense—would determine the availability and scope of 3M's federal government-contractor defense. Because the causation and allocation questions determine "the factual sufficiency of [3M's] defense," 3M "should 'have the opportunity to present [its] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116.

The Fourth and Seventh Circuits recently rejected an identical divide-and-evade strategy and held that cases like this are removable under § 1442(a)(1). The courts held that a claim for PFAS contamination should be resolved in federal court, even if the plaintiff disclaims recovery for contamination from AFFF, where "a factfinder must . . . still decide the important causation and allocation questions" presented by commingled PFAS contamination from both MilSpec AFFF and non-AFFF sources. *Maryland*, 130 F.4th at 392 (citing *Raoul*, 111 F.4th at 849); *see Baker*, 962 F.3d at 944–46 & n.3 (case was removable despite disclaimer because causation and allocation questions were "*merits questions*" for a federal court, given

14

that one potential source was a product for which the defendant could assert a government-contractor defense).

The district court was wrong that the State's disclaimer—by which the State purportedly seeks damages and injunctive relief only for alleged PFAS contamination from non-AFFF sources—severs the nexus between the relief the State seeks in this case and 3M's manufacture of MilSpec AFFF. That disclaimer contradicts 3M's plausible allegations that chemically indistinguishable PFAS compounds from both AFFF and non-AFFF sources have commingled in the environment, including at sites where the State seeks relief here. Given that, the factfinder will "necessarily" be asked to impose liability based on "work that 3M did for the federal government"—3M's production of MilSpec AFFF—triggering 3M's right to raise its federal government-contractor defense. *Maryland*, 130 F.4th at 390. As the First Circuit recently explained, that means the State's disclaimer cannot defeat removal. *See Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 188–93 (1st Cir. 2024); *accord Maryland*, 130 F.4th at 390–91.

Even if the State could put forward some feasible expert modeling at trial to segregate and allocate PFAS contamination based on source, the factfinder would still need to decide whether the modeling is reliable and accurate and, if so, what percentage of PFAS contamination at each site traces back to MilSpec AFFF. Again, whether framed as being about the scope of the disclaimer or the scope of the federal

defense, the allocation question belongs in federal court. In short, 3M has the right to present its view of the facts and the law to a federal court for decision on both the causation and allocation issues. *See Maryland*, 130 F.4th at 391–92.

In holding otherwise, the district court wrongly characterized 3M as raising merely a state-law alternative causation defense. And it relied on nonbinding opinions by a handful of other district courts that remanded similar suits against 3M to state court. But those courts (including the district courts reversed by the Fourth Circuit), like the district court here, failed to grapple with the significance of the complex causation and allocation questions that arise because of the commingling of PFAS from both MilSpec AFFF and non-AFFF sources. Those questions determine the availability and scope of 3M's federal government-contractor defense. That is why the Fourth Circuit held in *Maryland* and the Seventh Circuit held in *Raoul* and *Baker* that a case like this belongs in federal court—directly on-point holdings that are, for good measure, consistent with this Court's direction in *Cuomo* that a federal court must decide the factual sufficiency of 3M's federal defense after 3M has had the opportunity to present its view of the case.

III.    Finally, 3M has a colorable federal government-contractor defense in this case. 3M's notice of removal plausibly alleges that 3M provided MilSpec AFFF to the U.S. military according to reasonably precise specifications requiring the use of PFAS and that the government was aware of the risks of PFAS. Just as the State's

"AFFF" suit indisputably implicates a colorable federal government-contractor defense, so too does its self-styled "non-AFFF" suit—for precisely the same reasons the nexus requirement is satisfied. The State's only objection to this element was based on its disclaimer; because the disclaimer fails, 3M has plausibly alleged that it has a colorable government-contractor defense.

Because 3M is entitled to a federal forum in which to raise its colorable federal defense to the State's claims, this Court should reverse.

## STANDARD OF REVIEW

This Court "review[s] an appeal from an order of remand *de novo*." *Agyin*, 986 F.3d at 173–74. The Court likewise reviews de novo questions of statutory interpretation. *Giovinco v. Pullen*, 118 F.4th 527, 530 (2d Cir. 2024).

## ARGUMENT

3M satisfies the requirements for federal-officer removal in this "non-AFFF" case. The federal-officer removal statute authorizes any officer of the United States, "or any person acting under that officer," to remove a civil action if the action is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). "One of the primary purposes of the removal statute . . . was to have [federal officers'] defenses litigated in the federal courts." *Willingham*, 395 U.S. at 407; *see Maryland*, 130 F.4th at 387 (the statute "give[s] effect to the legislative principle that those acting at the federal government's direction should be able to defend themselves in

17

federal—not state—court"). The Supreme Court and this Court have thus repeatedly instructed that § 1442(a)(1) "must be 'liberally construed'" in favor of removal. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136 (2d Cir. 2008). The strong federal policy in favor of removing these actions "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)," *Willingham*, 395 U.S. at 407, which could allow "states [to] stymy the federal government's operations," *Maryland*, 130 F.4th at 387.

The federal-officer removal statute creates an exception to the ordinary well-pleaded complaint rule. It permits a federal officer, or a party that acted under a federal officer, to remove an entire action if he pleads a colorable federal defense to at least one claim in the case, "'despite the nonfederal cast of the complaint.'" *Maryland*, 130 F.4th at 388 (quoting *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006)); *see* 14C Wright & Miller, *Federal Practice and Procedure* § 3726 (4th ed.) (the "entire action" is removable "even if only one of the controversies it raises involves a federal officer or agency"). A notice of removal need not provide "[e]vidence" to establish jurisdiction; instead, it "need include only . . . *plausible allegation[s]*" of jurisdictional facts. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (emphasis added); *see Willingham*, 395 U.S. at 407 (explaining that a defendant "need not win his case before he can have it removed"). This Court has thus concluded that "'the same liberal rules employed in testing the

18

sufficiency of a pleading should apply to appraise the sufficiency of a defendant's notice of removal'" under the federal-officer removal statute. *Agyin*, 986 F.3d at 180–81. So a court should "assume the[] veracity" of a removal notice's "well-pleaded factual allegations," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and "'credit the defendant['s] theory of the case'" in assessing removability, *Agyin*, 986 F.3d at 175 (alteration omitted).

A private defendant seeking removal under § 1442(a)(1) must plausibly allege three elements: (1) the defendant is a "person" that "act[ed] under [a federal officer"; (2) the case is "for or relating to" the defendant's action "under color of" federal authority, and (3) the defendant has a colorable federal defense. 28 U.S.C. § 1442(a)(1); *see Isaacson*, 517 F.3d at 135–39; *see also Agyin*, 986 F.3d at 174. 3M's notice of removal establishes all three elements of federal-officer removal, so this case should be resolved in federal court.

