# 25-0011-cv

## United States Court of Appeals

*for the*

## Second Circuit

———————————————

STATE OF CONNECTICUT,

*Plaintiff-Appellee,*

— v. —

3M COMPANY,

*Defendant-Appellant,*

EIDP, INC., DUPONT DE NEMOURS, INC., CHEMOURS COMPANY,
CHEMOURS COMPANY FC, LLC, CORTEVA, INC.,

*Defendants.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## BRIEF FOR PLAINTIFF-APPELLEE

MATTHEW I. LEVINE
DEPUTY ASSOCIATE ATTORNEY GENERAL
CHRISTOPHER PATRICK KELLY
ASSISTANT ATTORNEY GENERAL
*Attorneys for Plaintiff-Appellee*
165 Capitol Avenue, 5th Floor
Hartford, Connecticut 06106
(860) 808-5250
christopher.kelly@ct.gov

CP COUNSEL PRESS    (800) 4-APPEAL • (383087)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ........................................................................... 1

COUNTERSTATEMENT OF THE ISSUE ............................................. 3

COUNTERSTATEMENT OF THE CASE ............................................. 3

    1.    PFAS and AFFF ............................................... 3

    2.    The State's Lawsuits ....................................... 4

    3.    The District Court's Remand Order ........................... 7

SUMMARY OF THE ARGUMENT ................................................... 9

ARGUMENT ............................................................................... 14

I.    3M Did Not Plausibly Allege That the Charged Conduct Has a Causal Nexus to Any Federal Authority ................................. 17

    A.    3M Ignores the Charged Conduct ........................................... 20

    B.    3M Has Not Identified a Causal Nexus ................................. 23

    C.    The State's Express Disclaimer Precludes Any Causal Nexus Between the Charged Conduct and Federal Authority ............................................................. 29

        1.    Express Disclaimers Are Presumptively Valid .......... 29

        2.    3M's "Commingling" Argument Does Not Defeat the State's Express Disclaimer ................................... 34

II.    3M Does Not Have a Colorable Federal Defense .......................... 45

    A.    The State's Express Disclaimer Renders Any AFFF-Related Government Contractor Defense Not Colorable ..... 46

    B.    Commingling Does Not Make 3M's Government Contractor Defense Colorable ................................... 49

i

CONCLUSION ......................................................................... 54

CERTIFICATE OF COMPLIANCE ...................................... 56

CERTIFICATE OF SERVICE ................................................ 57

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                 <u>Page</u>

*AG of N.J. v. Dow Chem. Co.*,
  No. 23-2449-RK-JBD,
  2024 U.S. Dist. LEXIS 73507 (D.N.J. Apr. 23, 2024) .........................33

*AG of N.J. v. Dow Chem. Co.*,
  No. 24-1753,
  2025 U.S. App. LEXIS 14331 (3d Cir. June 11, 2025) ........................33

*Agyin v. Razmzan*,
  986 F.3d 168 (2d Cir. 2021) .....................................................................23

*Baker v. Atl. Richfield Co.*,
  962 F.3d 937 (7th Cir. 2020)..................................................27, 38, 39

*Batchelor v. Am. Optical Corp.*,
  185 F.Supp.3d 1358 (S.D. Fla. 2016).....................................29, 30, 32

*Betzner v. Boeing Co.*,
  910 F.3d 1010 (7th Cir. 2018).........................................................18, 23

*Boyle v. United Technologies Corp.*,
  487 U.S. 500, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988) ...................45

*Caver v. Cent. Ala. Elec. Coop.*,
  845 F.3d 1135 (11th Cir. 2017)............................................................27

*City and Cty. of Honolulu v. Sunoco LP*,
  No. 20-cv-163-DKW-RT, No. 20-cv-470-DKW-KJM,
  2021 U.S. Dist. LEXIS 27225 (D. Haw. Feb. 12, 2021).......................22

*City of Hoboken v. Chevron Corp.*,
  45 F.4th 699 (3d Cir. 2022).....................................................10, 34, 54

*Connecticut v. Exxon Mobil Corp.*,
  83 F.4th 122 (2d Cir. 2023)......................................................... *passim*

*Crouzet v. First Baptist Church of Stonington*,
  199 Conn. App. 532 (2020)...................................................................51

## Table of Authorities--continued: Page

*Cuomo v. Crane,*
    771 F.3d 113 (2d Cir. 2014) ............................................................... 48

*Curiale v. A Clemente, Inc.,*
    No. 1:23-cv-187-NLH-AMD,
    2023 U.S. Dist. LEXIS 116252 (D.N.J. July 5, 2023) .................. 32, 33

*Dart Cherokee Basin Operating Co., LLC v. Owens,*
    574 U.S. 81, 135 S. Ct. 547, 190 L. Ed. 2d 495 (2014) ....................... 15

*DeFiore v. Soc. LLC,*
    85 F.4th 546 (9th Cir. 2023) ............................................................... 27

*Delaware v. BP Am., Inc.,*
    578 F.Supp.3d 618 (D. Del. 2022).................................................. 10, 22

*Despres v. Ampco-Pittsburgh Corp.,*
    577 F.Supp.2d 604 (D. Conn. 2008)..................................................... 31

*District of Columbia v. Exxon Mobil Corp.,*
    89 F.4th 144 (D.C. Cir. 2023) ............................................................. 27

*Dougherty v. A.O. Smith Corp.,*
    No. 13-1972-SLR-SRF,
    2014 U.S. Dist. LEXIS 96290 (D. Del. July 16, 2014).................. 29, 31

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust,*
    463 U.S. 1, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983) ........................ 15

*Goncalves v. Rady Children's Hosp. San Diego,*
    865 F.3d 1237 (9th Cir. 2017)........................................................ 26, 27

*Grimo v. Blue Cross/Blue Shield,*
    34 F.3d 148 (2d Cir. 1994) ................................................................. 14

*Hagen v. Benjamin Foster Co.,*
    739 F.Supp.2d 770 (E.D. Pa. 2010) ..................................................... 53

*Home Depot U.S.A., Inc. v. Jackson,*
    587 U.S. 435, 139 S. Ct. 1743, 204 L. Ed. 2d 34 (2019) ..................... 14

iv

**Table of Authorities--continued:** <span style="float:right">Page</span>

*Illinois ex rel. Raoul v. 3M Co.*,
    111 F.4th 846 (7th Cir. 2024) ...................................................... *passim*

*Illinois ex rel. Raoul v. 3M Co.*,
    693 F.Supp.3d 948 (C.D. Ill. 2023) .................................................. 8, 47

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
    MDL No. 2:18-mn-2873-RMG, No. 2:23-cv-05979-RMG,
    2024 U.S. Dist. LEXIS 64206 (D.S.C. Feb. 29, 2024) ......................... 9

*In re Asbestos Prods. Liab. Litig.*,
    770 F.Supp.2d 736 (E.D. Pa. 2011) .................................................. 31

*In re Commonwealth's Motion to Appoint Counsel Against or
    Directed to Def. Ass'n of Philadelphia*,
    790 F.3d 457 (3d Cir. 2015) ............................................................ 27

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    488 F.3d 112 (2d Cir. 2007) ............................................................ 16

*Isaacson v. Dow Chem. Co.*,
    517 F.3d 129 (2d Cir. 2008) ...................................................... *passim*

*Jefferson County v. Acker*,
    527 U.S. 423, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999) .. 10, 18, 21, 45

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) ................... 14

*Latiolais v. Huntington Ingalls, Inc.*,
    951 F.3d 286 (5th Cir. 2020)............................................................ 47

*Marley v. Elliott Turbomachinery Co.*,
    545 F.Supp.2d 1266 (S.D. Fla. 2008)................................................ 32

*Maryland v. 3M Co.*,
    130 F.4th 380 (4th Cir. 2025) .................................................... *passim*

## Table of Authorities--continued: Page

*Maryland v. 3M Co.*,
No. RDB-23-1836,
2024 U.S. Dist. LEXIS 48428 (D. Md. Feb. 12, 2024) ............................ 8

*McMann v. Air & Liquid Sys. Corp.*,
No. 2:14-cv-281-RSM,
2014 U.S. Dist. LEXIS 62687 (W.D. Wash. May 6, 2014) ................ 32

*Minnesota v. API*,
63 F.4th 703 (8th Cir. 2023) ........................................................ 27, 28

*Minnesota v. API*,
No. 20-1636 (JRT/HB),
2021 U.S. Dist. LEXIS 62653 (D. Minn. Mar. 31, 2021) ..................... 22

*Moore v. Elec. Boat Corp.*,
25 F.4th 30 (1st Cir. 2022) ................................................. 13, 27, 47, 53

*Nessel v. Chemguard, Inc.*,
No. 1:20-cv-1080,
2021 U.S. Dist. LEXIS 39175 (W.D. Mich. Jan. 6, 2021) .................... 37

*New Hampshire v. 3M Co.*,
132 F.4th 556 (1st Cir. 2025) .............................................................. 8

