# No. 25-11

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

STATE OF CONNECTICUT,

*Plaintiff-Appellee,*

v.

3M COMPANY,

*Defendant-Appellant,*

EIDP, INC., DUPONT DE NEMOURS, INC., CHEMOURS COMPANY,
CHEMOURS COMPANY FC, LLC, CORTEVA, INC.,

*Defendants.*

---

On Appeal from the United States District Court
for the District of Connecticut, No. 3:24-cv-00239

---

## REPLY BRIEF FOR
## DEFENDANT-APPELLANT 3M COMPANY

---

<div style="display:flex">

Paul D. Clement
Nicholas A. Aquart
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

Lauren R. Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
lgoldman@gibsondunn.com

</div>

*Counsel for 3M Company*

(Additional counsel listed on inside cover)

Amir C. Tayrani
Zachary Tyree
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, DC 20036
(202) 955-8500
atayrani@gibsondunn.com
ztyree@gibsondunn.com

*Counsel for 3M Company*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

ARGUMENT ..........................................................................................3

    I.     The State's Nexus Arguments Fail. ......................................5

          A.     The State Is Wrong About The Charged Conduct, But 3M Plausibly Alleges A Nexus Regardless. ...........................5

          B.     The Causal-Connection Test Does Not Support Remand. .........9

          C.     The State's Disclaimer Is Merely Artful Pleading. ..................14

          D.     The Causation Questions Must Be Resolved By A Federal Factfinder. ...................................................................16

          E.     This Court Should Not Create A Circuit Split..........................18

    II.    3M Has Asserted A Colorable Federal Defense, And The State's Repeated Nexus Arguments Still Lack Merit. ........................26

CONCLUSION .....................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agyin v. Razmzan*,
   986 F.3d 168 (2d Cir. 2021) ......................................................................10, 17

*Baker v. Atl. Richfield Co.*,
   962 F.3d 937 (7th Cir. 2020) ........................................7, 8, 17, 21, 22

*Campos v. LeFevre*,
   825 F.2d 671 (2d Cir. 1987) ......................................................................20

*Caver v. Cent. Ala. Elec. Coop.*,
   845 F.3d 1135 (11th Cir. 2017) ...............................................................11

*City of Hoboken v. Chevron Corp.*,
   45 F.4th 699 (3d Cir. 2022) ................................................................24, 25

*Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*,
   996 F.3d 243 (4th Cir. 2021) ....................................................................6

*In re Commonwealth's Motion to Appoint Counsel Against
   or Directed to Def. Ass'n of Phila.*,
   790 F.3d 457 (3d Cir. 2015) ....................................................................10

*Cuomo v. Crane Co.*,
   771 F.3d 113 (2d Cir. 2014) ...............................................8, 15, 17, 18

*Curiale v. A. Clemente, Inc.*,
   2023 WL 4362722 (D.N.J. July 5, 2023) ........................................24

*DeFiore v. SOC LLC*,
   85 F.4th 546 (9th Cir. 2023) ....................................................................11

*Isaacson v. Dow Chem. Co.*,
   517 F.3d 129 (2d Cir. 2008) ...............................................2, 3, 13, 20

*Jefferson Cnty. v. Acker*,
   527 U.S. 423 (1999) .....................................................................................23

# TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*Kircher v. Putnam Funds Tr.*,
  547 U.S. 633 (2006) ................................................................12

*Latiolais v. Huntington Ingalls, Inc.*,
  951 F.3d 286 (5th Cir. 2020) (en banc) ..............................10

*Lozada v. United States*,
  107 F.3d 1011 (2d Cir. 1997) ..............................................20

*Maryland v. 3M Co.*,
  130 F.4th 380 (4th Cir. 2025) ............ 1, 6, 7, 8, 15, 16, 17, 19, 20, 21, 22, 25, 26

*Mayor & City Council of Balt. v. BP P.L.C.*,
  31 F.4th 178 (4th Cir. 2022) ..................................................6

*Minnesota by Ellison v. Am. Petroleum Inst.*,
  63 F.4th 703 (8th Cir. 2023) ................................................11

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) ................................................................9

*Nessel v. Chemguard, Inc.*,
  2021 WL 744683 (W.D. Mich. Jan. 6, 2021) ......................23

*New Hampshire v. 3M Co.*,
  665 F. Supp. 3d 215 (D.N.H. 2023) ....................................24

*Puerto Rico v. Express Scripts, Inc.*,
  119 F.4th 174 (1st Cir. 2024) ........................................15, 23

*Illinois ex rel. Raoul v. 3M Co.*,
  111 F.4th 846 (7th Cir. 2024) ........................8, 17, 21, 22

*Ratzlaf v. United States*,
  510 U.S. 135 (1994) ..............................................................12

*Sawyer v. Foster Wheeler LLC*,
  860 F.3d 249 (4th Cir. 2017) ..............................................10

*St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.*,
  990 F.3d 447 (5th Cir. 2021) ..............................................25

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Connecticut ex rel. Tong v. Exxon Mobil Corp.*,
    83 F.4th 122 (2d Cir. 2023) ........................................................................10, 20

*United States v. Gomez*,
    877 F.3d 76 (2d Cir. 2017) ..................................................................................27

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).............................................................................................8, 9

*Watson v. Philip Morris Cos.*,
    551 U.S. 142 (2007)...........................................................................................9, 14