## I. 3M Is Undisputedly A Person That Acted Under Federal Authority.

3M readily satisfies the first element of the test: it is a "person" that "act[ed] under" federal authority. This Court has held that "the term 'person'" in 28 U.S.C. § 1442 "includes corporate persons." *Isaacson*, 517 F.3d at 136. 3M is a corporation. *See* JA27. Thus, as the district court held, "there is no dispute that 3M is a 'person' within the meaning of the statute." SA7.

19

3M also acted under federal authority. The "acting under" requirement describes "the triggering relationship between a private entity and a federal officer," *Watson*, 551 U.S. at 149, and is met when an entity "'*assists*, or helps *carry out*, the duties or tasks of the federal superior,'" *Isaacson*, 517 F.3d at 137 (alterations omitted). 3M manufactured AFFF for the federal government pursuant to rigorous U.S. military specifications that required the use of PFAS. JA27–29. The State has not disputed, and the district court rightly concluded, that 3M "'acted under a federal officer' when it privately contracted with the government to develop MilSpec AFFF." SA7 (alterations omitted); *see Agyin*, 986 F.3d at 175 (this requirement is "'satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it manufactured for the government'").

## II. This Suit Relates To Actions 3M Took Under Color Of Federal Office.

The second element asks whether the State's claims in this case have a nexus to the acts that 3M took under color of federal office. The answer is yes. The federal-officer removal statute authorizes any officer of the United States, "or any person acting under that officer," to remove a civil action that is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). 3M's notice of removal plausibly alleges a sufficient nexus between this suit and 3M's production of MilSpec AFFF for the U.S. military—an allegation made all the more credible given the State's concession that it seeks to recover for purported harm at sites with alleged

PFAS contamination plausibly traceable to MilSpec AFFF sources. As recent decisions from several courts of appeals make clear, the State's purported disclaimer of AFFF-related liability does not alter that conclusion.

### A. 3M Has Plausibly Alleged A Nexus Between This Suit And Its Production Of MilSpec AFFF For The U.S. Military.

3M's notice of removal plausibly alleges that the State's suit is "for or relating to" 3M's production of MilSpec AFFF. 28 U.S.C. § 1442(a)(1). As this Court has explained, this element requires "a causal connection," or nexus, "between [3M's] federal duties and the conduct for which [it is] being sued." *Isaacson*, 517 F.3d at 138; *see Connecticut ex rel. Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 145 (2d Cir. 2023) ("nexus"). The "hurdle" created by the nexus requirement "is quite low." *Isaacson*, 517 F.3d at 137.[1] The case need not be "for the very acts" done under

---

[1] In 2011, Congress amended § 1442(a)(1) to cover not just suits "'for any act under color of [federal] office,'" *Isaacson*, 517 F.3d at 135 (quoting 28 U.S.C. § 1442(a)(1) (2008)), but suits "for *or relating to* any act under color of such office," 28 U.S.C. § 1442(a)(1) (emphasis added). While this Court continues to apply "the causal-nexus requirement recognized in pre-2011 cases like *Isaacson*," *Tong*, 83 F.4th at 145 n.7, it has also recognized that the 2011 amendment was meant "'to broaden the universe of acts that enable Federal officers to remove to federal court,'" *Agyin*, 986 F.3d at 174 n.2 (quoting *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 467 (3d Cir. 2015)). *Tong* is thus best understood as merely reinforcing that the causal-nexus requirement has not been "abrogated" in its entirety. 83 F.4th at 145 n.7. Regardless, as *Isaacson* itself explained, even the pre-2011 causal-nexus requirement was already a "quite low" bar. 517 F.3d at 137. *Tong* therefore makes no difference to the outcome in this case. And to the extent *Tong* could be read to mean that the causal-nexus requirement from pre-2011 cases applies in the same way even after Congress

*(Cont'd on next page)*

federal authority; instead, a private entity need only allege that "the acts for which [it is] being sued"—here, alleged PFAS contamination—"occurred *because of* what [it was] asked to do by the Government." *Id.* In evaluating whether a nexus exists, the Court "credit[s] [3M's] theory of the case." *Id.* 3M "need not establish 'an airtight case on the merits in order to show the required causal connection.'" *Maryland*, 130 F.4th at 389 (quoting *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999)).

3M's plausible allegations—taken together with the State's own allegations and its concession below—easily clear the low causal-nexus bar and establish a sufficient connection between 3M's production of MilSpec AFFF and the alleged PFAS contamination. As this Court has said, questions about "the factual sufficiency of the defendant's [federal government-contractor] defense" belong in federal court. *Cuomo*, 771 F.3d at 116. Or, as the Fourth Circuit recently explained in a materially identical case involving States' efforts to file multiple suits while purporting to disclaim AFFF claims against 3M in one of them, a federal court must decide "the important causation and allocation questions" these cases present. *Maryland*, 130 F.4th at 392; *see Raoul*, 111 F.4th at 848–49 (similar) (citing *Baker*,

broadened the language in the federal-officer removal statute, it was wrongly decided. *See, e.g.*, *Express Scripts*, 119 F.4th at 186; *In re Commonwealth's Motion*, 790 F.3d at 471–72; *Baker*, 962 F.3d at 943–44.

962 F.3d at 945 n.3). Because deciding those questions determines the availability and scope of 3M's federal defense, this case is "for or relating to" 3M's exercise of federal authority.

**1.  The State Seeks Recovery In This Case For Purported Harm At Sites With Alleged PFAS Contamination Commingled From Both MilSpec AFFF And Non-AFFF Sources.**

As 3M alleges in its notice of removal (and as the State has conceded), the asserted PFAS contamination at multiple sites where the State seeks recovery—including injunctive relief—stems at least in part from MilSpec AFFF sources.

A few examples make this clear. In this "non-AFFF" case, the State seeks to recover for alleged contamination of the "Connecticut River, Hartford," "Farmington River, Farmington and Windsor," "Naugatuck River, Beacon Falls," "Pequabuck River, Bristol," "Quinnipiac River, Wallingford," and "Scantic River, Somers." JA61–62. The State alleges in its "AFFF" complaint that the same sections of those same rivers are contaminated with PFAS from AFFF. JA170. And, as 3M has alleged in its notice of removal, two of the military facilities at which the State alleges that AFFF was used and released—the Air National Guard installation at Bradley International Airport in Windsor Locks and the Army National Guard installation in Windsor Locks, *see* JA163—are "in the vicinity of" the Connecticut and Farmington Rivers. JA22–23. PFAS from MilSpec AFFF used and released at those military bases thus plausibly contributed at least to the alleged PFAS

23

contamination of the Connecticut and Farmington Rivers. JA22–23. That establishes a plausible nexus between 3M's production of MilSpec AFFF and the alleged contamination for which the State seeks relief here. JA22–23.