*New Hampshire v. 3M Co.*,
665 F.Supp.3d 215 (D.N.H. 2023) ........................................... 8, 29, 49

*Papp v. Fore-Kast Sales Co.*,
842 F.3d 805 (3d Cir. 2016) ............................................................. 46

*Price v. Johnson*,
600 F.3d 460 (5th Cir. 2010) ............................................................ 26

*Price v. Johnson*,
No. 3:09-CV-476-M,
2009 U.S. Dist. LEXIS 151682 (N.D. Tex. Apr. 10, 2009) ................. 26

vi

**Table of Authorities--continued:** <u>Page</u>

*Puerto Rico v. Express Scripts, Inc.*,
   119 F.4th 174 (1st Cir. 2024)......................................................*passim*

*Romano v. Kazacos*,
   609 F.3d 512 (2d Cir. 2010) ...............................................15

*Sawyer v. Foster Wheeler LLC*,
   860 F.3d 249 (4th Cir. 2017)......................................27, 41

*St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.*,
   990 F.3d 447 (5th Cir. 2021)...............................................31

*State of Hawai'i ex rel. Lopez v. CaremarkPCS Health, L.L.C.*,
   No. 23-464 LEK-RT,
   2025 U.S. Dist. LEXIS 79951 (D. Haw. Apr. 28, 2025)......................31

*United States v. Quiroz*,
   22 F.3d 489 (2d Cir. 1994) ...................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ...................52

*Watson v. Philip Morris Cos., Inc.*,
   551 U.S. 142, 127 S. Ct. 2301, 168 L. Ed. 2d 42 (2007) ....................53

*Willingham v. Morgan*,
   395 U.S. 402, 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1969) ...............*passim*

<u>Statutes</u>
28 U.S.C. § 1442 .......................................................*passim*

28 U.S.C. § 1446(a)....................................................15

<u>Other Authorities</u>
H.R. Rep. No. 112-17, pt. 1 (2011) ....................................25

Removal Clarification Act of 2011,
   H.R. 368, 112th Cong. (2011) ...........................25, 26, 27, 28

## INTRODUCTION

This case belongs in state court. The State of Connecticut filed its complaint in Connecticut Superior Court and ensured it could prosecute its case there by disclaiming the sole basis upon which the defendant chemical companies seek removal to federal court: liability for pollution caused by their firefighting foam, or "MilSpec AFFF," which they purportedly produced to military specification. Rather than seeking to recover for that federally directed conduct, the State seeks to recover only for pollution from the defendants' consumer products. Everyone agrees that the defendants produced those consumer products independent of any federal authority. Because those consumer products are not connected with any official duties of the federal government, the District Court correctly held that this case is not removable under the federal officer removal statute.

3M Company ("3M") insists that it can make this case about their federally directed AFFF because those chemicals allegedly commingled with, and cannot be distinguished from, the chemicals in their consumer products. Even if that were true, which it is not, that would not change the reality that the actions for which the State sues—pollution from

certain consumer products—were not federally directed, as required for federal officer removal.

Nor can the defendants raise a colorable federal defense at trial, as required for removal. The State has expressly renounced any claim based on the defendants' federally directed conduct, so the defendants are "not entitled to a federal forum in which to raise a defense arising out of [their] official duties because such a defense pertains to claims that simply do not exist." *Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187 (1st Cir. 2024) (cleaned up). The defendants' commingling defense is instead an ordinary, alternate causation defense that does not need a federal forum. If the pollution was caused by something other than the targeted chemicals—whether AFFF or something else—the State will not be able to recover.

The recent Fourth and Seventh Circuit decisions the defendants harp on do not support removal. Both decisions rest on an overly broad interpretation of the statute that this Court has already rejected. *See Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122, 145 n.7 (2d Cir. 2023). And neither case addressed the final element for federal officer removal— a colorable federal defense—which the defendants cannot meet here.

2

Simply put, this case is not about AFFF. Liability for federally directed AFFF production is not at stake in this case. What is at stake is liability for the private parties' (the defendant chemical companies) private actions (pollution from consumer products). This Court should reject the defendants' invitation to reimagine this case and widen the federal officer removal statute far beyond what Congress intended.

## COUNTERSTATEMENT OF THE ISSUE

Whether the district court properly remanded the State's action to Connecticut Superior Court.

## COUNTERSTATEMENT OF THE CASE

### 1. PFAS and AFFF

This case concerns the defendants' manufacturing of products using a class of manmade chemicals called "PFAS" (per- and polyfluoroalkyl substances). JA42. PFAS are known as "Forever Chemicals" because they do not naturally break down in the environment. JA43. PFAS persist in the environment, including in drinking water, groundwater, surface waterbodies, soil, and sediments, and can bioaccumulate in living organisms. *Id.* PFAS are carcinogenic and even extremely low concentrations can create harmful and potentially lethal conditions. *Id.*

3

Despite these dangers, PFAS have been widely used in industrial processes and in consumer products, including food packaging, cookware, carpeting, upholstery, clothing, and cosmetics because they are resistant to stains, water, and heat. *Id.* PFAS have also been used in certain types of firefighting foam—in particular, AFFF, or aqueous film-forming foam—used to extinguish liquid-based fires. JA137. AFFF was developed by the U.S. Naval Research Laboratory and supplied to the military by manufacturers in conformance with military specifications. JA19-20.

### 2. The State's Lawsuits

On January 25, 2024, the State filed two lawsuits in Connecticut Superior Court for the Judicial District of Hartford.

In this suit, the State named six defendants and alleged sixteen counts of common law and statutory violations related to the defendants' production, sale, and contamination of property and the environment by PFAS, except for any PFAS used in AFFF. The State alleged the defendants, chemical manufacturers, produced PFAS chemicals for decades and "concealed their knowledge about these harmful chemicals from regulators and deceived their customers" all while contaminating Connecticut's environment. JA44.

The scope of the complaint is limited by an express disclaimer against any recovery for AFFF.[1] The complaint exclusively alleges state law causes of action: public nuisance; trespass; negligence; violations of the Connecticut Environmental Protection Act; violations of the Connecticut Water Pollution Control Act; violations of the Connecticut Unfair Trade Practices Act; and the Connecticut Uniform Fraudulent Transfer Act. The complaint identifies sites in the State that are alleged to be contaminated with PFAS chemicals not related to AFFF. The State alleges that these identified sites, among others, were contaminated with PFAS from "industrial processes and sites and through the normal and foreseeable use and disposal of consumer, household, and commercial products containing PFAS." JA51. The State further alleges that the presence of PFAS contamination is especially likely at "locations in the vicinity of landfills, POTWs, and operating or closed manufacturing facilities." JA59.

---

[1] JA44 ("The State is not seeking to recover through this Complaint any relief for contamination or injury related to Aqueous Film Forming Foam, a firefighting material that contains PFAS which the State is addressing through a separate legal action to hold these and other defendants accountable.").

5

In the other suit, the State alleged twenty counts against twenty-eight defendants specifically for their role in the production and sale of AFFF. *See Connecticut v. 3M Co.*, No. 3:24-cv-234-JCH (D. Conn.).

3M removed both cases under 28 U.S.C. § 1442 to federal district court for the District of Connecticut. 3M argued that its role as a MilSpec AFFF supplier entitled it to remove the cases to raise a potential government contractor defense. JA11. In the non-AFFF case, 3M argued that despite the State's disclaimer, the potential commingling of PFAS from MilSpec AFFF and other sources meant that it could raise its government contractor defense to those claims as well. JA12.

The AFFF case was transferred to the AFFF Multidistrict Litigation in federal district court for the District of South Carolina. *See Connecticut v. 3M Co.*, No. 2:24-cv-1217-RMG (D.S.C.). The Judicial Panel on Multidistrict Litigation declined to transfer this complaint to the AFFF MDL. Order of JPML, *In re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG (MDL No. 2873), ECF 2403 (J.P.M.L. Feb. 28, 2024) (denying transfer to MDL).

6

### 3.    The District Court's Remand Order

The State moved to remand only the first suit—regarding non-AFFF PFAS—to state court. On December 17, 2024, the District Court granted that motion and remanded the case to Connecticut Superior Court. The District Court rejected 3M's arguments that it is entitled to remove the case on the grounds of federal officer removal and federal enclave jurisdiction.[2]

First, after crediting 3M's allegation that it has produced MilSpec AFFF under the direction of the federal government, the District Court found that 3M failed to establish two of the three elements for federal officer removal: there was no causal nexus between 3M's federally directed AFFF production and the conduct charged in the State's complaint, and 3M had not raised a colorable federal defense. SA7. 3M failed on both elements, the District Court explained, because the State's disclaimer against AFFF is "exactly the type that defeats federal officer

_____

[2] 3M also asserted federal enclave jurisdiction in its Notice of Removal, but that issue is not before this Court. The District Court rejected the argument, SA16-18, and 3M, by not pursuing the argument in its opening brief, has abandoned that asserted basis of federal jurisdiction. *See United States v. Quiroz*, 22 F.3d 489, 490 (2d Cir. 1994) ("an argument not raised on appeal is deemed abandoned").

jurisdiction." *Id.* Specifically, the court found that the disclaimer "specifically and unambiguously" disclaims the only claims which can create a causal nexus and prevents 3M from raising a colorable federal government contractor defense. SA8-10.