*Willingham v. Morgan*,
    395 U.S. 402 (1969)...............................................................................................13

**Statute**

28 U.S.C. § 1442 ........................................................................................................3, 9, 19

**Other Authorities**

Black's Law Dictionary (5th ed. 1979) ....................................................................9

H.R. Rep. No. 112-17, 2011 U.S.C.C.A.N. 420 ....................................................12

iv

## INTRODUCTION

The State of Connecticut knows that any effort to recover for harms allegedly caused by PFAS from AFFF sources must proceed in federal court; that is why it filed two suits to recover for alleged harms to the same natural resources.  Thus, the State's entire brief necessarily revolves around one argument:  that by purporting to disclaim recovery in this case for any harms caused by PFAS from AFFF sources, it has defeated 3M's basis for federal-officer removal.  That is the precise contention the Fourth Circuit rejected in a materially identical case.  *See Maryland v. 3M Co.*, 130 F.4th 380 (4th Cir. 2025).  This Court should reverse rather than create a circuit split.

The State does not dispute that it seeks compensatory and injunctive relief for alleged PFAS contamination of its natural resources at sites where 3M has plausibly alleged that PFAS from both MilSpec AFFF and non-AFFF sources have commingled.  Indeed, the State could not dispute that reality, as its separately filed complaint seeks recovery for AFFF-related PFAS contamination at many of the exact same sites.  But, as 3M has plausibly alleged in its removal petition, once particular PFAS compounds commingle in the environment, there is no ready way to distinguish them based on source.  That means any relief the State obtains in this case will necessarily be based—at least in part—on PFAS contamination from MilSpec AFFF.  The State's recovery thus necessarily turns on the applicability and

1

scope of 3M's colorable federal government-contractor defense to liability for PFAS from MilSpec AFFF. As the Fourth and Seventh Circuits have held, those issues must be resolved in federal court under the federal-officer removal statute.

The State's response is wrong at every turn. First, the State accuses 3M of rewriting its complaint to conjure a connection between the conduct the State challenges and 3M's manufacture of MilSpec AFFF. But any fair reading of the State's complaint shows that the charged conduct—the alleged PFAS contamination of its natural resources—has a ready connection to 3M's production of MilSpec AFFF for the federal government, based on 3M's plausible allegations and theory of removal. It is black-letter law that 3M's allegations and theory, not the State's characterization of its complaint, dictate whether a case is removable under § 1442(a)(1).

The State then asserts that this Court's causal-connection test is stricter than 3M suggests (and than other circuits have held). But this Court has suggested otherwise, indicating that any difference is a matter of nomenclature, and this Court's cases—even before Congress's broadening 2011 amendments—impose a "quite low" "hurdle" that 3M's plausible allegations readily clear. *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008).

Finally, the State relies on its disclaimer to suggest that 3M lacks a colorable federal defense, dismissing the complex causation and allocation questions

implicated by the State's claims as "ordinary" state-law issues that can be decided in state court. But whether, and to what extent, the alleged PFAS contamination stems from MilSpec AFFF or from non-AFFF sources directly determines the availability and scope of 3M's federal government-contractor defense. Asserting a disclaimer does not transmute those issues into ordinary questions of state law. Whether framed as a question about the scope of the State's disclaimer or the scope of 3M's federal defense, some court will need to decide whether PFAS contamination can be disentangled and if so to what degree. Under the federal-officer removal statute, that court must be a federal court.

## ARGUMENT

The federal-officer removal statute permits any "person acting under" a federal officer to remove a civil action to federal court if the action is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1); 3M Br. 17–18. The State agrees that the Court must accept the "plausibl[e] alleg[ations]" in 3M's notice of removal. State Br. 15. That means this case is removable if 3M's notice of removal plausibly alleges that (1) 3M acted under a federal officer, (2) the charged conduct is "for or relating to" 3M's actions under color of federal authority, and (3) 3M has a colorable federal defense. 28 U.S.C. § 1442(a)(1); *Isaacson*, 517 F.3d at 135–39. 3M has plausibly alleged all three elements.

3

*First*, 3M acted under federal authority in manufacturing MilSpec AFFF for the federal government pursuant to government contracts. 3M Br. 19–20. The State does not dispute this element.

*Second*, the charged conduct at issue here is "for or relating to"—*i.e.*, has a nexus to—3M's exercise of federal authority. 3M Br. 20–28. The State seeks to recover for alleged contamination at sites where PFAS from MilSpec AFFF and non-AFFF sources have commingled. Once the same PFAS compounds from AFFF and non-AFFF sources have commingled in the environment, there is no ready way to distinguish them. Therefore, any relief—most obviously, injunctive relief—would necessarily sweep in at least some PFAS from MilSpec AFFF for which 3M has a federal defense. And any effort to delimit the scope of 3M's liability in this action based on the State's purported disclaimer would in substance be a determination of the scope of that federal defense—the two inquiries are coterminous. That creates a nexus between the alleged contamination and 3M's federal activities, as the Fourth and Seventh Circuits recently held. 3M Br. 23–28.