In addition, the State alleges that PFAS have contaminated "shellfish beds in Long Island Sound." JA63. The State's AFFF Complaint likewise alleges "PFAS contamination of shellfish beds in Long Island Sound," including "detect[ion] in shellfish in the vicinity of Groton Airport." JA172. Two other military sites in Connecticut where MilSpec AFFF was allegedly used and released—the Army National Guard installation in Groton and the Naval Submarine Base New London, JA163—are near the Long Island Sound. JA23. That creates another plausible link between the alleged contamination in this case and MilSpec AFFF.

There are more ties. The State is seeking relief here for alleged contamination of groundwater, including the groundwater that supplies the public water system in Norwalk. JA60. 3M alleges in its notice of removal, however, that the City of Norwalk filed a suit against 3M and other defendants in the AFFF MDL alleging that MilSpec AFFF use may be responsible for asserted PFAS contamination of its drinking water. JA23–24.

The State is also seeking to recover in both of its suits for the investigative costs of the Connecticut Department of Energy and Environmental Protection. JA130; JA256. And that single investigation allegedly detected PFAS

24

contamination from both MilSpec AFFF and non-AFFF sources.  *See* JA24 (citing JA54–58; JA160–65).

More generally, the State alleges that both AFFF and non-AFFF PFAS have contaminated the same natural resources:  the "air, soil, sediment, biota, surface water, estuaries, submerged lands, wetlands, groundwater, [and] drinking water." JA103; JA226.  And it alleges that PFAS from both sources have affected fish in the same 13 rivers.  JA63; JA172.

Given that overlap, it should come as no surprise that the State explicitly conceded before the district court on the motion to remand that it is seeking to obtain damages and injunctive relief at sites where "commingl[ing]" from MilSpec AFFF and non-AFFF sources has occurred.  JA295; JA312 (same).

### 2. Commingled PFAS From Various Sources Are Indistinguishable.

3M's notice of removal alleges that the same PFAS compounds from various sources commingle and are indistinguishable once they enter the environment.  The examples above demonstrate that PFAS from both MilSpec AFFF and non-AFFF sources "have commingled at various locations across Connecticut."  JA26; *see also* JA21–27.  And particular PFAS compounds (*e.g.*, PFOS or PFOA) are chemically indistinguishable, no matter whether they were allegedly used in AFFF products or non-AFFF products.  As 3M alleges in its notice of removal, a specific PFAS compound is "the same" regardless of its source.  JA15–16, 21.  Once commingling

has occurred, PFAS compounds from one source therefore become "indistinguishable from PFAS from other . . . sources." JA25–26. And the State alleges that the purported contamination from both AFFF and non-AFFF sources in Connecticut is caused by the same 10 specific PFAS compounds. *See* JA21 (citing JA49; JA150–51). The upshot of those undisputed allegations is that there is no ready way to tell what PFAS came from which source at any particular site where commingling has occurred. *See* JA15–16.

### 3. A Federal Court Must Decide The Causal Source Of The Alleged Contamination.

3M's allegations of commingling and indistinguishability establish a plausible nexus between the acts complained of in this case and 3M's production of MilSpec AFFF for the U.S. military. As the Fourth Circuit recognized, "a company like 3M satisfies the nexus element for removal if the factfinder will need to identify the sources of pollutants," at least some of which were "manufactur[ed] . . . for the federal government." *Maryland*, 130 F.4th at 391; *see Raoul*, 111 F.4th at 849; *Baker*, 962 F.3d at 945 & n.3.

As just explained, the State is seeking relief for purported harm at numerous sites where identical PFAS compounds have commingled in the environment from both MilSpec AFFF and non-AFFF sources. Despite the State's attempt to deploy "artful pleading" to limit its claims to PFAS from non-AFFF sources, *Maryland*, 130 F.4th at 390, the State has no accurate means of disentangling PFAS from MilSpec

AFFF and non-AFFF sources, *see* JA15–16. It is therefore implausible for a factfinder in this "non-AFFF" case to hold 3M liable for *only* non-AFFF-sourced PFAS contamination. Any relief "would necessarily implicate work that 3M did for the federal government"—work for which 3M has a federal defense. *Maryland*, 130 F.4th at 390. Thus, "3M's federal work is inextricably related to the charged conduct." *Id.* at 391.

That is especially true with respect to the Complaint's request for injunctive relief—"an order compelling Defendants to abate all PFAS pollution in the State of Connecticut." JA129. Where PFAS from MilSpec AFFF is commingled with PFAS from other sources, it is both conceptually and practically impossible for 3M to abate only PFAS contamination resulting from non-AFFF sources. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (noting "the indivisible nature of the injunctive . . . remedy").

Even with respect to the State's request for damages, at a minimum, the State would need to present expert testimony or other evidence—*e.g.*, evidence concerning the movement of PFAS in groundwater—to assist the factfinder in "apportion[ing] how much of a given sample of PFAS contamination came from [MilSpec] AFFF compared to non-AFFF products." *Maryland*, 130 F.4th at 391. And so, at a minimum, 3M has a right to a federal forum in which to contest the reliability and accuracy of that modeling. *See id.* And 3M has the right for a federal

factfinder to undertake any apportionment that might be possible. *See id.* Those questions determine "the factual sufficiency of [3M's] [federal government-contractor] defense," such that 3M must "'have the opportunity to present [its] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (quoting *Willingham*, 395 U.S. at 409).

Based on the plausible allegations in the notice of removal, "the acts for which [3M is] being sued"—here, alleged PFAS contamination—"occurred *because of* what [3M was] asked to do by the Government." *Isaacson*, 517 F.3d at 137; *see Maryland*, 130 F.4th at 391 (the two are "inextricably related"). This suit is thus "for or relating to" 3M's acts under color of federal office. 28 U.S.C. § 1442(a)(1).

## B. The State's Disclaimer Cannot Sever This Suit's Connection To MilSpec AFFF.

The district court's contrary conclusion rested entirely on the State's purported disclaimer of recovery for PFAS contamination stemming from AFFF sources, which—according to the State and the district court—severs the nexus between this case and 3M's production of MilSpec AFFF. *See* SA7. That is wrong, and for several reasons.