The District Court identified 3M's purported federal officer defense as, instead, "merely an ordinary, alternate causation defense." SA10. The court also disagreed with 3M's assertion that the alleged "commingling" of PFAS contamination from AFFF and non-AFFF sources gives rise to a government contractor defense. *Id.*

The District Court also favorably compared this case to non-AFFF PFAS lawsuits brought by other states and agreed with the unanimous holdings of the five other district courts' rulings rejecting federal officer removal. SA9; SA11-16. *See New Hampshire v. 3M Co.*, 665 F.Supp.3d 215 (D.N.H. 2023), *affirmed on other grounds*, 132 F.4th 556 (1st Cir. 2025); *Maine v. 3M Co.*, No. 2:23-cv-210-JAW, 2023 U.S. Dist. LEXIS 128740 (D. Me. July 26, 2023), *appeal pending*, No. 23-1709 (1st Cir.); *Illinois ex rel. Raoul v. 3M Co.*, 693 F.Supp.3d 948 (C.D. Ill. 2023), *affirmed*, 111 F.4th 846 (7th Cir. 2024); *Maryland v. 3M Co.*, No. RDB-23-1836, 2024 U.S. Dist. LEXIS 48428 (D. Md. Feb. 12, 2024), *vacated*

8

*and remanded*, 130 F.4th 380 (4th Cir. 2025); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, No. 2:23-cv-05979-RMG, 2024 U.S. Dist. LEXIS 64206 (D.S.C. Feb. 29, 2024), *vacated and remanded sub nom.*, 130 F.4th 380 (4th Cir. 2025).

## SUMMARY OF THE ARGUMENT

The District Court properly remanded this case to Connecticut Superior Court because 3M has not satisfied the requirements of the federal officer removal statute and cannot establish federal jurisdiction. The State's complaint does not target any conduct that was performed under the direction of a federal officer. To ensure that federally directed activities are not implicated, the State has waived, in this complaint, its right to recover for any injuries caused by AFFF, whether that AFFF was produced to military specification or otherwise.

Despite that express disclaimer, 3M insists that it is entitled to federal officer removal. But 3M has not alleged a causal nexus between MilSpec AFFF and the conduct charged by the complaint, nor does it have a colorable federal defense to raise. 3M's removal arguments would, without serving the purpose of the statute, dramatically expand federal officer removal to circumstances where no federal question is raised.

9

*Willingham v. Morgan*, 395 U.S. 402, 405 (1969) (describing the purpose of the statute as to "provide a federal forum for cases where federal officials must raise defenses arising from their official duties"); *see Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) ("the federal question element is met if the defense depends on federal law").

I.     3M has not established a causal nexus between its federally directed actions and the conduct challenged by the State's complaint, which is 3M's production of non-AFFF PFAS consumer and industrial products that have nothing to do with AFFF. Courts must look to the acts challenged by a complaint to determine whether federal jurisdiction exists. If the defendant's alleged federal duties are not targeted by the complaint, then the defendant may neither avail itself of federal officer removal nor revise the charged conduct for its own convenience. *See Delaware v. BP Am., Inc.*, 578 F.Supp.3d 618, 636 n.21 (D. Del. 2022), *aff'd sub nom.*, *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022).

3M fails to articulate any causal nexus between the charged conduct and its production of MilSpec AFFF. The best that 3M can put forth is a vague relationship based upon alleged "commingling" of AFFF

10

and non-AFFF PFAS and the fact that 3M intends to raise AFFF as an alternate source of PFAS contamination at trial. That is an ordinary causation defense rather than a causal nexus to the charged conduct that would warrant removal of this case.

If there were any doubt, 3M's bid for federal officer removal is defeated by the State's express disclaimer of relief for AFFF. Such disclaimers are typically accepted by courts if properly tailored to eliminate the factual bases for the defendant's federal authority. *Express Scripts*, 119 F.4th at 187. By eliminating the factual basis for 3M to invoke its federally directed conduct, the disclaimer severs any causal connection that conduct could have with the charged conduct in the complaint, rendering any questions of federal liability irrelevant.

As the First Circuit recently explained, plaintiffs may use disclaimers to prosecute their cases in state court unless the disclaimer fails to eliminate all federal ties to the case; but a disclaimer that requires a court to determine the nexus between the charged conduct and federal authority is invalid. *Express Scripts*, 119 F.4th at 188.

3M tries to overcome the State's disclaimer by relying heavily upon recent circuit decisions in other non-AFFF PFAS lawsuits, but these

11

cases do not support removal here. In *Maryland v. 3M Co.*, a divided panel of the Fourth Circuit accepted that 3M met a single element of the federal officer removal statute, but remanded the case for briefing on whether 3M meets the other necessary elements, including whether 3M has a colorable federal defense. *Maryland*, 130 F.4th at 393. The *Maryland* majority accepted 3M's argument on the single element under a broad standard that is contrary to the Second Circuit's. *Compare id.* at 390, *with Connecticut*, 83 F.4th at 145 n.7. In *Raoul*, the Seventh Circuit remanded the State of Illinois's PFAS lawsuit entirely on the basis of the State's disclaimer against recovering from any site with any presence of AFFF. *Raoul*, 111 F.4th at 849. That case supports remand of non-AFFF PFAS lawsuits to state court where state factfinders can identify the causation of PFAS contamination.

In this case, the State's disclaimer is a valid, express waiver of recovery for the only conduct alleged to have been performed under a federal officer—the production of MilSpec AFFF. The District Court determined that the State's disclaimer "is exactly the type that defeats federal officer removal jurisdiction." SA7. Because it is an express disclaimer of all relevant federal authority, the State's disclaimer should,

12

as an initial matter, be accepted as effective and preclusive of federal officer removal.

II.    No colorable federal defense is available to 3M. A colorable federal defense is one that is plausibly alleged and could have a material impact upon the case. *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 37 (1st Cir. 2022). 3M has declared its intention to raise the government contractor defense against liability for its production of MilSpec AFFF. However, the State's disclaimer forecloses that possibility by preemptively denying the State the right to recover for any AFFF contamination. Because the State's action excludes AFFF, 3M cannot be held liable for its production of MilSpec AFFF and it cannot raise a liability defense like the government contractor defense. To date, no court has accepted 3M's argument that it has a colorable government contractor defense in this context.

3M's argument that differently sourced PFAS have commingled in the environment is not a federal defense but, in fact, an ordinary, alternate causation defense. It does not matter for federal officer removal whether 3M argues that a contaminated site contains PFAS from MilSpec AFFF, or PFAS from any other AFFF, or any other substance.

13

The State's lawsuit is solely directed at non-AFFF PFAS products and 3M can contest liability by arguing that a contaminated site is attributable to any substance other than non-AFFF PFAS. Because that defense can be raised without addressing the scope of any federal officer's official duties, 3M is not entitled to a federal forum. *See Willingham*, 395 U.S. at 405.

3M cannot satisfy its burden to prove that it is entitled to federal officer removal. Therefore, a federal forum is not available to it and this Court should affirm the District Court's remand order.

## ARGUMENT

As courts of limited jurisdiction, federal courts must presume that a case lies outside of their jurisdiction unless and until jurisdiction has been shown to be proper. *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). As the party seeking removal, 3M "bears the burden of demonstrating the propriety of removal." *Grimo v. Blue Cross/Blue Shield*, 34 F.3d 148, 151 (2d Cir. 1994). "If it appears before final judgment that a case was not properly removed, because it was not within the original jurisdiction of the United States district courts, the

14

district court must remand it to the state court from which it was removed." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 8 (1983).

In this appeal, 3M maintains only one argument for federal jurisdiction—federal officer removal under 28 U.S.C. § 1442—and it has failed to prove that this case meets the requirements of that statute. The District Court correctly held that 3M failed to meet its burden, and this Court should affirm that decision upon de novo review. *See Romano v. Kazacos*, 609 F.3d 512, 517 (2d Cir. 2010).

Section 1442 extends a right of removal power to federal officers—and those persons acting under federal officers—who plausibly allege that they "can raise a colorable defense arising out of their duty to enforce federal law." *Willingham*, 395 U.S. at 406-07. To remove a case, the defendant must file a notice of removal "containing a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), which plausibly alleges the requisite elements for federal jurisdiction. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83-84 (2014). Though a defendant can seek to remove a case by right, it bears the

15

burden of establishing that removal was proper. *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008).