The State tries to avoid that conclusion by asserting that the charged conduct is 3M's production of non-AFFF products, for which 3M has no federal defense. But as numerous courts have held, the charged conduct stems from the substance of the complaint, not from a party's hollow disclaimer or characterization of its factual theories. Here, the complaint is clear that the charged conduct is alleged PFAS

4

contamination of the State's natural resources—not merely 3M's production of non-AFFF products. The State emphasizes its disclaimer, but it still seeks to recover for sites where PFAS is allegedly commingled from MilSpec AFFF and non-AFFF sources. The State, moreover, acknowledges, as it must, the black-letter law that the plausible allegations of the removal petition—and not the State's own characterizations of its complaint—control in this context. The State cannot evade that well-established principle by emphasizing its view of the charged conduct or its disclaimer.

*Third*, 3M plausibly alleges that it has a colorable federal government-contractor defense in this case because 3M provided MilSpec AFFF to the U.S. military according to reasonably precise specifications requiring the use of PFAS and that the government was aware of the alleged risks of PFAS. 3M Br. 48–52. The State has no independent response on this element and instead rehashes its erroneous nexus arguments.

## I.  The State's Nexus Arguments Fail.

### A.  The State Is Wrong About The Charged Conduct, But 3M Plausibly Alleges A Nexus Regardless.

The State alleges that 3M caused PFAS contamination of its natural resources, and 3M's plausible allegations of commingling and indistinguishability mean that the charged conduct has a nexus to 3M's production of MilSpec AFFF. 3M Br. 20–28. The State denies this, asserting that its complaint relates solely to 3M's

"provision of consumer and industrial PFAS products for the private market" for which 3M has no federal defense. State Br. 17. But the State mischaracterizes the charged conduct. And, even as reimagined by the State, the charged conduct would still have a nexus to 3M's federal activities.

To identify the charged conduct, a court reads the complaint "as a whole" to determine "the heart of [the State's] claims," *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 233–34 (4th Cir. 2022), and should not "elevate form over substance," *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 256 (4th Cir. 2021); *see Maryland*, 130 F.4th at 390. Here, the State's claims center on alleged PFAS contamination. 3M Br. 22, 28. That is, after all, what the State seeks to remedy. The State's negligence claim alleges that 3M was "a direct and proximate cause of widespread PFAS contamination in Connecticut." JA101–02. The public-nuisance claim alleges that 3M has "created a public nuisance" by "contaminating drinking water, groundwater, surface water, fish, soil, sediment, and other natural resources" with PFAS. JA98–99. One of its statutory claims alleges that 3M "unreasonably polluted, impaired, and/or destroyed the State's air, soil, sediment, biota, surface water, estuaries, submerged lands, wetlands, groundwater, drinking water, and other natural resources by releasing PFAS into the environment." JA102–03. The others likewise allege that 3M "caused pollution and contamination of the lands and waters of the State of Connecticut by PFAS."

6

JA109–10; *see* JA104–12. The State's prayer for relief tells the same story. It seeks "[i]njunctive relief to address past, present, and future PFAS pollution" and "[c]ompensatory damages arising from PFAS pollution." JA129.

It should be abundantly clear that the charged conduct is PFAS contamination, not merely 3M's production of non-AFFF products. The Fourth Circuit reached the same conclusion in *Maryland*. Maryland and South Carolina each filed two overlapping suits seeking recovery for alleged PFAS contamination but disclaiming recovery for PFAS from AFFF products in one of them. 130 F.4th at 385. Assessing the complaints in the purported "non-AFFF" cases as a whole, the court nonetheless concluded that "[b]oth States plead general PFAS contamination" of natural resources. *Id.* at 390; *see id.* (discussing "the PFAS contamination charged by the States"); *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944–45 (7th Cir. 2020). The same is true here. The State's claims focus not on particular product sales but on alleged PFAS contamination of natural resources. The disclaimer does not change the charged conduct.

Even if the charged conduct were conceived as limited to 3M's production of non-AFFF products, 3M would still have plausibly alleged the requisite nexus between that conduct and 3M's federal authority. As the State agrees, State Br. 18, 3M's theory of the case—not the State's—governs in assessing the for-or-relating-to requirement. The State cannot evade that black-letter law via a disclaimer or an

artificially narrow conception of the charged conduct. Under 3M's theory, the alleged contamination for which the State seeks recovery—including that which the State attributes to PFAS from non-AFFF products—stems at least in part from PFAS from MilSpec AFFF products used in Connecticut. *See* JA295 ("The State's position is that it may be able to recover from sites where PFAS and AFFF are commingled.").

Because 3M has plausibly alleged that chemically identical PFAS compounds from the two sources combined to cause the alleged contamination, 3M Br. 23–26, the question becomes how much of the alleged PFAS contamination in the State's natural resources results from non-AFFF versus MilSpec AFFF sources. The "important causation and allocation questions" presented by the commingled and indistinguishable PFAS compounds establish a nexus between the charged conduct—no matter how defined—and 3M's production of MilSpec AFFF. And 3M has the right to have those questions decided by a federal court. *Maryland*, 130 F.4th at 392 (citing *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 849 (7th Cir. 2024)); *see Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014); *Baker*, 962 F.3d at 944–46 & n.3.[1]

_____

[1] The State's only response to 3M's argument that the State seeks indivisible injunctive relief is to quibble with the relevance of *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). State Br. 52 n.6. The State asserts that *Wal-Mart* is inapposite because it discussed injunctive relief in the class-action context. *Id.* But *Wal-Mart*'s
*(Cont'd on next page)*

## B.     The Causal-Connection Test Does Not Support Remand.

The State argues that 3M failed to satisfy this Court's "causal connection standard," which the State views as a demanding test. State Br. 25. There are two problems with that argument. First, this Court has suggested that its test imposes only a "low hurdle" and is compatible with the 2011 amendments to the federal-officer removal statute. Second, 3M's notice of removal readily clears that "low hurdle."