### 1. The Disclaimer Rests On A False Premise, As Courts Have Held In Nearly Identical Circumstances.

The disclaimer is inconsistent with 3M's plausible allegations that the factfinder cannot distinguish between PFAS compounds from MilSpec AFFF and

non-AFFF sources—they are identical in the environment, regardless of their source. *See* JA15–16, 21, 25–27. The disclaimer cannot absolve the factfinder of having to make a judgment, based on expert testimony or other evidence, about what percentage of PFAS contamination at a site traces back to the military. Because the notice of removal plausibly alleges that the State has no ready way to separate PFAS based on source—and thus that any finding of liability would necessarily be premised, in part, on MilSpec AFFF—this case has a plausible causal nexus to 3M's federal government-contractor defense and is therefore removable. In other words, despite the "artful crafting" of its disclaimer, *Maryland*, 130 F.4th at 393, the State is suing 3M "for or relating to" its production of MilSpec AFFF for the federal government, 28 U.S.C. § 1442(a)(1).

At a minimum, 3M has a right to challenge the reliability and accuracy of the State's efforts at trial to distinguish PFAS attributable to MilSpec AFFF from PFAS attributable to other sources and to argue that—without an accurate means of distinguishing between particular PFAS compounds from the various sources—the State cannot recover at specific sites because of 3M's federal government-contractor defense. Attempts to decide the causal source and apportion the alleged contamination on that basis determine "the factual sufficiency of [3M's] defense," *Cuomo*, 771 F.3d at 116, and 3M should "'have the opportunity to present [its] version of the facts to a federal, not a state, court,'" *id.* (quoting *Willingham*, 395

29

U.S. at 409), despite the State's disclaimer, *see Raoul*, 111 F.4th at 849; *Baker*, 962 F.3d at 945 & n.3. Questions about the scope of the disclaimer and the scope of the federal defense are just two sides of the same coin, and those questions belong in federal court. After all, if the causation and apportionment determinations incorrectly attribute PFAS contamination to a non-MilSpec AFFF source, that determination would nullify 3M's federal government-contractor defense and impose state-law liability on 3M for conduct immunized by federal law. Congress enacted the federal-officer removal statute to ensure that federal courts are the ones that make those weighty determinations.

Several recent court-of-appeals and district-court decisions cogently explain why disclaimers like the State's are not effective.

***The Fourth Circuit.*** Just weeks ago, the Fourth Circuit held exactly that in *Maryland v. 3M Co*. in the course of rejecting a similar gambit where States attempted to file multiple suits in an effort to evade federal jurisdiction in one of them. There, the States of Maryland and South Carolina each filed "overlapping" suits seeking recovery for alleged PFAS contamination, and like Connecticut here, they disclaimed in their "non-AFFF" suits recovery for PFAS stemming from AFFF. 130 F.4th at 385–86. As here, 3M removed the cases and alleged that PFAS from MilSpec AFFF and non-AFFF sources had indistinguishably commingled in the

natural resources at issue. *Id.* And again, as here, the States sought remand based on their disclaimers. *Id.*

The Fourth Circuit emphatically rejected Maryland and South Carolina's "attempts to immunize their complaints from federal officer removal with their purported disclaimers." *Maryland*, 130 F.4th at 389. The court held that it "must credit" 3M's "theory of the case as to whether the conduct with which it has been charged is related to its federal work." *Id.* Based on 3M's plausible allegations of commingling and indistinguishability, the court concluded that "3M's Military AFFF production is inextricably related to the States' general allegations of PFAS contamination." *Id.* at 392. Whether expressed in terms of the scope of the disclaimer or the scope of the federal defense, the "challenging causation" and "apportion[ment]" questions that the "factfinder" that "ultimately decides liability in this case will have to disentangle," the court explained, "highlight how the charged conduct relates to [3M's] federal work." *Id.* at 391. And so, the court rightfully vacated the district courts' contrary decisions, given that such "important" "merits questions" "belong in federal court." *Id.* at 392.

***The Seventh Circuit.*** The Seventh Circuit came to the same conclusion in *Illinois ex rel. Raoul v. 3M Co*. There, the State of Illinois brought suit against 3M alleging PFAS contamination stemming from a specific facility, and Illinois disclaimed any relief for contamination from AFFF sources. 111 F.4th at 847–48.

31

3M removed, asserting that some of the alleged contamination may have come from MilSpec AFFF used or stored at a nearby U.S. Army arsenal. *Id.* The Seventh Circuit explained that 3M's federal government-contractor defense remains "viab[le]" even when a plaintiff "disclaim[s]" recovery for certain contamination, as Illinois had done there (and as Connecticut has done here), because "a factfinder would need to apportion the contamination" between the alleged sources. *Id.* at 848–49. And that task presents "difficult causation question[s] that a federal court should . . . resolve.'" *Id.* at 849 (quoting *Baker*, 962 F.3d at 945 n.3).

The Seventh Circuit ultimately remanded Illinois's suit to state court, but for a very specific reason not applicable here. During oral argument before the Seventh Circuit, Illinois "clearly and unequivocally conceded . . . that it would not seek relief against 3M for mixed PFAS contamination." *Raoul*, 111 F.4th at 849. In other words, Illinois "expressly agreed that a factfinder will not need to apportion the PFAS contamination between sources." *Id.* For Illinois to recover given that concession, the evidence had to show that "100% of th[e] contamination" in a "designated area" came "from the [3M] [f]acility" and that not "even a morsel of contamination" came from elsewhere. *Id.*

The State of Connecticut has explicitly refused to make that kind of concession here. Indeed, the State has taken the exact *opposite* position, doubling down on its pursuit of relief in this case at sites with alleged contamination plausibly

32

commingled from MilSpec AFFF and non-AFFF sources. JA312; *see* JA295. So even if the State could achieve the same result by forswearing any attempt to recover at sites where there is evidence of commingling (like Illinois did in *Raoul*), the State has rejected that option, just as Maryland and South Carolina did.[2] Under *Raoul*, then, this case should be in federal court. *See Maryland*, 130 F.4th at 391–92.