3M is not a federal officer. Therefore, to avail itself of federal officer removal under § 1442, it must satisfy a three-part test. *Isaacson*, 517 F.3d at 135. To remove a case under § 1442(a)(1), a removing party must "(1) show that it is a person within the meaning of the statute who acted under a federal officer, (2) show that it performed the actions for which it is being sued under color of federal office, and (3) raise a colorable federal defense." *Connecticut*, 83 F.4th at 142-43 (quoting *Isaacson*, 517 F.3d at 135) (cleaned up). In practice, the "first two of these prongs 'tend to collapse into a single requirement: that *the acts that form the basis for the state civil . . . suit* were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Connecticut*, 83 F.4th at 143 (quoting *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007)) (emphasis in original).

The District Court correctly determined that 3M failed to satisfy the second and third elements. To prevail on appeal, 3M must win on both issues, otherwise it cannot remove this case to federal court under

§ 1442(a)(1). Conversely, if this Court affirms on either issue, then the District Court's order must stand.

## I. 3M Did Not Plausibly Allege That the Charged Conduct Has a Causal Nexus to Any Federal Authority

To satisfy the second element of federal officer removal, 3M must "show that it performed the actions for which it is being sued under color of federal office . . . ." *Connecticut*, 83 F.4th at 142 (cleaned up). This Court has also described this requirement as "that *the acts that form the basis for the state civil . . . suit* were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Id.* at 143 (emphasis in original). Traditionally known as the "causation requirement" or the "causal-nexus requirement," *Connecticut*, 83 F.4th at 145 n.7, this element requires 3M to tie its purported actions under federal authority to the conduct challenged by the State's complaint. *Isaacson*, 517 F.3d at 137. This, it cannot do.

3M fails to satisfy the causal-nexus requirement because it did not demonstrate a sufficient connection between its purported federally directed activities (i.e., the provision of MilSpec AFFF for the federal government) and the conduct challenged by the State (i.e., the provision of consumer and industrial PFAS products for the private market).

17

To meet this requirement, the defendant must sufficiently allege not only that it has acted under the direction of federal officers, but that such direction bears a causal nexus to the charges made in the complaint. *See Connecticut*, 83 F.4th at 145. As this Court recently explained, "a bona fide federal officer could not remove a trespass suit that occurred while he was taking out the garbage – there must be a 'causal connection between the charged conduct and asserted official authority.'" *Id.* at 144 (quoting *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018)). "Translated to nongovernmental corporate defendants, such entities must demonstrate that the acts for which they are being sued . . . occurred *because of* what they were asked to do by the Government." *Isaacson*, 517 F.3d at 137 (emphasis in original). In assessing this element, the court must credit the defendant's theory of the case and need not require "an airtight case on the merits in order to show the required causal connection." *Acker*, 527 U.S. at 432.

3M argues that its Notice of Removal met the causation requirement because it alleged that consumer PFAS and MilSpec AFFF "commingle and are indistinguishable once they enter the environment," Br. at 25, and deciding "causation and allocation questions . . . determines

18

the availability and scope of 3M's federal defense . . . ." [3] Br. at 22-23. As a consequence, it insists that awarding any relief to the State "would necessarily sweep in at least some MilSpec AFFF for which 3M has a federal defense." Br. at 13-14.

This argument fails the causal-nexus requirement because 3M does not draw the required causal relationship between its federally directed conduct and the production of non-AFFF PFAS products charged in the complaint. It simply wants this Court to ignore the allegations in the complaint and transform this case into a different case.

---

[3] The State disagrees with 3M's categorical (and entirely unsupported) statement that a factfinder could never distinguish between the various PFAS compounds from MilSpec AFFF and non-AFFF sources at trial. *E.g.*, Br. at 28-29. The State also notes that it intends to prove the presence of non-AFFF PFAS using expert testimony and evidence that would be in addition to chemical analysis. At this early pre-trial stage of this case, 3M should not attempt (or be permitted) to characterize how the State intends to prove its case. Finally, the State vigorously disagrees with 3M's disingenuous mischaracterization of the State's complaint in this case and in its AFFF case as "alleg[ing] that the commingled PFAS caused a single, indivisible harm to many of the *same natural resources*." Br. at 10 (emphasis in original). To be clear, the State has never alleged that AFFF PFAS and non-AFFF PFAS have constituted a single, indivisible harm.

## A.  3M Ignores the Charged Conduct

The charged conduct in the State's complaint relates solely to the defendants' production of consumer PFAS products. Regardless of whether the Court determines that the State's express disclaimer frustrates federal officer removal, it narrows the scope of the charged conduct in this lawsuit—the State does not seek to impose liability for the production of MilSpec AFFF, only non-AFFF PFAS products. *See* SA8.

To sustain federal officer removal, 3M needed to draw a causal connection between its purported federal authority and its production of non-AFFF PFAS products. That connection has not been made. *See Willingham*, 395 U.S. at 408 ("this Court has noted that 'the person seeking the benefit of [the removal provisions] should be candid, specific and positive in explaining his relation to the transaction' which gave rise to the suit" (alteration in original) (citation omitted)). At no time has 3M alleged that its manufacturing, marketing, and selling of non-AFFF PFAS products was subject to federal direction or control.

Instead, 3M attempts to tie this case to MilSpec AFFF through its intended factual defense of "commingling" and stretch that defense to the

20

unrelated conduct charged in the complaint. That argument demands that this Court accept as true that PFAS from AFFF and non-AFFF sources cannot be distinguished. Br. at 2.

But this allegation goes to the merits of the case (can the State prove illegal pollution?), rather than jurisdiction (was 3M's production of non-AFFF PFAS products federally directed?). 3M's fundamental error is that it ignores the charged conduct in the State's complaint, which must be connected to the federal authority. *Acker*, 527 U.S. at 431; *see also Connecticut*, 83 F.4th at 145 ("there is no such causal nexus between Exxon Mobil's claimed role as a military supplier and the alleged 'campaign of deception' that forms the basis of Connecticut's CUTPA claims"); *Isaacson*, 517 F.3d at 137-38 ("To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack (here, the production of the byproduct dioxin) occurred *while* Defendants were performing their official duties." (emphasis in original)); *Express Scripts*, 119 F.4th at 180 ("we must credit Caremark's allegation that it performed *the challenged conduct* jointly for private parties and for the federal government" (emphasis added)).

21

It is the charged conduct of the complaint that defines the case. If the Court accepts 3M's formulation of the charged conduct—contrary to the express language of the complaint—then it is not crediting 3M's theory of *this* case, but that of a different case altogether. *See Minnesota v. API*, No. 20-1636 (JRT/HB), 2021 U.S. Dist. LEXIS 62653, at *14 (D. Minn. Mar. 31, 2021) ("To adopt Defendants' theory, the Court would have to weave a new claim for interstate pollution out of the threads of the Complaint's statement of injuries. This is a bridge too far."); *City and Cty. of Honolulu v. Sunoco* LP, No. 20-cv-163-DKW-RT, No. 20-cv-470-DKW-KJM, 2021 U.S. Dist. LEXIS 27225, at *26 (D. Haw. Feb. 12, 2021) (declining to credit Defendants' theory of case because "Defendants' theory of the case is not a theory for *this* case") (emphasis in original). 3M is not entitled to "freely rewrite the complaint and manufacture a cause of action explicitly disclaimed by [the State] and then ask the Court to accept [its] 'theory of the case' for purposes of removal." *Delaware*, 578 F.Supp.3d at 636 n.21.

3M asks this Court to read claims into the complaint that do not exist and that the State has rejected. In doing so, 3M asks to transform this case into one 3M wishes the State had brought. 3M asks too much.

22

Permitting removal of cases where the defendant ignores the charged conduct of the complaint and inserts new claims would impermissibly expand the removal statute and defy common sense.

### B. 3M Has Not Identified a Causal Nexus

Lawsuits may only be removed under the federal officer removal statute when there is a "causal connection between the charged conduct and asserted official authority," meaning the defendant performed the challenged conduct as a result of its government duties. *Connecticut*, 83 F.4th at 144 (quoting *Betzner*, 910 F.3d at 1015) (internal citations omitted); *see also Agyin v. Razmzan*, 986 F.3d 168, 179 (2d Cir. 2021) (finding removal to be appropriate when federal regulations directed the defendant to perform the challenged conduct). Defendants bear the burden of proving "that the acts for which they are being sued . . . occurred *because of* what they were asked to do by the Government." *Isaacson*, 517 F.3d at 137 (emphasis in original).

Defendants have never suggested that the commercial and industrial PFAS products at issue in this case have a causal connection to federal authority. The State brought this action because of Defendants' *non-AFFF PFAS products*; the State's express disclaimer against

23

recovering for AFFF ensures that the actions for which Defendants are being sued are those related only to their provision of non-military PFAS products for commercial and industrial purposes.

3M acknowledges that a private entity need allege that "the acts for which [it is] being sued . . . occurred *because of* what [it was] asked to do by the Government," yet it alleges no such causal connection. Br. at 22 (alterations in original). Instead, 3M argues that its "allegations of commingling and indistinguishability establish a plausible nexus between the acts complained of in this case and 3M's production of MilSpec AFFF for the U.S. military." Br. at 26.