Over time, Congress has consistently broadened the standards for federal-officer removal. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 148–49 (2007). The 2011 amendments are just the latest example. The pre-2011 statute allowed removal of a suit "for any act under color of [federal] office." 28 U.S.C. § 1442(a)(1) (2008). In 2011, Congress broadened the statute to permit removal of a suit "for *or relating to* any act under color of [federal] office." 28 U.S.C. § 1442(a)(1) (emphasis added). The "ordinary meaning" of "relating to" "is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting Black's Law Dictionary 1158 (5th ed. 1979)).

---

explanation that an injunction applies either "as to all of the class members or as to none of them," 564 U.S. at 360, applies with full force here. The State's sought-after injunction would apply to *all* alleged PFAS contamination, which stems from both MilSpec AFFF and non-AFFF sources.

9

Consistent with that plain meaning, the circuit courts—including this one—have held that the 2011 amendments "'broaden the universe of acts that enable Federal officers to remove to Federal court.'" *Agyin v. Razmzan*, 986 F.3d 168, 174 n.2 (2d Cir. 2021) (quoting *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila*., 790 F.3d 457, 467 (3d Cir. 2015)). Courts have thus explicitly held that the nexus requirement is satisfied when there is "a connection or association between the act in question and the federal office." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017); *see*, *e.g.*, *Latiolais v. Huntington Ingalls, Inc*., 951 F.3d 286, 292 (5th Cir. 2020) (en banc); 3M Br. 21–22 n.1.

The State says this Court "rejected" the connection-or-association test in favor of the supposedly-more-stringent "causal connection standard" in *Connecticut ex rel. Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 145 n.7 (2d Cir. 2023). State Br. 25. Not so. While *Tong* noted that this Court "h[as] continued to apply the causal-nexus requirement in our binding and precedential opinions long after 2011," it cited *Agyin* for that proposition. 83 F.4th at 145 n.7. And, as just noted, *Agyin* recognized that the 2011 amendments "broaden[ed]" the statute's scope, but that there was no need to change the Court's nomenclature. 986 F.3d at 174 n.2; *see* 3M Br. 21 n.1.

Other courts have said the same thing. They continue to call the nexus element the "causal connection" requirement even post-2011, but they hold that this

10

undemanding requirement is satisfied by a connection or association between the relevant act and the federal authority. *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 715 (8th Cir. 2023) ("[t]hough we have continued to describe the standard in terms of 'causal connection,' the causal connection required . . . is for the activity in question to relate to a federal office," which "is met if the charged conduct has a 'connection' or 'association' with the federal action" (internal citations omitted)); *DeFiore v. SOC LLC*, 85 F.4th 546, 557 & n.6 (9th Cir. 2023) ("We read our 'causal nexus' [or 'causal connection'] test as incorporating the 'connected or associated with' standard."); *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017) ("The phrase 'relating to' is broad and requires only a 'connection' or 'association' between the act in question and the federal office" to satisfy the "causation connection" requirement). The State therefore has things backwards when it says those cases support its stricter view of the statute. State Br. 26–27. As the State notes, the Supreme Court may provide further clarity next Term, but the Court is likely to emphasize that—as this Court recognized in *Agyin*—the plain text of the 2011 amendments undeniably broadened the statute and made it easier to remove cases like this.

The State invokes legislative history to deny that broadening effect. State Br. 25–27. That argument fails, because the State is focused on the wrong statutory language: Congress made multiple changes to § 1442(a)(1) in 2011. And while a

legislative report notes that *different* language was changed to ensure that suits brought under "pre-civil suit discovery statute[s]" are removable under § 1442(a)(1), State Br. 25–27, that same report specifies that the "relating to" language—*i.e.*, the phrase at issue here—was added to "broaden the universe of acts that enable Federal officers to remove to Federal court." H.R. Rep. No. 112-17, at 6, 2011 U.S.C.C.A.N. 420, 425. And in any event, courts "do not resort to legislative history to cloud a statutory text that is clear." *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994).

Finally, the State resorts to policy arguments. State Br. 28. It suggests that adopting the connection-or-association test would render the "relating to" element "pointless" because a "defendant's federally directed activities" would become relevant merely "because the defendant wants to raise them—and not because they have any causal bearing on the plaintiff's claims." *Id.* But that argument is doubly unavailing. First, as noted, Congress has repeatedly acted to broaden federal-officer removal and did so in 2011 by using language the Supreme Court has already interpreted to have broad reach. Objecting to that change on policy grounds ignores both the text and Congress's own policy preferences. Second, to the extent the State complains about giving undue weight to defenses "the defendant wants to raise," that simply takes issue with the well-established principle that federal-officer removal is an exception to the well-pleaded-complaint rule, meaning it *is* triggered by a defendant's invocation of a plausible federal defense. 3M Br. 18; *see Kircher*

*v. Putnam Funds Tr.*, 547 U.S. 633, 644–45 & n.12 (2006). And in any event, this policy debate is not even implicated here: 3M's federal defense is relevant because *the State* admittedly seeks to recover for alleged contamination at sites containing PFAS from MilSpec AFFF. JA295. This case falls within the core of federal-officer removal. *See Willingham v. Morgan*, 395 U.S. 402, 405–09 (1969) ("One of the primary purposes of the removal statute . . . was to have [federal officers'] defenses litigated in the federal courts.").