The Seventh Circuit's decision in *Baker* only confirms that reality. In *Baker*, the plaintiffs sued DuPont and others for allegedly "contaminat[ing] the property" around their residences with lead and arsenic. 962 F.3d at 939. DuPont removed, alleging that its production of freon for the federal government during World War II "resulted in waste streams that contained lead and arsenic." *Id.* at 945 n.3. The plaintiffs "purport[ed] to disclaim" damages resulting from DuPont's freon production for the federal government, *id.*, seeking to recover instead for lead and arsenic pollution caused by DuPont's commercial activities, *id.* at 945. The court concluded that this self-styled disclaimer was ineffective. Because the plaintiffs sought recovery for lead and arsenic—and because DuPont alleged that its

---

[2] 3M does not concede that a *Raoul*-style concession obviates federal jurisdiction. Even if a plaintiff forswears relief at locations with PFAS commingled from various sources, the factfinder must still decide whether any given location has "even a morsel" of PFAS from MilSpec AFFF. *Raoul*, 111 F.4th at 849. That decision, like any other causation and apportionment decision, implicates "the factual sufficiency of the defendant's [federal government-contractor] defense" and should be made in federal court. *Cuomo*, 771 F.3d at 116.

government-contractor freon production had released those chemicals—the suit related to DuPont's federal contracting. *See id.* at 943–45. The factual dispute about the source of the toxins did not counsel against removal; on the contrary, it was "just another example of a difficult causation question that a federal court should be the one to resolve." *Id.* at 945 n.3.

***The First Circuit.*** A recent decision from the First Circuit adds further confirmation. In *Express Scripts*, the Commonwealth of Puerto Rico sued Caremark (an insurance "benefit manager[]") for allegedly conducting its rebate negotiations in an unlawful, price-inflationary manner. 119 F.4th at 179. Puerto Rico purportedly sought relief only for price inflation as to private clients; it expressly disclaimed any "relief relating to any federal program or . . . contract," including Medicare and Medicaid. *Id.* at 179, 181–82. Caremark removed on federal-officer grounds, alleging in its notice of removal that it had conducted just one set of "joint negotiations" setting the rates both for "private parties and for the federal government." *Id.* at 180, 183.

The First Circuit held that Caremark's allegation of one single, "indivisib[le]" course of negotiations—"an important facet of Caremark's 'theory of the case' that must be 'credited' in evaluating removal," 119 F.4th at 189 (quoting *Jefferson Cnty.*, 527 U.S. at 432) (alteration omitted)—made the case removable. Puerto Rico "target[ed] Caremark's rebate negotiations" in its suit, and the indivisibility of those

negotiations meant that, if "Caremark [were held] liable" for the alleged misconduct, "then it could be liable for its conduct under [the government's] direction—no matter what the disclaimer says." *Id.* at 191. "[C]rediting the disclaimer" would thus create the distinct possibility that the Commonwealth "could recover in the [Puerto Rico] Court of First Instance for Caremark's acts under a federal officer's authority," thereby "depriv[ing] Caremark of the federal forum to which it is entitled." *Id.* at 191–92.

*District courts.* Several district courts have also agreed. In one case, the court held that removal was proper despite Michigan's disclaimer because it was "entirely possible" that the alleged injuries were caused at least in part by MilSpec AFFF and whichever court "ultimately hears this case will likely have to engage in a detailed fact-finding process to determine whether the injuries from MilSpec and Commercial AFFF can be distinguished." *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021). In another, the court held that DuPont was "entitled to put forward an alternate theory of causation" based on federal activity, which the plaintiff could not "avoid" "by disclaiming harm resulting from" products made for "World War II efforts" but not from "the chemicals that are subject to [that] government contract." *Curiale v. A. Clemente, Inc.*, 2023 WL 4362722, at *6 (D.N.J. July 5, 2023).

35

* * *

The reasoning in each of the aforementioned decisions applies with full force here. 3M has plausibly alleged that because differently sourced PFAS have become commingled and are indistinguishable at sites where the State seeks to recover, the State has no ready way to segregate the alleged PFAS contamination based on its source. Those allegations must be credited as true for purposes of removal. *Express Scripts*, 119 F.4th at 189; *Maryland*, 130 F.4th at 389; *see also Agyin*, 986 F.3d at 175. The State's attempt to hold 3M liable for the targeted conduct (the manufacture and sale of PFAS) would therefore "necessarily implicate work that 3M did for the federal government," despite the disclaimer. *Maryland*, 130 F.4th at 390; *see Express Scripts*, 119 F.4th at 191. At the least, the State's disclaimer would still "require[] a state court to determine the nexus 'between the charged conduct and federal authority'"—decisions regarding causation and apportionment. *Maryland*, 130 F.4th at 389 (quoting *Express Scripts*, 119 F.4th at 188).

Crediting the disclaimer and remanding this case would thus impermissibly substitute state-court litigation over the scope of the disclaimer for federal-court litigation over the scope of the federal defense and create an intolerable risk of a state jury's imposing liability on 3M for conduct immunized by federal law. 3M is entitled to a federal forum here despite the State's purported disclaimer.

## 2.    The Disclaimer Is Simply Artful Pleading.

In reality, the State has *not* disclaimed relief for harms from AFFF.  Instead, the State is trying to have its cake and eat it too, splitting its claim for PFAS contamination into two suits to try to avoid federal jurisdiction over this "non-AFFF" case while simultaneously seeking to recover in this case for the same alleged harms to the same natural resources as in the State's "AFFF" suit.  The State's "artful" disclaimer—made while the State continues to pursue the exact damages and equitable remedies it purports to disavow, given the commingling of PFAS from MilSpec AFFF and non-AFFF sources—does not bar federal-officer removal of this case.  *Maryland*, 130 F.4th at 389–91; *see Express Scripts*, 119 F.4th at 187–93; *cf. Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) (plaintiffs may not "use artful pleading to close off [a] defendant's right to a federal forum").

If both the "AFFF" case (which has been removed) and the "non-AFFF" case (which has been remanded) were pending in federal court, then 3M could move to consolidate them to thwart the State's improper efforts to split its claims.  *See Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999).  But if the cases proceed in separate state and federal forums, then 3M faces a significant risk of inconsistent judgments.  Even if each factfinder attempted to separate contamination from AFFF and non-AFFF sources, the "non-AFFF" suit might easily generate liability for—and indivisible injunctive relief to abate contamination stemming

37

from—3M's production and sale of MilSpec AFFF. For example, if a federal court determines that 80% of contamination is attributable to AFFF contamination, while a state court concludes that plaintiffs disclaimed only 50% of their recovery, it is obvious that 3M is being held liable in state court for actions protected by a federal defense.

To be sure, principles of preclusion, which bar a plaintiff from "advanc[ing] the same claim as an earlier suit" brought against the same defendant, *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020), *might* mitigate the risk of inconsistent judgments: Whichever party prevails in the case that first reaches judgment might assert that judgment as a bar to the second suit or to particular issues (like the government-contractor defense) in that case. But the fact that the State or 3M might assert preclusion just reinforces the point (and would not obviate the risk that the state court holds 3M liable for actions the federal court would find covered by a federal defense). If the State's "non-AFFF" and "AFFF" cases are about the *same claim*, then this "non-AFFF" case is "for or relating to" 3M's production of MilSpec AFFF, just as the State's "AFFF" case indisputably is.