Commingling does not amount to a causal nexus. Contaminants from completely unrelated sources may settle in the same location, but that does not mean the 3M's production of one contaminant implicates its production of another. As described above, the charged conduct in the State's complaint excludes all AFFF and will not require the factfinder to assess 3M's liability (or implied liability) for its purportedly federal activities related to MilSpec AFFF.

In a footnote, 3M suggests that the causal nexus hurdle is sufficiently low to establish this nexus based on the Removal

24

Clarification Act of 2011, H.R. 368, 112th Cong. (2011), which changed the language of § 1442. Br. at 21, n.1 ("Congress amended § 1442(a)(1) to cover not just suits 'for any act under color of [federal] office,' *Isaacson*, 517 F.3d at 135 (quoting 28 U.S.C. § 1442(a)(1) (2008)), but suits 'for *or relating to* any act under color of such office,' 28 U.S.C. § 1442(a)(1) (emphasis added)"). The implication is that the *Isaacson* causal connection standard was abrogated by this statutory change to more easily remove cases to federal court under the statute.

But this Court already has rejected that argument. *See Connecticut*, 83 F.4th at 145 n.7. As this Court explained in *Connecticut*, "we have continued to apply the casual-nexus [sic] requirement in our binding and precedential opinions long after 2011," notwithstanding the new "relating to" language that Congress added to the statute in 2011. *Id.*

The legislative history of the Removal Clarification Act of 2011 supports that interpretation and reveals the Act's true and modest purpose: to respond to "recent Federal court cases that reflect an inter- and intra-circuit split as to whether State 'pre-suit discovery' laws qualify as civil actions or criminal prosecutions that are removable under Sec. 1442." H.R. Rep. No. 112-17, pt. 1 (2011). The Act was motivated by a

25

Texas county commissioner's effort to depose a sitting congresswoman under a pre-civil suit discovery statute; the congresswoman removed the case to federal court under § 1442, where the district court determined that the action brought against the congresswoman was not captured in the statutory language of § 1442, *Price v. Johnson*, No. 3:09-CV-476-M, 2009 U.S. Dist. LEXIS 151682, at *3 (N.D. Tex. Apr. 10, 2009), and the Fifth Circuit affirmed. *Price v. Johnson*, 600 F.3d 460 (5th Cir. 2010).

So in 2011, Congress amended the statute to allow "removal of a 'civil action . . . that is against *or directed to*' a federal officer 'for *or related to* any act under color of [federal] office,' 28 U.S.C. § 1442(a) (emphases added)—removing altogether the requirement that the officer be 'sued' . . . [and] provided a definition for the term 'civil action' . . . ." *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1250 (9th Cir. 2017).

Other circuit courts have considered the legislative context of the 2011 Act and, like the Second Circuit, have determined that this change does not absolve defendants of their obligation to meet the causal standard. "We read our 'causal nexus' test as incorporating the 'connected or associated with' standard reflected in Congress's 2011 amendment and the Supreme Court's decisions." *DeFiore v. Soc. LLC*, 85 F.4th 546, 557

26

n.6 (9th Cir. 2023) (citing *Goncalves*, 865 F.3d at 1244-45); *see also Minnesota v. API*, 63 F.4th 703, 715 (8th Cir. 2023) ("Though we have continued to describe the standard in terms of 'causal connection,' . . . the causal connection required by § 1442(a)(1) is for the activity in question to relate to a federal office."); *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017) (continuing to apply a basic causal analysis to the "quite low" "hurdle" of "for or relating to any act").[4]

This interpretation of the statute is consistent with Second Circuit law which, before and after the 2011 Act, requires a causal connection to satisfy federal officer removal. *See Connecticut*, 83 F.4th at 145 n.7.

---

[4] Some circuits have instead found the second element of federal officer removal to be satisfied when the defendant alleges that its federally directed activities are broadly "related to" the charged conduct, even if those activities have no causal bearing on the case. *See, e.g.*, *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 471 (3d Cir. 2015) (adopting a lower non-causal connection standard); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249 (4th Cir. 2017) (same); *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020) (same); *Moore*, 25 F.4th at 34 (same); *District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144, 155-56 (D.C. Cir. 2023) (stating that the post-2011 standard does not require a causal connection without identifying a new standard). The United States Supreme Court recently granted certiorari in a case asking: "Whether a causal-nexus or contractual-direction test survives the 2011 amendment to the federal-officer removal statute." *Chevron USA Inc. v. Plaquemines Parish*, Case No. 24-813 (U.S. June 16, 2025).

Furthermore, a more liberal interpretation of the statute would undermine the utility of the second element of the federal officer removal test. If the defendant's federally directed activities are only relevant to the case because the defendant wants to raise them—and not because they have any causal bearing on the plaintiff's claims—then the second element becomes pointless. *Maryland*, 130 F.4th at 395 (Floyd, J., dissenting) (expressing concern that the court's ruling based on the lower "related to" standard "will sweep lawsuits properly before state courts into federal fora, at least to the extent it concerns a given claim's nexus to acts under federal authority"); *Minnesota*, 63 F.4th at 712 ("Although either approach allows broad jurisdiction, 'the statute must stop somewhere.'" (citation omitted)).

Applied here, the causal-nexus test requires 3M to allege a linkage between its MilSpec AFFF production and the charged conduct—which is the production of non-AFFF PFAS products. That connection has not been made with any degree of causation and, regardless of whether the pre-2011 *Isaacson* standard was indeed altered by the 2011 Act, 3M has not satisfied the causal-nexus requirement.

28

### C. The State's Express Disclaimer Precludes Any Causal Nexus Between the Charged Conduct and Federal Authority

Even if 3M had alleged a sufficient connection between its federal authority (production of MilSpec AFFF) and the charged conduct (production of non-AFFF PFAS products), the State's express disclaimer severs any causal nexus between the two. The State has renounced any recovery for AFFF in this case and because "there is no scenario under which 3M could be found liable for any damages caused by AFFF . . . [t]he State's claims are neither 'for' – nor do they 'relate to' – 3M's actions under federal authority." *New Hampshire*, 665 F.Supp.3d at 227-28.

### 1. Express Disclaimers Are Presumptively Valid

Plaintiffs may avoid federal jurisdiction through disclaimers that narrow and define the charged conduct for which relief is sought. "[F]ederal courts have consistently granted motions to remand based on a plaintiff expressly disclaiming the claims upon which federal officer removal was based." *Batchelor v. Am. Optical Corp.*, 185 F.Supp.3d 1358, 1363 (S.D. Fla. 2016) (quoting *Dougherty v. A.O. Smith Corp.*, No. 13-1972-SLR-SRF, 2014 U.S. Dist. LEXIS 96290, at *36 (D. Del. July 16, 2014)) (cleaned up).

29

The First Circuit recently explained the disclaimer doctrine, and the circumstances in which it can defeat federal officer removal, in *Express Scripts*:

> [t]o defeat removal, an express disclaimer must explicitly renounce claims upon which federal officer removal was based. If a plaintiff renounces such claims, then a defendant is not entitled to a federal forum in which to raise a defense arising out of his official duties, because such a defense pertains to claims that simply do not exist.

119 F.4th at 187 (cleaned up). In other words, a successful disclaimer may defeat federal officer removal under § 1442 if it expressly carves out the factual bases for any federally directed conduct. Such "express" disclaimers "eliminate *any* basis for federal officer removal so that, upon remand, there is no possibility that a state court would have to determine whether a defendant acted under a federal officer's authority." *Id.* (emphasis in original). *See, e.g.*, *Batchelor*, 185 F.Supp.3d at 1364 (remanding because the disclaimer of claims arising out of the plaintiff's exposure to asbestos while aboard naval ships meant that the defendant could not "assert a colorable federal defense based on government contractor immunity").

"Generally, courts respect express disclaimers . . . so long as they are not merely 'artful pleading designed to circumvent federal officer

30

jurisdiction.'" *St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 451 (5th Cir. 2021) (quoting *Dougherty*, 2014 U.S. Dist. LEXIS 96290, at *36). Courts may find a disclaimer to be artful pleading, or ineffective against § 1442 jurisdiction, if it suffers from certain deficiencies in scope. Faulty disclaimers are considered to fall into three categories. *See State of Hawai'i ex rel. Lopez v. CaremarkPCS Health, L.L.C.*, No. 23-464 LEK-RT, 2025 U.S. Dist. LEXIS 79951, at *25-26 (D. Haw. Apr. 28, 2025).

First, "ambiguous" waivers may be "insufficiently comprehensive" or incomplete, "leaving some claims that gave rise to a government contractor defense." *Id.*; *see, e.g.*, *Despres v. Ampco-Pittsburgh Corp.*, 577 F.Supp.2d 604, 608 (D. Conn. 2008) ("Plaintiffs in this case have not excluded from their claims against [defendant] all instances of asbestos exposure as a result of [defendant's] work on behalf of the Navy.").