In short, then, the statutory amendment confirms that this case is removable. But the case would be removable under this Court's pre-2011 nexus test too. Even then, this Court recognized that the "hurdle" erected by the nexus requirement was "quite low." *Isaacson*, 517 F.3d at 137. And, as explained, 3M plausibly alleges that "the acts for which [it is] being sued" (alleged PFAS contamination of the State's natural resources) "occurred because of what [it was] asked to do by the Government" (manufacture MilSpec AFFF). *Id.*; *see supra* at 4, 8; 3M Br. 20–28.[2]

---

[2] If the Court concludes that the same pre-2011 causal-connection test still applies *and* that this case would not be removable under that test, the Court should hold this case for the Supreme Court's decision in *Chevron USA Inc. v. Plaquemines Parish*, No. 24-813. As the State notes, that case will determine "[w]hether a causal-nexus or contractual-direction test survives the 2011 amendment to the federal-officer removal statute." *Chevron USA Inc. v. Plaquemines Par.*, No. 24-813, 2025 WL 1678985, at *1 (U.S. June 16, 2025).

**C.      The State's Disclaimer Is Merely Artful Pleading.**

The State repeatedly contends that its disclaimer of "any relief for contamination or injury related to [AFFF]" resolves this case. JA44. According to the State, the disclaimer "eliminat[es] the factual basis for 3M to invoke its federally directed conduct," "severs any causal connection that conduct could have with the charged conduct in the complaint," and "render[s] any questions of federal liability irrelevant." State Br. 11. As 3M has already shown, that argument is flawed for multiple reasons. 3M Br. 28–48.

The State begins by asserting that its disclaimer is "presumptively valid." State Br. 29. Yet the question is not whether the disclaimer is valid, but whether it has the State's desired effect of eliminating 3M's entitlement to a federal forum. As to that relevant question, the Supreme Court has held that § 1442(a)(1) should be construed "liberally" in favor of *removal*. *Watson*, 551 U.S. at 147.

The State then spends several pages developing a theory that disclaimers are invalid only if they are "ambiguous," "overbroad," or "circular." State Br. 30–33. The State asserts that its disclaimer, by contrast, is "express" because it makes it impossible for the State to hold 3M liable for its federal activities. *Id.* at 33–34. But the State's argument rests on a false dichotomy. Many disclaimers are express, but still fail to defeat federal jurisdiction. Ambiguity, overbreadth, and circularity are some ways a disclaimer can fall short, and some of those terms could describe the

14

State's effort to disclaim PFAS contamination that even the State acknowledges implicates a colorable federal defense.

But the fundamental problem remains that—despite its so-called express disclaimer—the State seeks to recover at multiple sites where the same specific PFAS compounds from MilSpec AFFF and non-AFFF sources are commingled in the State's natural resources and are indistinguishable. JA26; *see also* JA21–27. As the State ultimately acknowledges, a disclaimer is "invalid" if it "fails to eliminate all federal ties to the case" or otherwise "requires a court to determine the nexus between the charged conduct and federal authority." State Br. 11; *see Maryland*, 130 F.4th at 389. That is the case here. The factfinder will have to decide, based on expert testimony or other evidence, whether it is possible to segregate PFAS contamination based on source, and if so, what percentage of PFAS contamination at each site traces back to MilSpec AFFF. Of course, 3M alleges that such disentangling is likely not possible, but in any event, those decisions—whether framed in terms of the scope of the disclaimer or the scope of the federal defense— determine the availability and scope of 3M's federal government-contractor defense. 3M therefore has the right to argue the law and the facts in a federal court. *Cuomo*, 771 F.3d at 116; *Maryland*, 130 F.4th at 390–92; *Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 188–93 (1st Cir. 2024).

The State's disclaimer is thus nothing more than "artful crafting" that cannot sever the nexus between the alleged PFAS contamination and 3M's federal activities. *Maryland*, 130 F.4th at 389, 393.

### D. The Causation Questions Must Be Resolved By A Federal Factfinder.

As 3M explained in its opening brief, the State's disclaimer cannot relieve the factfinder from determining whether the State has proved the alleged PFAS contamination at a particular site is attributable to PFAS compounds from non-AFFF sources, rather than indistinguishable PFAS compounds from MilSpec AFFF. 3M Br. 28–29. The State admits that the "[c]ommingling" of PFAS from different sources will require the factfinder to determine the source of the alleged contamination, but the State insists that presents an "ordinary" question of "causation" that does not require a "federal forum." State Br. 2, 11, 19 n.3, 24, 49–54. That argument makes no sense. 3M has plausibly alleged that there is no ready way to distinguish between PFAS from AFFF and non-AFFF sources, so any judgment in the State's favor would necessarily hold 3M liable for conduct that 3M undertook for the federal government. 3M Br. 40. And even if the State could distinguish between PFAS based on source, a *federal* factfinder would need to consider and weigh the evidence. That is because the answers to those "challenging causation question[s]" determine the availability and scope of 3M's federal government-contractor defense. *Maryland*, 130 F.4th at 391; *see* 3M Br. 40–41;

16

*Raoul*, 111 F.4th at 849; *Baker*, 962 F.3d at 945 n.3. Calling it a determination about the scope of the disclaimer does not change that reality. If the factfinder decides that there is no PFAS from MilSpec AFFF at a site, that finding defeats 3M's *federal* defense as to that site. And if that factfinding is done erroneously, 3M will have been erroneously denied a valid federal defense. Such factfinding therefore needs to occur in a federal forum.