Precisely because of the risk of inconsistent judgments, this Court has recognized that "duplicative" suits can harm "'judicial economy,'" create "'vexatious and expensive litigation,'" and foil "the 'comprehensive disposition of litigation.'" *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 504 (2d

Cir. 2019). The "rule against claim-splitting" therefore bars a plaintiff from dividing one case into two parallel suits. *Id.*; *Stark v. Starr*, 94 U.S. 477, 485 (1877) ("It is undoubtedly a settled principle that a party . . . is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail."). This Court should not permit the State to avoid federal-officer removal by duplicating its lawsuits and artificially splitting its claims between state and federal court—a separation that will likely be impossible to maintain in practice. Given the allegations in 3M's notice of removal, this case is removable despite the State's purported disclaimer.

### 3. The District Court's Reasoning Is Flawed.

Despite all of the above, the district court held that the State's disclaimer was enough to defeat removal. In so holding, the district court wrongly characterized 3M's causation and apportionment arguments merely as garden-variety matters of state law. The district court also failed to offer any meaningful way to distinguish the numerous recent decisions reaching the opposite conclusion, though it expressly disagreed with the Seventh Circuit's reasoning in *Raoul*—which now puts the district court at odds with the Fourth Circuit too (which relied on *Raoul* in reaching its complementary conclusion). Through it all, the district court failed to credit 3M's theory of the case laid out in its notice of removal.

39

***The causation and allocation questions implicate 3M's federal defense.*** The district court recognized that the causation and apportionment questions presented by the alleged presence of PFAS commingled from MilSpec AFFF and non-AFFF sources would be "messy at trial." JA272; *see* JA273 (the State agreeing these issues would be "complex and challenging for a fact finder to figure out"). Yet, despite that commingling *and* the State's concession that it seeks relief at sites with commingling, the district court concluded that—because of the disclaimer—the causation and apportionment questions are "merely an ordinary" defense under state law. SA10.

That is wrong for at least two reasons. First, 3M has alleged that the State has no ready way to distinguish between the PFAS from AFFF and non-AFFF sources. At this stage, the district court was required to credit that allegation and 3M's theory of the case. *See Dart Cherokee*, 574 U.S. at 89; *Agyin*, 986 F.3d at 175; *Maryland*, 130 F.4th at 389–91. Given that allegation, to hold 3M liable at sites with alleged commingling—as the States sought to do in *Maryland* and as the State concedes it seeks to do here—would necessarily hold 3M liable for conduct it undertook for the federal government. 3M's causation and apportionment arguments therefore concern 3M's federal government-contractor defense, not merely state law.

Second, even if the State insists at trial that it can determine which PFAS compounds came from which source—for example, through expert analysis and

testimony—3M has the right to have a federal factfinder consider and weigh such evidence. Those "challenging causation question[s]" implicate 3M's federal government-contractor defense because the answers determine the availability and scope of that defense—if the factfinder decides that there is no PFAS from MilSpec AFFF at a site, 3M would have no *federal* defense as to that site. *Maryland*, 130 F.4th at 391; *see Raoul*, 111 F.4th at 849; *Baker*, 962 F.3d at 945 n.3. And if the State's purported basis for distinguishing PFAS from MilSpec AFFF and non-AFFF sources were inaccurate or misapplied, a state court would hold 3M liable for contamination attributable to MilSpec AFFF—vitiating 3M's *federal* defense.

The district court also suggested that, despite 3M's plausible allegations of "commingl[ing] at various locations across Connecticut," JA26, the State "[p]resumably" would "be able to identify some sites within the state where PFAS contamination from non-AFFF sources has not commingled with contamination from AFFF," SA11. The district court understood that prospect to defeat any causal nexus between this case and 3M's federal defense. SA11. But even setting aside the district court's failure to credit 3M's allegations of widespread commingling at multiple sites throughout the State, *see Dart Cherokee*, 574 U.S. at 89; *Agyin*, 986 F.3d at 180–81, the district court's conclusion does not follow. As the State concedes and 3M has explained, it is not seeking recovery in this case *only* at sites where there is no evidence of commingling. *See supra* at 23–25. And the federal-

officer removal statute makes this entire case removable so long as 3M alleges that there is at least *one* site at issue with PFAS commingled from MilSpec AFFF and non-AFFF sources. *See Baker*, 962 F.3d at 945 ("the defense need only apply to one claim to remove the case"); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 257 (4th Cir. 2017) (same); 14C Wright & Miller, *Federal Practice and Procedure* § 3726 (the "entire action" is removable "even if only one of the controversies it raises involves a federal officer or agency"). Accordingly, as the Fourth Circuit explained, it is enough that, based on 3M's plausible allegations, MilSpec AFFF "contributed to at least a 'portion of'" the alleged contamination. *Maryland*, 130 F.4th at 391 (quoting *Baker*, 962 F.3d at 945); *see New Hampshire v. 3M Co.*, --- F.4th ---, 2025 WL 926229, at \*5 (1st Cir. Mar. 27, 2025) ("the alleged presence of *any* commingling requires a court to determine whether and to what extent MilSpec AFFF produced by 3M caused a portion of the contamination at issue," so even "*some* commingling" makes a case "removable under 3M's theory").[3]

    ***There are no plausible bases to distinguish the decisions holding that removal is required in these circumstances.*** The district court tried but failed to distinguish—and ultimately just expressed disagreement with—the line of cases

---

[3] In *New Hampshire*, the First Circuit concluded that 3M failed to timely remove the case to federal court. 2025 WL 926229, at \*6. Timeliness is no issue here; 3M removed this case within 30 days of the State filing its complaint. *See* 28 U.S.C. § 1446(b)(1).

(*Raoul*, *Baker*, *Nessel*, and *Express Scripts*) that reject disclaimers like the State has offered here. (Of course, *Maryland* came down after the district court's decision—and is squarely on point.)

The district court attempted to distinguish *Raoul* factually. Whereas that case involved a single site, this case alleges contamination across Connecticut, which the district court took to mean that the State might "be able to identify sites of contamination more remote from" the sources of MilSpec AFFF identified in the State's AFFF Complaint. SA15. But, as just explained, 3M need identify only one site with allegedly commingled PFAS contamination for this case to be removable. *Supra* at 41–42. Indeed, as the Fourth Circuit recognized, the State's insistence on "recovering for mixed PFAS contamination from numerous geographic locations" rather than a "single, geographically limited facility" cuts in favor of removal, not against it; the State's purported disclaimer is less likely to foreclose all recovery based on commingled PFAS from MilSpec AFFF and non-AFFF sources when its claims are statewide. *Maryland*, 130 F.4th at 392; *see also Express Scripts*, 119 F.4th at 192–93 (location-based disclaimers might be effective if the alleged injury is to a more targeted location that is "disconnected from the defendant's work for the federal government").