Second, "overbroad" waivers, by contrast, disclaim the entire factual basis for all the charged conduct in the complaint. *See*, *e.g.*, *In re Asbestos Prods. Liab. Litig.*, 770 F.Supp.2d 736, 742 (E.D. Pa. 2011) (declaring ineffective a disclaimer excluding claims "caused by the acts or omissions of defendants committed at the specific and proven direction

of an officer of the United States government acting in his official capacity" because "the only claims alleged against Defendant arise[] from exposure on U.S. Naval ships at U.S. Naval shipyards").

Third, "circular" disclaimers attempt to frustrate removal by disclaiming all removable claims "based on boilerplate language" rather than by disclaiming the factual allegations that give rise to a federal defense. *Batchelor*, 185 F.Supp.3d at 1363. Accepting this type of disclaimer "would defeat the purpose [of] § 1442(a)(1) as it would force federal contractors to prove in state court that they were acting under the direction of the government." *Id.* (quoting *Marley v. Elliott Turbomachinery Co.*, 545 F.Supp.2d 1266, 1275 (S.D. Fla. 2008)); *see, e.g.*, *McMann v. Air & Liquid Sys. Corp.*, No. 2:14-cv-281-RSM, 2014 U.S. Dist. LEXIS 62687 at *5 (W.D. Wash. May 6, 2014) (rejecting plaintiffs' "disclaimer of any claims subject to a government contractor defense under *Boyle*").

3M invokes a distinguishable case, *Curiale v. A Clemente, Inc.*, involving a failed circular disclaimer to argue that disclaimers cannot sever the causal nexus connection. No. 1:23-cv-187-NLH-AMD, 2023 U.S. Dist. LEXIS 116252 (D.N.J. July 5, 2023); *see* Br. at 35. In *Curiale*, the

plaintiff sued manufacturers for discharging a wide array of chemicals at certain facilities in New Jersey, 2023 U.S. Dist. LEXIS 116252, at *3, but only "disclaimed harm arising from the government contracts." *Id.* at *17. The disclaimer failed because it did not provide a factual basis to segregate the plaintiff's case from the defendants' federal activities—it disclaimed a conclusion ("harm arising from" the contracts) rather than disclaiming specified contracts, products, or locations. *See also AG of N.J. v. Dow Chem. Co.*, No. 23-2449-RK-JBD, 2024 U.S. Dist. LEXIS 73507, at *28-29 (D.N.J. Apr. 23, 2024) (distinguishing state's creditable disclaimer from *Curiale* based upon the latter's unspecific scope of claims for "broad categories of chemicals" and the specific military contracts implicating some of those chemicals), *affirmed by*, *AG of N.J. v. Dow Chem. Co.*, No. 24-1753, 2025 U.S. App. LEXIS 14331 (3d Cir. June 11, 2025).

Conversely, the State's AFFF disclaimer is a valid *express disclaimer*, because it severs any connection between the conduct charged in the complaint (production of non-AFFF PFAS products) and 3M's federal actions (production of MilSpec AFFF), and does not otherwise suffer from any of the faults described above. The disclaimer is

33

not merely artful pleading because no claims remain—whether implicit or explicit—to hold 3M liable for its federal actions. "[H]ere, there are no federal claims to disguise." *City of Hoboken*, 45 F.4th at 713 (rejecting oil companies' artful pleading argument that suits for climate emissions "cannot separate harm caused by [disclaimed] military fuel use from harm caused by civilian fuel use").

Many circuit courts accept disclaimers that eliminate the factual basis for federally directed conduct. By contrast, a "disclaimer that requires a state court to determine the nexus 'between the charged conduct and federal authority' is not a valid means of precluding removal." *Express Scripts*, 119 F.4th at 188 (citing *Willingham*, 395 U.S. at 409). Here, this Court should credit the State's disclaimer because it eliminates any connection to AFFF PFAS pollution, which is the only connection that 3M asserts to claim federal jurisdiction.

### 2. 3M's "Commingling" Argument Does Not Defeat the State's Express Disclaimer

3M's argument that it satisfies the causal-nexus requirement is premised upon its "commingling" theory—that potentially indivisible injuries (here, contaminated sites) entitle the defendant to a federal forum to determine ordinary issues like causation. There is no controlling

34

caselaw to substantiate this theory; instead, 3M misapplies the disclaimer doctrine and then relies heavily upon inapposite caselaw from the Fourth and Seventh Circuits to argue that "commingling" can defeat a disclaimer for the purposes of the causal-nexus requirement.

Like the State, 3M relies upon *Express Scripts* to define the disclaimer doctrine and its limitations under federal officer removal. Br. at 34. In *Express Scripts*, the First Circuit rejected a disclaimer because the removing party plausibly alleged facts that showed the conduct was "indivisible." Puerto Rico sued several pharmaceutical benefit managers for alleged unlawful price setting of insulin prices and attempted to prevent federal officer removal by disclaiming "relief relating to any federal program (e.g., Medicaid, Medicare) or any contract related to a federal program," to narrow the case to conduct concerning private clients. *Express Scripts*, 119 F.4th at 181. Caremark removed the case under § 1442, arguing that Puerto Rico's disclaimer was ineffective because the negotiations at the center of the charged conduct were conducted on behalf of all federal and private clients simultaneously. *Id.* at 183. Because the charged conduct was "alleged to be indivisibly federal

and non-federal," Puerto Rico's disclaimer could not defeat the second element of federal officer removal. *Id.* at 192.

Questioning the District Court's application of *Express Scripts*, 3M tries to equate the indivisibility of the rebate negotiations in *Express Scripts* with its allegations that all PFAS contamination is indistinguishable, all while arguing that the necessary factfinding must be made in federal court. Br. at 45-46. But 3M misunderstands the First Circuit's ruling.

Whatever commingling might have occurred here is not the same as *Express Scripts*'s "indivisibility" issue. In *Express Scripts*, Caremark plausibly alleged that the charged conduct (negotiations in which it set insulin prices) and its federally directed conduct (those same negotiations as they related to federal programs) were the exact same. *Express Scripts*, 119 F.4th at 192. The First Circuit considered whether it could parse out the claims or allow Puerto Rico to further limit its recovery, but the indivisibility of the charged conduct meant that any attempt to impose liability would require Caremark to raise its federal defense. Puerto Rico's disclaimer was ineffective because, under the facts alleged, all the price negotiations Puerto Rico challenged were federally directed. *Id.* at

192. Regardless of what evidence Puerto Rico could produce at trial, the court could not impose liability without evaluating the scope of the defendants' federal activities and triggering their federal defense.

That is not the case here, where the conduct is divisible, and 3M has never alleged that its *production* of non-AFFF PFAS products is indivisible from its *production* of MilSpec AFFF. Therefore, there is no need for a court to address the scope and substance of 3M's federal duties or for 3M to raise any AFFF-related liability defense.

*Express Scripts* would be more analogous to this case if the State had, for instance, disclaimed MilSpec AFFF but no other forms of AFFF. 3M could then have argued that its production of MilSpec AFFF is indivisible from its production of consumer AFFF. That's what happened in *Nessel v. Chemguard, Inc.*, where the State of Michigan failed to prevent removal of a lawsuit that disclaimed recovery only for certain AFFF. No. 1:20-cv-1080, 2021 U.S. Dist. LEXIS 39175 (W.D. Mich. Jan. 6, 2021). Michigan disclaimed recovery for MilSpec AFFF, but still sought recovery from an arguably indistinguishable "commercial" non-MilSpec AFFF. *Id.* at *4.

37

As in *Express Scripts*, the disclaimer in *Nessel* was ineffective because the disclaimed conduct (production of military AFFF) and the charged conduct (production of consumer AFFF) was indistinguishable. In that case, the factfinder would have had to determine whether the AFFF at issue had been developed under federal direction for Michigan to recover.

3M relies upon a third "indivisibility" case, *Baker v. Atlantic Richfield Co.*, to support its "commingling as indivisibility" argument. S*ee, e.g.*, Br. at 33. There, the court denied remand because the plaintiffs failed to disclaim recovery for all federally directed activities. However, the Seventh Circuit also applied a broader "relates to" standard for the causal-nexus requirement of § 1442 and found that the *Baker* defendants met the standard because the charged conduct could not be distinguished from the defendants' federal authority.

In *Baker*, the plaintiffs sought recovery for lead and arsenic soil contamination at a single site where contaminating activities occurred through "most of the twentieth century." 962 F.3d at 939. The plaintiffs sued multiple defendants who manufactured products for the government during World War II, but disclaimed relief with respect to

38

only one such product, manufactured by one defendant. *Id.* at 941. For the other defendants, plaintiffs argued "that the Companies had only acted under color of federal office for a small part of the alleged time period at issue." *Id.* at 941. Concluding that defendants' "wartime production was a small, yet *significant*, portion of their relevant conduct," and simultaneously adopting the minimal "relates to" standard for § 1442, the court denied remand. *Id.* at 945 (emphasis in original).