The State further objects that allegations of indistinguishability go "to the merits of the case . . . rather than jurisdiction." State Br. 21. The State's attempt to divorce the two is a blatant attempt to ignore 3M's theory of the case, *see id.* at 19 n.3, which the State agrees the Court cannot do, *id.* at 18; *see Agyin*, 986 F.3d at 175, 180–81. Put differently, the State argues that, because it thinks it will win on the merits of 3M's federal-contractor defense, that defense does not belong in federal court. But questions about "the factual sufficiency of the defendant's defense" belong in federal court where, as here, a defendant acting under a federal officer raises a federal defense to claims challenging its federal conduct. *Cuomo*, 771 F.3d at 116. As the Fourth and Seventh Circuits have squarely held, "merits questions" that drive the availability of federal defenses for actions taken under federal authority "belong in federal court." *Maryland*, 130 F.4th at 392; *Baker*, 962 F.3d at 944–46 & n.3.

The State also insists that "allocation between non-AFFF PFAS and AFFF PFAS" will be entirely "unnecessary and irrelevant" because the State only needs to prove the presence of non-AFFF PFAS to recover. State Br. 41 n.5, 50–51. That over-simplistic view is incorrect and presumes the answer to a highly debatable question about the scope of 3M's federal defense. 3M could just as plausibly assert—and has—that if there is any MilSpec AFFF PFAS at a site, 3M has a complete federal defense. Determining whether the State or 3M is correct on that issue of federal law—or whether the truth lies in between—is a job for a federal court.

### E. This Court Should Not Create A Circuit Split.

The State objects that "no controlling caselaw" supports 3M's view. State Br. 34–35. Even setting aside this Court's decision in *Cuomo*, which directs that a federal court must decide the factual sufficiency of a federal defense, 771 F.3d at 116, case after case is on 3M's side. 3M Br. 30–35. And the State offers no meaningful response to that precedent. This Court should follow those well-reasoned decisions rather than create a circuit split.

***Fourth Circuit.*** As explained, the Fourth Circuit recently and squarely endorsed 3M's theory of removal in a nearly identical case. Maryland and South Carolina each employed the same practice of filing two overlapping suits against 3M for alleged PFAS contamination of their natural resources. And just like

18

Connecticut, those States purported to disclaim recovery for PFAS stemming from AFFF sources in one of those two suits, implicitly acknowledging that any case seeking to recover for AFFF-related PFAS—or for PFAS contamination generally in circumstances where AFFF-related PFAS is allegedly part of the problem— belongs in federal court. *Maryland*, 130 F.4th at 385–86. The Fourth Circuit rejected the States' attempts to divide-and-evade federal jurisdiction, concluding that "the States' artful pleading does not trump 3M's theory for removal" based on 3M's allegations that "PFAS from 3M's non-AFFF products indistinguishably commingled with the PFAS from 3M's Military AFFF." *Id.* at 386, 390–92. That reasoning applies here step for step.

Remarkably, the State does not get around to discussing *Maryland* until page 40 of its brief. Even then, it incorrectly dismisses the decision as "inapposite." State Br. 40. First, the State says the Fourth Circuit's nexus test differs from this Court's, requiring only that "the 'relevant conduct relat[e] to a contractor's federal work.'" *Id.* at 40–41 (quoting *Maryland*, 130 F.4th at 389). As explained above, that is incorrect. The *statute* directs that federal conduct need only "relat[e] to" the charged conduct, 28 U.S.C. § 1442(a)(1), and this Court's precedent is in accord, *see supra* at 10. The Fourth Circuit assessed whether there was a "causal connection" or a "nexus" between the suits and 3M's federal activities, *Maryland*, 130 F.4th at 389—

19

the same test this Court applies, *see Isaacson*, 517 F.3d at 137 ("causal connection");

*Tong*, 83 F.4th at 145 n.7 ("nexus").[3]

Eventually, the State betrays all pretense and openly invites this Court to create a circuit split, asserting that the Fourth Circuit was "simply wrong."  State Br. 42.  The State reprises its argument that "the charged conduct" is "entirely separate from the federally directed conduct," even as it concedes that "commingling and causation" questions can serve as a basis for removal if they "necessarily require the court to determine the scope of the officer's official duties."  *Id.* at 42–43.  As the Fourth Circuit held, that is the case here.  *Maryland*, 130 F.4th at 389–92.  The State provides no good reason for this Court to break from the Fourth Circuit—a step this Court is "reluctant" to take.  *Lozada v. United States*, 107 F.3d 1011, 1016 (2d Cir. 1997).  The Court should instead further "the interests of national uniformity" and follow *Maryland*'s well-reasoned analysis.  *Campos v. LeFevre*, 825 F.2d 671, 675 (2d Cir. 1987).