The district court then candidly stated that, "to the extent that this case is not properly distinguishable from *Raoul*," it "disagree[d] with the Seventh Circuit's

43

analysis." SA15. But the court offered no good reason to depart from *Raoul*, instead merely repeating its erroneous conclusion that the factfinder could "determine the source of PFAS contamination" and thereby avoid imposing liability for any AFFF-based contamination. SA15–16. This Court should decline the invitation from the State and the district court to create a circuit split—especially now that the Fourth Circuit has sided with the Seventh Circuit on facts that are materially identical to those here.[4]

The district court's efforts to distinguish *Baker* fare no better. In *Baker*, the district court said, the plaintiffs "disclaimed relief from one specific chemical, Freon-12," that was produced for the government, but they still sought recovery for two "specific toxins" (lead and arsenic) that were byproducts of Freon-12, rendering the disclaimer "incomplete." SA13–14. This case is no different. The State disclaims relief from one group of products, AFFF, but still seeks recovery for specific contaminants (particular PFAS compounds) that are undisputedly among the components of AFFF. *See* JA15–16, 21. That means this case presents the same

---

[4] The district court also noted that a factfinder would have "to determine the source of PFAS contamination" even if the State were only seeking recovery "for PFAS contamination in areas where it is wholly from non-AFFF sources." SA15. 3M agrees. But that is no reason to reject removal. Rather, it shows why removal is proper in any case in which a defendant plausibly alleges that a factfinder might have to weigh evidence of commingling, so long as one potential source of contamination is subject to a viable federal defense. *See supra* at 33 n.2.

"difficult causation question[s]" as *Baker*, 962 F.3d at 945 n.3, and the disclaimer here is equally incomplete.

The district court purported to distinguish *Nessel* on the ground that the State there split its claims between MilSpec AFFF and commercial AFFF. But that distinction makes no legal difference. Indeed, by grouping all AFFF claims together in its "federal" suit, the State essentially concedes it is impossible to disentangle MilSpec AFFF contamination and non-MilSpec AFFF contamination. And 3M's notice of removal alleges that it is no more possible to separate out AFFF and non-AFFF contamination, because a PFAS compound found in MilSpec AFFF is chemically indistinguishable from the same compound found in other PFAS sources in the environment. So, just as in *Nessel*, the State's disclaimer cannot "prevent Defendants from raising the production of MilSpec AFFF as a defense or an alternate theory, particularly when *Plaintiffs admit* that Defendants produced MilSpec AFFF and that PFAS from AFFF spread contamination throughout the state." 2021 WL 744683, at *3.

The district court also tried to distinguish *Express Scripts*. The district court said that, unlike the joint rebate negotiations at issue there, 3M's production of MilSpec AFFF and non-AFFF products is not "'indivisible' conduct," making it "impossible for [3M] to be held liable for any conduct connected to" MilSpec AFFF production. SA12–13. But the district court did not explain why there is any

45

meaningful difference between allegations of indivisible rebate negotiations and indistinguishable PFAS contamination, particularly given that each is the focus of the relevant complaint. Indeed, the district court recognized that the "federal and non-federal activities are arguably intertwined in this case." SA12. If the disclaimer were credited, then, a state court could hold 3M liable for actions it took at the federal government's behest, "no matter what the disclaimer says." *Express Scripts*, 119 F.4th at 191–92; *see also Maryland*, 130 F.4th at 391 (reading *Express Scripts* in just this way). So the merits determinations regarding causation and apportionment must be undertaken in federal court.

The Fourth Circuit's decision in *Maryland* simply adds to the growing body of well-reasoned cases that reject the district court's complete reliance on the State's disclaimer.

### *The district court's reliance on other district-court decisions was misplaced.*

With the more authoritative precedent against it, the district court relied on several decisions by other district courts that have permitted States to split their claims in the way that the State of Connecticut has done here. *See* SA9 ("I am convinced by the reasoning of those [five district-court] decisions"). Quoting one of those decisions, the district court said the disclaimer means "there is no scenario under which 3M could be found liable for any damages caused by AFFF," thereby severing the requisite nexus between this case and 3M's production of MilSpec AFFF. SA9

46

(quoting *New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215, 227–28 (D.N.H. 2023)). As explained, however, that is not accurate. Neither the district court here nor any of the five decisions on which it relied deferred to 3M's plausible allegations of commingling and indistinguishability or credited that theory of the case, as they were required to do. *See Agyin*, 986 F.3d at 175. Nor did the courts grapple meaningfully with whether removal is appropriate where, as a result of commingling of chemically identical PFAS from MilSpec AFFF and other PFAS sources, any verdict for the plaintiff would necessarily rest in part on MilSpec AFFF. *See Willingham*, 395 U.S. at 407 (federal-officer defenses should be "litigated in the federal courts").

Unsurprisingly, all five decisions on which the district court relied either have been abrogated or directly vacated. The decisions all pre-date *Maryland*, *Raoul*, and *Express Scripts*. *Maryland* vacated the district-court decisions from the Fourth Circuit (*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2024 WL 1470056 (D.S.C. Feb. 29, 2024), and *Maryland v. 3M Co.*, 2024 WL 1152568 (D. Md. Feb. 12, 2024)). *Raoul* abrogated the district-court decision from the Seventh Circuit (*Illinois ex rel. Raoul v. 3M Co.*, 693 F. Supp. 3d 948 (C.D. Ill. 2023)). And the reasoning in *Express Scripts* undermines the district-court decisions from the First Circuit (*New Hampshire* and *Maine v. 3M Co.*, 2023 WL 4758816 (D. Me. July 26, 2023)).

47

This Court should follow the cogent reasoning of the Fourth, Seventh, and First Circuits, rather than the now-discredited decisions of several district courts.

* * *

In short, the State's purported disclaimer and the district court's attempt to divorce 3M's alternative causation argument from 3M's exercise of federal authority do not withstand scrutiny. Indeed, those efforts run headlong into the capacious language of the federal-officer removal statute, which the Supreme Court has repeatedly directed courts to interpret "liberally" to ensure that defendants like 3M have access to federal court, rather than potentially "hostile state courts," to determine the applicability of their federal defenses. *Watson*, 551 U.S. at 147–48; *see also Willingham*, 395 U.S. at 407 (federal-officer removal "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)"). Given 3M's plausible allegations of commingling and indistinguishability, "3M's federal work is inextricably related to the charged conduct." *Maryland*, 130 F.4th at 391.