The District Court correctly distinguished this case from *Baker* by virtue of the incomplete disclaimer; the plaintiffs in *Baker* (unlike the State here) failed to waive relief for the entire scope of the defendants' federal actions. SA13-14. The charged conduct in *Baker* (production of toxic material) and the federally directed conduct (production of toxic material for the military) were also identical activities on the same site and were only distinguishable by the time period in which they occurred.

By contrast, the State here has disclaimed *all* forms of AFFF and has challenged 3M's production of an entirely separate and unrelated set of products. So, unlike in *Express Scripts*, *Nessel*, and *Baker*, the charged conduct (production of non-AFFF PFAS products) is distinguishable from the disclaimed federal conduct (production of AFFF). Yet, 3M attempts

39

to conflate PFAS "commingling" with these indivisibility cases by misapplying *Maryland* and *Raoul*. These cases do not support its removal argument.

3M relies most significantly throughout its brief upon *Maryland v. 3M Co.*, which recently addressed a consolidated appeal of remand orders in substantially similar PFAS cases brought by the states of Maryland and South Carolina. 130 F.4th 380 (4th Cir. 2025). A divided Fourth Circuit panel became the first court to accept a PFAS manufacturer's causal-nexus argument despite an express AFFF disclaimer. But the Fourth Circuit did not decide the cases belong in federal court. Rather, it decided only that the manufacturers met the causal-nexus requirement for removal. It remanded the cases to their respective district courts to consider whether the defendants satisfy the other elements for federal officer removal, including whether they can raise a colorable federal defense. *Id.* at 393.

The *Maryland* majority opinion is inapposite here for two reasons.

First, its determination that 3M had satisfied the causal-nexus requirement was premised on a standard that is contrary to the Second Circuit's. The Fourth Circuit interprets § 1442 as only requiring

40

removing defendants to allege that the "relevant conduct relates to a contractor's federal work" without the need for any degree of causal relationship. *Id.* at 389; s*ee Sawyer*, 860 F.3d at 258 (adopting a broader "relates to" standard for § 1442(a)(1)). The *Maryland* majority concluded that the charged conduct was related—even if not *causally* related—to 3M's federal work because the states' cases would require a factfinder to address causation of PFAS-related contamination and "then apportion how much of a given sample of PFAS contamination came from Military AFFF compared to non-AFFF products." *Maryland*, 130 F.4th at 391.[5]

But, as discussed above, the Second Circuit has rejected this broad interpretation of the causal-nexus requirement. *See Connecticut*, 83 F.4th at 145 n.7; *Maryland*, 130 F.4th at 396 (Floyd, J., dissenting) ("the court reads the nexus requirement so broadly as to move toward

---

[5] It is unclear to the State whether the plaintiffs in *Maryland* represented to the court that the factfinder would need to "apportion" PFAS contamination between AFFF and non-AFFF sources. However, it is the position of the State that such apportionment is unnecessary and irrelevant to its non-AFFF lawsuit. The only determination that will be required is whether or not the State has proven that there is non-AFFF PFAS pollution—there will be no need to determine whether there is also AFFF PFAS or any other pollutant. The State's complaint targets non-AFFF PFAS and no other pollutant.

41

foreclosing state courtrooms to plaintiffs bringing state-law claims against defendants, when those defendants in turn identify even the slightest connection between the claims at issue at work they have performed as government contractors").

Second, to the extent that the *Maryland* majority found any relationship between the charged conduct and federal authority, it was simply wrong and this Court should not follow its example. The *Maryland* majority correctly noted that, once a defendant has invoked the federal officer removal statute, the well-pleaded complaint rule no longer applies and the court must credit the removing defendant's theory of the case when determining whether a causal connection exists. *Id.* at 389; *see also Isaacson*, 517 F.3d at 137. However, the court erred by disregarding the charged conduct of the complaint in favor of the defendant's commingling theory. *Id.* at 389. Unlike the indivisibility issue of *Express Scripts*, the charged conduct ("harm resulting from a discrete category of consumer products") was entirely separate from the federally directed conduct ("manufacturing firefighting foam to military specifications"). *Id.* at 394 (Floyd, J., dissenting). Theories of commingling and causation do not satisfy federal officer removal unless

42

they necessarily require the court to determine the scope of the officer's official duties, which is not required here.

3M also suggests the Seventh Circuit's decision in *Illinois ex rel. Raoul v. 3M Co.* supports its commingling argument, despite the Seventh Circuit's rejection of 3M's federal officer argument. *Raoul* provides no support for 3M here. The Seventh Circuit in *Raoul* remanded the State of Illinois's PFAS lawsuit entirely based on the State's eleventh-hour disclaimer against recovering from any site with *any* presence of AFFF. 111 F.4th at 849. According to 3M, the Seventh Circuit's decision confirms that only federal judges may characterize sources of PFAS, and allegations of commingling therefore merit a federal forum. Br. 31-33.

But *Raoul* does not say that. First, the case is factually distinguishable from the one brought by the State here. Illinois, like the plaintiffs in *Baker*, only sought to recover for contamination at a single location, where it may be more difficult to disentangle the conduct charged in the complaint from the conduct performed under federal direction. Then Illinois changed its disclaimer to eliminate any recovery from any site with AFFF, and the court limited its decision to that disclaimer. *Raoul*, 111 F.4th at 849 ("If even a morsel of contamination

43

is not from PFAS produced at the Cordova Facility . . . the State's recovery is barred. Because of this concession, this case falls outside of the scope of *Baker*.").

Second, *Raoul* does not support the premise that a federal forum is necessary to characterize the sources of different PFAS. Rather, it affirms that state courts may conduct that analysis, so long as the complaint's disclaimer ensures that the defendant cannot be held liable for contamination from any form of AFFF. As the District Court below put it, "[r]egardless of whether the factfinder is asked to assign liability only for PFAS contamination in areas where it is wholly from non-AFFF sources, or is asked to reduce liability where mixed AFFF and non-AFFF PFAS contamination is found, the factfinder is required to determine the source of PFAS contamination." SA15.

These cases do not support defendants in conjuring a causal nexus where, as in this case, none exists. What the federal officer removal statute requires is a causal nexus between a federal authority and the charged conduct. But 3M has never described a causal nexus between any federal authority and its production of non-AFFF PFAS products, and the State's disclaimer severs any connection between MilSpec AFFF

44

and the charged conduct. What 3M has instead alleged is a nexus between a federal authority and its ordinary, alternate causation defense. Because 3M cannot make the required showing, this Court should affirm.

## II.    3M Does Not Have a Colorable Federal Defense

Removal of this case would not serve the federal officer removal statute's purpose to "give officers a federal forum in which to litigate the merits of immunity defenses." *Acker*, 527 U.S. at 447. To remove a case, § 1442 requires the removing party to plead a "federal" defense which is "colorable."

To satisfy this requirement, 3M has declared its intention to raise the government contractor defense described in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988); Br. at 49. The federal government contractor defense protects military suppliers from liability for design defects when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

45

The threshold issue is whether 3M's claimed federal defense could reasonably be raised as a defense to liability. *Willingham*, 395 U.S. at 407 (an "officer need not win his case before he can have it removed"). The District Court concluded that 3M's government contractor defense is not colorable, and this Court should affirm.

3M's intended government contractor defense is not colorable for two reasons. First, the State's AFFF disclaimer preempts any opportunity to raise the government contractor defense because the State has waived any recovery for liability arising from 3M's production of MilSpec AFFF. Second, 3M's commingling argument is only an ordinary, alternate causation argument, and does not give rise to a federal defense to liability.

## A. The State's Express Disclaimer Renders Any AFFF-Related Government Contractor Defense Not Colorable

To satisfy the requirements of § 1442, a "colorable" federal defense must be one which is "legitimate and [could] reasonably be asserted, given the facts presented and the current law." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 815 (3d Cir. 2016) (alteration in original) (citation omitted). A federal defense is colorable unless it is "'immaterial and made solely for the purpose of obtaining jurisdiction' or 'wholly insubstantial

46

and frivolous.'" *Moore*, 25 F.4th at 37 (quoting *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 297 (5th Cir. 2020)).

3M does not dispute that its proposed government contractor defense could not apply to the consumer and industrial products at issue in the complaint. The purported government contractor defense 3M could raise, if at all, would only apply to claims against its production of MilSpec AFFF for the military, which is the only PFAS it produced at the federal government's direction. But by virtue of the State's express disclaimer, this case does not encompass any such claims against 3M, and the State cannot seek any relief from any AFFF pollution.

In effect, the State's express disclaimer preempts any federal defense 3M could raise related to AFFF. Any contamination attributable to AFFF will be unrecoverable for the State because of the disclaimer, without the need to raise and adjudicate a liability defense. *Raoul*, 693 F.Supp.3d at 958 (finding the government contractor defense not colorable because any contamination sourced from AFFF will be eliminated from the case). Consequently, there are no claims for conduct covered by the government contractor defense and 3M can never raise it.