---

[3] Repeating its misguided argument that no apportionment will be necessary here, the State suggests that *Maryland* is distinguishable because the States there might have "represented to the court that the factfinder would need to 'apportion' PFAS contamination between AFFF and non-AFFF sources."  State Br. 41 n.5.  But Maryland and South Carolina actually made the exact opposite argument.  *See* Brief of Appellees 6–7, *Maryland v. 3M Co.*, No. 24-1218 (4th Cir. July 8, 2024) (3M's arguments "can be advanced at trial without any need to . . . apportion damages or injunctive relief to AFFF sources").  The Fourth Circuit rightly rejected that argument.  *See supra* at 8, 18–19.

*Seventh Circuit.*  The State invites this Court to break not just with the Fourth Circuit in *Maryland*, but the Seventh Circuit in *Raoul* and *Baker*.  In those decisions, the Seventh Circuit held that a federal government-contractor defense remains "viab[le]" even when a plaintiff "disclaim[s]" recovery for certain contamination, because "a factfinder would need to apportion the contamination" between the alleged sources.  *Raoul*, 111 F.4th at 848–49.  That task presents "'difficult causation question[s] that a federal court should . . . resolve.'"  *Id.* at 849 (quoting *Baker*, 962 F.3d at 945 n.3).

The State reprises the district court's attempt to distinguish *Raoul* factually because Illinois "only sought to recover for contamination at a single location."  State Br. 43.  But that difference cuts *in favor* of removal, not against it.  3M Br. 43.  Because the State here seeks to "recover[] for mixed PFAS contamination from numerous geographic locations" rather than a "single, geographically limited facility," it is more likely that this suit will implicate commingled PFAS from MilSpec AFFF.  *Maryland*, 130 F.4th at 392.  The State does not contest that 3M needs to allege a colorable federal defense only as to one claim or site for the entire suit to be removable.  *See* 3M Br. 41–42.  It follows that adding *more* sites makes removal more likely.

Next, the State misreads *Raoul* to say "that state courts" may "characterize the sources of different PFAS" when the State disclaims recovery for PFAS

contamination from AFFF.  State Br. 44.  But Illinois's case could proceed in state court because Illinois agreed it could recover only if the evidence showed that the contamination at that single site was "*wholly derived*" from non-AFFF sources, such that "a factfinder will not need to apportion the PFAS contamination between sources."  111 F.4th at 849 (emphasis added).  The State has pointedly not made that drastic concession here.  Rather, the State here plainly "envision[s] recovering for mixed PFAS contamination from numerous geographic locations," so *Raoul* (and *Maryland*) therefore directs that this case "belong[s] in federal court."  *Maryland*, 130 F.4th at 392 (discussing *Raoul*, 111 F.4th at 848–49).[4]

The State repeats the district court's purported basis for distinguishing *Baker*. But *Baker* and this case are on all fours.  3M Br. 33–34, 44–45.  There, the plaintiffs disclaimed recovery for contamination from Freon-12 produced for the federal government, but still sought to recover for alleged lead and arsenic contamination from other products.  962 F.3d at 945 n.3.  Here, the State disclaims recovery for contamination from AFFF products, but still seeks to recover for chemically indistinguishable PFAS compounds that stem in part from those products.

A decision for the State would thus split from the Seventh Circuit too.

---

[4] 3M does not concede that a *Raoul*-style concession eliminates federal jurisdiction. 3M Br. 33 n.2.  This case, however, does not present that question.

***First Circuit.*** In *Express Scripts*, the First Circuit held that a plaintiff's attempt to hold Caremark liable for one single, "indivisib[le]" course of negotiations—"an important facet of Caremark's 'theory of the case' that must be 'credited' in evaluating removal," 119 F.4th at 189 (quoting *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999)) (alteration omitted)—made the case removable. The State insists that "the conduct is divisible" here. State Br. 37. That argument improperly shifts the focus away from the PFAS contamination alleged in the State's complaint. *See supra* at 6–8. And, once again, it ignores 3M's theory of removal. The district court in this case rightly recognized that the "federal and non-federal activities are arguably intertwined"—a point the State conveniently overlooks. SA12. If the State's disclaimer were credited, a state court could hold 3M liable for the actions it took for the federal government, "no matter what the disclaimer says." *Express Scripts*, 119 F.4th at 191–92. Ruling for the State would thus require rejecting the First Circuit's reasoning too.

***District courts.*** District-court decisions also support 3M's view. *Nessel v. Chemguard, Inc.* rejected Michigan's attempt to disclaim recovery for contamination from MilSpec AFFF while seeking recovery for contamination from commercial AFFF. 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021). The State implausibly argues that *Nessel* is different "because the disclaimed conduct (production of military AFFF) and the charged conduct (production of consumer

AFFF) was indistinguishable." State Br. 38. But the same is true here: The alleged contamination was caused by indistinguishable PFAS compounds from MilSpec AFFF and non-AFFF sources.

*Curiale v. A. Clemente, Inc.* held that a chemical manufacturer could present a different causal source as part of its federal defense in federal court even though the plaintiff had supposedly "disclaim[ed] harm resulting from" federal activities. 2023 WL 4362722, at *6 (D.N.J. July 5, 2023). The State dismisses that disclaimer as circular, State Br. 32–33, but *Curiale*'s reasoning applies here—like the State, the plaintiff there sought to recover for "chemicals" used in products for "the government," despite its disclaimer, 2023 WL 4362722, at *6.