## III. 3M Has Asserted A Colorable Federal Defense.

Finally, a private defendant seeking removal under § 1442(a)(1) must allege "a 'colorable federal defense.'" *Agyin*, 986 F.3d at 174. Like the nexus requirement, this is not a high bar either. A defendant "need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407. Nor does a federal defense have to be "'clearly sustainable' on the facts." *Cuomo*, 771 F.3d at 115–16. Instead, the

48

defendant need only plausibly allege a defense based in federal law, *see Dart Cherokee*, 574 U.S. at 89; *Agyin*, 986 F.3d at 180–81, that is not "immaterial" or "wholly insubstantial and frivolous," *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 37 (1st Cir. 2022).

3M has invoked the federal government-contractor defense, which provides that government contractors are not subject to state tort liability when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

3M's notice of removal plausibly alleges all three elements of that defense. *First*, the federal government developed and used "reasonably precise specifications" for the formulation, performance, and testing of MilSpec AFFF, and those specifications required the use of PFAS. JA31–32. *Second*, the Naval Sea Systems Command determined that 3M's AFFF products conformed to those specifications, as shown by the inclusion of those products on the Department of Defense's "Qualified Products List." JA32. *Third*, 3M was not aware of any material risk regarding MilSpec AFFF about which the federal government did not know. JA33–35. The federal government has long understood—and publicly acknowledged—that AFFF contains PFAS, that AFFF constituents may migrate to

49

groundwater, and that some studies suggest potential adverse effects from PFAS. *See*, *e.g.*, Edward S.K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980) (report supported by Department of Defense stating that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally"); EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 6 (Nov. 4, 2002) (study assessing "health and environmental issues presented by fluorochemicals"). Drawing all reasonable inferences in 3M's favor, as is required at this stage, 3M has asserted a colorable federal government-contractor defense.

This should come as no surprise. The State raised no objection to removal of its "AFFF" suit based on the same plausible government-contractor defense. And the MDL court has explained that the government-contractor defense is available for claims against 3M relating to MilSpec AFFF. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, *15 (D.S.C. Sept. 16, 2022). Because 3M has plausibly alleged that this "non-AFFF" case is "for or relating to" MilSpec AFFF too, the same conclusion follows here. 28 U.S.C. § 1442(a)(1).

Before the district court, the State did not argue that 3M has failed to allege any piece of the government-contractor defense. Instead, the State relied solely on its disclaimer, arguing that it renders the defense moot for the same reasons that the

disclaimer purportedly severs the nexus between this case and 3M's production of MilSpec AFFF. Indeed, at the hearing on the remand motion, the State conceded that removal "rises or falls on whether that disclaimer is effective." JA269. The district court's entire analysis of this element likewise turned on the disclaimer. *See* SA7 ("the 'causal nexus' and the 'colorable federal defense' prongs of the federal officer removal test are both resolved by the State's disclaimer of any relief stemming from any form of AFFF"); SA9 ("The State's complete disclaimer of relief from AFFF contamination also means that 3M does not have a colorable federal government contractor defense."). As explained, however, the disclaimer is not effective in eliminating federal issues: Because 3M has plausibly alleged that PFAS from both MilSpec AFFF and non-AFFF sources have inseparably commingled at sites where the State seeks recovery in this case, this action implicates 3M's well-pleaded federal government-contractor defense despite the State's purported disclaimer. *See supra* Part II. 3M has asserted a colorable federal defense.

Under § 1442(a)(1), 3M has the right to have its federal defense "litigated in the federal courts." *Willingham*, 395 U.S. at 407; *see Cuomo*, 771 F.3d at 116. The concern animating federal-officer removal—"to protect federal officers from interference by hostile state courts," *Willingham*, 395 U.S. at 405—applies with particular force in the context of military procurement. The "exercise of government discretion is inherent to military contracting," and decisions involving "'military

51

equipment . . . often involve[] . . . judgment as to the balancing of many technical, military, and even social considerations.'" *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 88 (2d Cir. 2008). The judiciary is therefore loath to "inject" itself "into political and military decisions that are beyond its constitutional authority and institutional competence." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 187, 191 (2d Cir. 1987). But if a court must intervene, it should be a *federal* court—not a state court—that does so.

\* \* \*

Particularly given the Supreme Court's direction to construe the federal-officer removal statute liberally, 3M's notice of removal plausibly alleges that this "non-AFFF" case is "for or relating to" its production of MilSpec AFFF and thereby implicates 3M's federal government-contractor defense. 28 U.S.C. § 1442(a)(1). The State staked its entire case for remand on its purported disclaimer, but that disclaimer is ineffectual given the plausible allegations in 3M's notice of removal. The district court therefore has jurisdiction under the federal-officer removal statute. This Court should hold as much and reverse.

## CONCLUSION

For these reasons, 3M respectfully requests that the Court reverse the district court's order granting the State's motion to remand.

Dated: April 7, 2025

Respectfully submitted,

   */s/ Lauren R. Goldman*

Paul D. Clement

Lauren R. Goldman

Nicholas A. Aquart*

GIBSON, DUNN & CRUTCHER LLP

CLEMENT & MURPHY, PLLC

200 Park Avenue

706 Duke Street

New York, NY 10166

Alexandria, VA 22314

(212) 351-2375

(202) 742-8900

lgoldman@gibsondunn.com

paul.clement@clementmurphy.com

Amir C. Tayrani

*Supervised by principals of the firm

Zachary Tyree

who are members of the Virginia bar.

GIBSON, DUNN & CRUTCHER LLP

1700 M Street NW

Washington, DC 20036

(202) 955-8500

atayrani@gibsondunn.com

ztyree@gibsondunn.com

*Counsel for 3M Company*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this brief complies with the applicable typeface, type style, and type-volume limitations.  This brief was prepared using a proportionally spaced type (Times New Roman, 14-point font).  Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 12,433 words.  This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

April 7, 2025                              Respectfully submitted,


_/s/ Lauren R. Goldman_

Lauren R. Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
lgoldman@gibsondunn.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2025, I caused a true and correct copy of this brief, the joint appendix, and the special appendix to be filed electronically through the Court's CM/ECF system, which will send a notice of filing to all registered users.

> */s/ Lauren R. Goldman*
> Lauren R. Goldman
> GIBSON, DUNN & CRUTCHER LLP
> 200 Park Avenue
> New York, NY 10166
> (212) 351-2375
> lgoldman@gibsondunn.com