47

Rather than explain how its government contractor defense is material to this litigation, 3M repeatedly sidesteps the State's facial attack on its federal officer removal pleading and insists that it is entitled to a federal forum to determine the "factual sufficiency" of its federal defense. Br. at 14. In support of this claim, 3M invokes *Cuomo v. Crane*, where this Court reversed a remand order premised on the removing party's failure to *prove* its federal defense, rather than a failure to plausibly allege a colorable one. 771 F.3d 113, 116 (2d Cir. 2014) (reversing remand where district court concluded that removing defendant's federal defense was presumptively rebutted by facts). But the State is not challenging the factual sufficiency of 3M's claimed government contractor defense for MilSpec AFFF. The State is contesting 3M's claim to a federal defense in *this case*, which is about non-AFFF PFAS products.

No court has held that 3M has a colorable federal defense to raise in the face of an AFFF disclaimer. Even the *Maryland* case never reached this issue and addressed only the causal-nexus element. *See Maryland*, 130 F.4th at 393 (remanding for briefing to determine whether 3M plausibly alleged a colorable federal defense). The District Court correctly

48

observed that every other district court that has evaluated similar PFAS complaints brought by other states have "uniformly" held that the AFFF express disclaimer "renders a federal government contractor defense irrelevant." SA9. As the district court for the District of New Hampshire recognized:

> [T]here is no scenario under which 3M could be found liable for any damages caused by AFFF. That is, regardless of whether 3M's AFFF conformed to a specification required by the United States military or whether 3M appropriately warned the government about the dangers of PFAS, 3M cannot be liable in this case for contamination resulting from its alleged supply of MilSpec AFFF.

*New Hampshire*, 665 F.Supp.3d at 227-28. Likewise in this matter, 3M could never prevail on its defense at trial because it would be asserting a defense against nonexistent claims, meaning that its government contractor defense is not colorable.

## B.  Commingling Does Not Make 3M's Government Contractor Defense Colorable

3M misconstrues the factual defenses that it intends to assert throughout this litigation as functionally asserting the government contractor defense. Br. at 29. This confuses an ordinary factual defense— whether MilSpec AFFF was an alternative source of PFAS contamination—with a federal liability defense. 3M cannot use ordinary

49

causation arguments to shoehorn a federal defense to claims that do not exist.

3M's commingling argument fails for all the reasons already discussed: it turns not on the indivisibility of the charged conduct, but on what the State can prove caused the contamination. Because the State has sued 3M for its production of non-AFFF PFAS products, 3M's commingling argument will likely be raised to dispute whether the State has identified contamination within the scope of the complaint. It may do so, but that argument will be limited to a factual causation inquiry, without opportunity to raise the government contractor defense.

To establish recoverable injury, the State will need to prove the presence of non-AFFF PFAS from 3M's consumer and industrial products. That is the defined contaminant targeted by this lawsuit, and it is the only conduct for which 3M could be held liable in this action. The State bears a burden to prove that the contamination is non-AFFF PFAS and not something else. *See Maine*, 2023 U.S. Dist. LEXIS 128740 at *27-28 ("the State has taken upon itself the burden as part of its case to demonstrate that the source of contamination in its Non-AFFF lawsuit is

50

not a AFFF source. If the factfinder concludes that the State has failed to meet its burden concerning the source, 3M will prevail").

For this reason, 3M's frequent invocation of this case's "causation and allocation questions" is incorrect. *See, e.g.*, Br. at 3. If the factfinder cannot determine that the contaminants identified by the State at a given site are non-AFFF PFAS, then the State will not recover for those contaminants. That means there will be no allocation between non-AFFF PFAS and AFFF PFAS. There will only be an allocation between *proven* non-AFFF PFAS and *everything else*. 3M could prevail by showing that some identified contaminant is the result of AFFF. Alternatively, it could show that the contaminant is mud, mercury, or anything other than the subject of this complaint. 3M could potentially prevail without doing anything at all, if the State has insufficient evidence to prove whether the contaminant is non-AFFF PFAS.

Attributing contaminants at a site to the challenged conduct of a defendant is a common issue in state environmental enforcement actions. *Crouzet v. First Baptist Church of Stonington*, 199 Conn. App. 532, 561 (2020) ("The existence of a secondary or additional source of

51

contamination . . . does not mean that the plaintiff has failed to prove that the defendants were also a source of the contamination.").[6]

3M wishes for this Court to hold that their ordinary defense implicates federal jurisdiction. It does not. If the State fails to prove that the contamination is non-AFFF PFAS, then the State does not recover because it has asserted no claims for anything other than non-AFFF PFAS. At no time will that causation analysis require 3M to assert a federal defense. Instead, it is an ordinary defense that the conduct does not fall within the scope of the complaint.

Federal officer removal exists to ensure that a federal court resolves a federal defense; it does not exist to ensure that a federal court conducts the injury causation analysis. While the federal officer removal statute

---

[6] 3M also tries to bolster its argument that commingling will lead to AFFF liability by referencing the State's request for injunctive relief. The only support 3M claims is a quote from *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). That case involved a denial of a class action certification over gender discrimination in the workplace. The full sentence of the cited authority is "The key to the [Rule 23](b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Id.* at 360. This does not support the notion that the State's request for injunctive relief gives 3M a colorable federal defense.

may be liberally construed by courts, "broad language is not limitless. And a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007). A defense cannot be asserted simply to create jurisdiction. *Moore*, 25 F.4th at 37. Courts may not need to adjudicate the merits of the raised defense to uphold removal, but they do need to consider whether such a defense is even possibly meritorious or "colorable." *See Hagen v. Benjamin Foster Co.*, 739 F.Supp.2d 770, 784 (E.D. Pa. 2010) (finding defendants' defense to be colorable "because Defendants would prevail on their defense at trial if the facts raised were proven").

In the absence of potential liability for AFFF—the only federally directed item that 3M produced—this case does not require a federal forum. The government contractor defense is not applicable to the State's claims and cannot be raised in this matter; therefore that defense is, by definition, "immaterial" and arguably "wholly insubstantial and frivolous." *Moore*, 25 F.4th at 37. The defense 3M intends to present is an ordinary, alternate causation defense that may be raised at trial, regardless of venue.

53

"Our federal system trusts state courts to hear most cases—even big, important ones that raise federal defenses." *City of Hoboken*, 45 F.4th at 705. 3M asks this Court to expand the scope of § 1442 and allow defendants to demand a federal factfinder for their ordinary factual defenses. But federal officer removal does not exist to resolve questions of fact, unless those questions are made necessary to determine the scope of the defendant's federal duties. *See Express Scripts*, 119 F.4th at 189. That is unnecessary here, where the State has sued only for conduct unrelated to any of the defendants' federally directed actions. No cognizable federal interest is implicated in this litigation. For that reason, the removal statute's purpose of providing a federal forum to hear defenses arising from official federal duties does not apply here and the case does not belong in federal court. *See Willingham*, 395 U.S. at 405.

## CONCLUSION

This Court should affirm the District Court's order remanding this case to the Superior Court of Connecticut, Docket No. HHD-CV-24-6179556-S.

Respectfully Submitted,

THE STATE OF CONNECTICUT
THE PLAINTIFF-APPELLEE

WILLIAM TONG
ATTORNEY GENERAL OF CONNECTICUT

By:    */s/ Christopher Patrick Kelly*
CHRISTOPHER PATRICK KELLY
ASSISTANT ATTORNEY GENERAL
MATTHEW I. LEVINE
DEPUTY ASSOCIATE ATTORNEY GENERAL
KAELAH M. SMITH
JULIA R. SUESSER
ASSISTANT ATTORNEYS GENERAL
OFFICE OF THE ATTORNEY GENERAL
*165 CAPITOL AVENUE*
*HARTFORD, CT 06106*
*(860) 808-5250*
*CHRISTOPHER.KELLY@CT.GOV*

55

## CERTIFICATE OF COMPLIANCE

I, Christopher Patrick Kelly, Assistant Attorney General of the State of Connecticut and a member of the Bar of this Court, certify pursuant to Federal Rule of Appellate Procedure 32(g) and Local Rule 32.1(a)(4) that the foregoing Brief of Plaintiff-Appellee State of Connecticut is proportionately spaced, has a typeface of 14 points or greater, and contains 10,929 words.

JULY 8, 2025                                   */s/ Christopher Patrick Kelly*
                                              CHRISTOPHER PATRICK KELLY
                                              ASSISTANT ATTORNEY GENERAL

56

## CERTIFICATE OF SERVICE

I, Christopher Patrick Kelly, Assistant Attorney General of the State of Connecticut and a member of the Bar of this Court, certify that on July 8, 2025, the attached Brief of Plaintiff-Appellee State of Connecticut was filed through the Court's electronic filing system. I certify that all participants in the case are registered users with the electronic filing system and that service will be accomplished by that system.

/s/ *Christopher Patrick Kelly*
CHRISTOPHER PATRICK KELLY
ASSISTANT ATTORNEY GENERAL