***The State's cases.*** The little affirmative support the State offers falls short.

The State cites *New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215 (D.N.H. 2023), which allowed New Hampshire to split its claims based on a disclaimer. State Br. 29. 3M has already explained why that decision was wrong and has been undermined by the First Circuit's subsequent decision in *Express Scripts*. 3M Br. 46–47. It is also inconsistent with the Fourth and Seventh Circuits' decisions.

Next, the State cites a Third Circuit case in which the City of Hoboken sued oil companies for alleged climate-change injuries, while disclaiming that it was "suing over emissions caused by fuel provided to the federal government." *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 712–13 (3d Cir. 2022); State Br. 34. That

24

was a "global" case where "less than 1/800th" of the conduct was government related. 45 F.4th at 713. *Hoboken* concluded that such a "small island" could be "carve[d] out" and therefore refused—rightly or wrongly—"to hang [its] jurisdiction on so small a slice of the pie." *Id.* By contrast, no such "carv[ing] out" is possible here, *id.*, where the State seeks to recover at multiple sites for alleged contamination caused by commingled PFAS from both non-AFFF and AFFF sources, 3M Br. 23–25; *see Maryland*, 130 F.4th at 390.

Finally, the State cites a handful of cases that it never even argues are analogous to this case. State Br. 29–32. The Fifth Circuit's decision in *St. Charles Surgical Hospital, LLC v. Louisiana Health Service & Indemnity Co.* said that courts respect express disclaimers that are not "merely 'artful pleading designed to circumvent federal officer jurisdiction.'" 990 F.3d 447, 451 (5th Cir. 2021). But the court did not decide whether that particular disclaimer was effective. As explained, the State's is not. *See supra* at 14–18. The State's other cases are district-court decisions, most of which predate the circuit-court decisions cited above and involve personal injuries. State Br. 29–32. The State understandably does not press the relevance of those decisions.

In short, 3M plausibly alleges a sufficient nexus between the charged conduct and 3M's federal activities.

## II. 3M Has Asserted A Colorable Federal Defense, And The State's Repeated Nexus Arguments Still Lack Merit.

3M also asserted a colorable federal government-contractor defense. *See supra* at 5; 3M Br. 48–52. The State does not dispute that 3M produced MilSpec AFFF for the U.S. military or that the relevant specifications were reasonably precise. Nor does it dispute that 3M's defense with respect to MilSpec AFFF PFAS is at least colorable; indeed, it cannot do so, given that 3M's colorable federal defense is the only explanation for the State's decision to file two overlapping suits. Instead, the State's argument depends entirely on the disclaimer—rehashing assertions that with the disclaimer its case implicates only "ordinary causation" questions and state-law claims to which 3M has no federal government-contractor defense. State Br. 46–54. The State's arguments are unavailing for all the reasons explained above and fare no better when repackaged under the colorable-federal-defense prong. The State cannot wish away 3M's colorable federal defense by issuing a disclaimer and ignoring 3M's well-pleaded removal petition.

The State asserts that the Fourth Circuit's decision in *Maryland* "never reached this issue." State Br. 48. But that is not true. The Fourth Circuit was clear that giving "dispositive" weight to the disclaimers is just as "misguided" when applied to the colorable-federal-defense element as it is with respect to the nexus element. *Maryland*, 130 F.4th at 393.

Beyond these repackaged nexus arguments, it is no surprise that the State offers no independent challenges to this element of removal. The State did not object to removal of its companion "AFFF" suit on this basis. 3M Br. 50. And, before the district court, the State conceded that removal "rises or falls on whether th[e] disclaimer is effective." JA269. The State has thus forfeited any other arguments that might be lodged as a basis to defeat 3M's allegations of a colorable federal defense. *See United States v. Gomez*, 877 F.3d 76, 94–95 (2d Cir. 2017). Because the State's arguments against 3M's colorable federal government-contractor defense fail, there is no reason to remand on this issue. This Court should reverse.

## CONCLUSION

For these reasons, 3M respectfully requests that the Court reverse the district court's order granting the State's motion to remand.

Dated: August 12, 2025

Respectfully submitted,


_/s/ Lauren R. Goldman_

Paul D. Clement
Nicholas A. Aquart
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

Lauren R. Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
lgoldman@gibsondunn.com

Amir C. Tayrani
Zachary Tyree
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, DC 20036
(202) 955-8500
atayrani@gibsondunn.com
ztyree@gibsondunn.com

*Counsel for 3M Company*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this brief complies with the applicable typeface, type style, and type-volume limitations. This brief was prepared using a proportionally spaced type (Times New Roman, 14-point font). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 6,500 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

August 12, 2025          Respectfully submitted,

                            */s/ Lauren R. Goldman*

                            Lauren R. Goldman
                            GIBSON, DUNN & CRUTCHER LLP
                            200 Park Avenue
                            New York, NY 10166
                            (212) 351-2375
                            lgoldman@gibsondunn.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2025, I caused a true and correct copy of this brief to be filed electronically through the Court's CM/ECF system, which will send a notice of filing to all registered users.

> */s/ Lauren R. Goldman*
> Lauren R. Goldman
> GIBSON, DUNN & CRUTCHER LLP
> 200 Park Avenue
> New York, NY 10166
> (212) 351-2375
> lgoldman@gibsondunn.com