**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

———————————————

No. 25-10746

———————————————

THE TOWN OF PINE HILL, ALABAMA,

*Plaintiff-Appellee,*

*versus*

3M COMPANY,

*Defendant-Appellant,*

DAIKIN AMERICA, INC., et al.,

*Defendants.*

———————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 2:24-cv-00284-KD-N

———————————————

Before NEWSOM, KIDD, and WILSON, Circuit Judges.

WILSON, Circuit Judge:

The Town of Pine Hill (Pine Hill) sued 3M Company (3M) for state-law claims related to contamination of the Alabama River from products containing per- and poly-fluoroalkyl substances (PFAS). 3M removed this case to federal court, asserting jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Pine Hill moved to remand to state court because it had disclaimed any relief from any contamination stemming from aqueous film forming foam (AFFF) products, which 3M produced for the United States military. The district court agreed that remanding to state court was appropriate and explained that the heart of Pine Hill's claims was 3M's manufacturing and supplying of PFAS products to Alabama paper mills, which was not undertaken in color of federal office.

After review, and with the benefit of oral argument, we find that the district court erred in its review of 3M's removal allegations. The court should have credited 3M's theory of the case, and if it had done so, it would have found that 3M sufficiently alleged facts supporting jurisdiction under the federal officer removal statute. Thus, we vacate the district court's decision and remand for further proceedings in the district court.

## I.

3M produces products containing PFAS that were sold to International Paper Company. At International Paper's paper mills, workers discharged PFAS-containing wastewater into the Alabama River and its tributaries. Pine Hill obtains its raw water from the Alabama River, which it then treats to provide drinking water to

its residential and commercial customers.  PFAS are difficult to remove from the drinking water with Pine Hill's current water filtration system.  To properly remove PFAS from the water and monitor PFAS levels, Pine Hill must install a new filtration system.

Pine Hill sued 3M[1] in Alabama state court, alleging claims of negligence, wantonness, private nuisance, public nuisance, and trespass.  Pine Hill expressly disclaimed any federal causes of action related to PFAS contamination from AFFF sources.  After being served with Pine Hill's complaint, 3M removed to the Southern District of Alabama, asserting jurisdiction under the federal officer removal statute,[2] 28 U.S.C. § 1442(a)(1).

In its notice of removal, 3M explained that products containing PFAS were used in AFFF, which is a firefighting foam that the military developed.  Because the military could not create enough AFFF to meet its own needs, it required help from chemical manufacturers like 3M to maintain a sufficient supply.  The military developed detailed specifications for chemical manufacturers like 3M to follow.  3M manufactured and sold AFFF to the military for over thirty years, including to Maxwell Air Force Base near Montgomery, Alabama.[3]

---

[1] Pine Hill also sued other defendants who are not parties to this appeal.

[2] 3M also asserted diversity jurisdiction, which the district court found did not exist.  3M does not appeal that determination.

[3] Private individuals, states, and public water providers have sued 3M for product liability claims related to the use of AFFF products at various government locations where the PFAS compounds were released into local groundwater,

3M alleged that AFFF was released from Maxwell Air Force Base, which was located "roughly the same distance from Pine Hill along the Alabama River" as the paper mills. Referencing a government report in its notice of removal, 3M noted that the groundwater at Maxwell contained PFAS from AFFF release areas and flowed towards the Alabama River. The PFAS from the paper mill commingled with PFAS from AFFF sources and likely contributed to the alleged contamination of Pine Hill's water. 3M also asserted that because of the inability to isolate the location of where the PFAS contamination came from—either an AFFF or non-AFFF source—3M could invoke the federal government contractor defense.

Pine Hill moved to remand to state court, arguing that the AFFF disclaimer negated the causal connection requirement under the federal officer removal test. The court found that remanding the case to state court was appropriate and held that the heart of Pine Hill's claims was 3M's manufacturing and supplying of PFAS products to Alabama paper mills, and that conduct was not undertaken in color of federal office. 3M timely appealed.

## II.

"We review *de novo* issues of removal jurisdiction." *State v. Meadows*, 88 F.4th 1331, 1338 (11th Cir. 2023).

---

contaminating the drinking water. Several lawsuits have been centralized into a Multidistrict Litigation (MDL) in the District of South Carolina.

### III.

The federal officer removal statute allows removal of a civil action commenced in state court to federal district court for "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

Government contractors may use this defense, but they "must satisfy a three-pronged test to determine whether it may effect removal." *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017). First, the contractor "must show that it is a person within the meaning of the statute who acted under a federal officer." *Id.* Second, the contractor "must show that it performed the actions for which it is being sued under color of federal office." *Id.* Third, the contractor "must raise a colorable federal defense." *Id.*

3M argues that the district court erred in holding the federal officer removal statute did not apply here because 3M has plausibly alleged in its notice of removal that it has met the three-pronged test. We will address each prong in turn.

### A.

Under the first prong, the contractor must show that it is "any person acting under [a federal] officer." 28 U.S.C. § 1442(a)(1). "The phrase 'acting under' is broad and thus we 'liberally construe' this portion of § 1442(a)(1)." *Caver*, 845 F.3d at 1142 (quoting *Watson v. Philip Morris Co.*, 551 U.S. 142, 147 (2007)). When a private

6                    Opinion of the Court                    25-10746

person's actions "involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior," then that private person was "acting under" a federal officer. *Watson*, 551 U.S. at 152. "In other words, the private person must help federal officers fulfill a basic governmental task that the government otherwise would have had to perform." *Caver*, 845 F.3d at 1143.

3M argues that it meets the first prong of the test required for removal because it acted under federal authority when it was manufacturing AFFF for the government according to the military specifications that used PFAS. Pine Hill responds that 3M is not currently acting under federal authority because 3M has phased out production of AFFF. Pine Hill relies on this court's decision in *Meadows* to say that the federal officer removal statute does not apply to former federal officers and past conduct. We agree with 3M that it was acting under a federal officer. Our decision in *Meadows* is not as narrow in the civil context as Pine Hill asserts.

In *Meadows*, we held that former White House Chief of Staff Mark Meadows, who had been indicted in Georgia state court, could not remove his criminal case because "[t]he text of section 1442(a)(1) applies to only current officers." 88 F.4th at 1338. "It is silent on the removal of a prosecution commenced against a *former* officer of the United States. The ordinary meaning of 'officer' does not include 'former officer.'" *Id.*

But we emphasized the type of case that we were reviewing—whether to remove a state criminal prosecution. *See id.* at 1342–43. We recognized that "[t]he Supreme Court has instructed

that federal courts must 'retain[ ] the highest regard for a State's right to make and enforce its own criminal laws.'" *Id.* (quoting *Arizona v. Manypenny*, 451 U.S. 232, 243 (1981)). "The jurisdiction to try state offenses should not 'be wrested from [state] courts' lightly." *Id.* at 1343 (quoting *Colorado v. Symes*, 286 U.S. 510, 518 (1932)). *Meadows* focused on what "officer" meant under the statute, but we did not comment on what sort of conduct could give rise to civil liability of individuals or corporations who formerly acted under federal officers.

Notably, the Supreme Court has never delved into whether the federal officer removal statute would apply if a person or company acting under a federal officer was sued civilly for past conduct. Instead, the Supreme Court essentially assumes that companies can invoke the federal officer removal statute when companies are being sued for past conduct that they carried out while acting under a federal officer. *See, e.g.*, *Willingham v. Morgan*, 395 U.S. 402, 409 (1969); *Watson*, 551 U.S. at 151–52. This assumption suggests that the Supreme Court allows the doctrine to apply to cases in which the conduct occurred well before the litigation commenced. And its continued silence suggests that those who were acting under federal officers, even for past conduct, may still rely on the federal officer removal statute.

Recently, the Supreme Court vacated and remanded a decision from the Fifth Circuit that narrowly interpreted the federal officer removal statute. *Chevron USA Inc. v. Plaquemines Par.*, 608 U.S. --, 146 S. Ct. 1052, 1063 (2026). In that case, several parishes

8                    Opinion of the Court                    25-10746

sued Chevron, the successor of the Texas Company, for violating a statute that required permits for drilling in the ocean off the coast. *Id*. at 1058–59.  Relevant here, the drilling was done during World War II, so the parishes were suing for civil liability based on past conduct.  *Id*. at 1059.  Most of the Supreme Court's opinion focuses on the second prong, but as with the other cases, the Supreme Court broadly permits the removal of cases in which the conduct occurred in the past.  This supports a broad reading of the statute's "acting under" language, in line with our own precedent.  *See, e.g.*, *Caver*, 845 F.3d at 1142.

Considering how the Supreme Court has resolved similar federal government contractor cases, we find 3M has sufficiently alleged that it was a temporary contractor or agent that was "acting under" a federal officer because their purpose was "to assist, or to help carry out, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152 (emphasis omitted).  Thus, 3M met the first prong of the federal officer removal statute.

*B.*

Under the second prong, the contractor "must show a causal connection between what the officer has done under asserted official authority" and the claims in the suit filed against it.  *Caver*, 845 F.3d at 1142 (internal quotation marks omitted).  The court "must determine whether that act was taken under color of law," which "requires only a []'connection' or 'association' between the act in question and the federal office." *Id*. at 1144. "[A] removing defendant need not show that his federal duties specifically required or

25-10746                    Opinion of the Court                    9

strictly caused the challenged conduct." *Plaquemines*, 146 S. Ct. at 1060. As a result, "the hurdle erected by this requirement is quite low." *Caver*, 845 F.3d at 1144 (citation modified).

We credit the government contractor's theory of the case. *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999). And we must determine what the "act" in question is by looking at the "gravamen" of the claims. *Meadows*, 88 F.4th at 1344; *see also Plaquemines*, 146 S. Ct. at 1061.

3M argues that the district court impermissibly narrowed the scope of Pine Hill's charged conduct to 3M's manufacturing of PFAS products and its supply of those products to International Paper for use in its Alabama paper mills. The court should have credited 3M's theory of the case that the resulting contamination related back to the PFAS contamination as a whole and not only the sale of the PFAS products to paper mills. Pine Hill disagrees and asserts that the district court correctly focused on the supply of PFAS products to paper mills and not the AFFF production.

We agree with 3M. When reviewing the complaint, the court does not look at the discrete acts alleged in the complaint but examines "the 'act' anchoring removal" and how it is defined by the "'claim' brought against the defendant." *Meadows*, 88 F.4th at 1344. Here, Pine Hill's state-law claims all focus on the effect of PFAS contamination to its water supply. While Pine Hill states that the act is the PFAS contamination from paper mills, its claims center on a much broader act—the overall PFAS contamination of the Alabama River.

Because the gravamen of Pine Hill's complaint is much broader than it explicitly alleges, 3M correctly argues that it has plausibly alleged that there is a clear connection between the alleged contamination and 3M's federal conduct. To support this, 3M points to the allegation that 3M provided AFFF to Maxwell Air Force Base, which is near one of the paper mills that Pine Hill alleges is a possible source of PFAS contamination. And since we are considering 3M's allegations from its notice of removal, we credit 3M's theory of the case and agree that 3M has properly alleged a connection. *See Acker*, 527 U.S. at 432.

Pine Hill contests this conclusion by saying that 3M has not shown that it sold AFFF to Maxwell Air Force Base or that there is any evidence to show that the AFFF from Maxwell polluted the Alabama River.[4] While 3M does not directly state that it provided AFFF to Maxwell, it does allege that it sold that product to the military for over thirty years, so it is a logical inference at this stage that 3M plausibly supplied the product to Maxwell. Further, the government inspection report that 3M includes in its notice of removal identifies that the groundwater at Maxwell contained PFAS from AFFF release areas and flowed towards the Alabama River. Considering 3M's allegations in its notice of removal, the PFAS contamination could have occurred from 3M's supply of AFFF which was produced for the government. Thus, 3M has plausibly

---

[4] 3M also states in its notice of removal that Pine Hill has filed a lawsuit in the MDL for the PFAS contamination related to the AFFF from Maxwell Air Force Base and other military facilities.

alleged that there is a clear connection between the alleged contamination and 3M's federal conduct.

Again, resisting this conclusion, Pine Hill argues that its disclaimers in its complaint unambiguously sever the causal connection because 3M's conduct for the military (production of AFFF) is distinct from what Pine Hill seeks to hold 3M accountable for (supplying consumer grade PFAS to the paper mills). Here are the relevant provisions from Pine Hill's complaint:

> 40. Pine Hill does not allege contamination of drinking water sources occurred through Aqueous Film-Forming Foam. Contamination found in Pine Hill's drinking water and drinking water source includes PFAS not found in Aqueous Film-Forming Foam.

> 73. Pine Hill is not seeking to recover through this Complaint any relief for contamination or injury related to Aqueous Film Forming Foam that contains PFAS.

We have not addressed whether an express waiver of certain claims can sever the causal nexus requirement for this second prong. But the First Circuit has explained that the disclaimer doctrine can be distinguished into two categories: "(1) express disclaimers of the claims that serve as the grounds for removal; and (2) mere artful pleading for purposes of circumventing federal officer jurisdiction." *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187 (1st Cir. 2024) (internal quotation marks omitted).

A valid disclaimer must fully eliminate any ground for federal officer removal so that if the case is remanded a state court would not need to decide whether the defendant acted under federal authority. *Id.* This can include disclaimers that clearly exclude certain factual scenarios—such as limiting the relevant time or location—so that the alleged injuries could not have occurred under a federal officer's direction. *Id.*

By contrast, disclaimers that amount to artful pleading do not effectively preclude removal. *Id.* at 187–88. "A disclaimer that requires a state court to determine the nexus 'between the charged conduct and federal authority' is not a valid means of precluding removal." *Id.* at 188 (quoting *Willingham*, 395 U.S. at 409). An ineffective disclaimer occurs when the plaintiff has disavowed claims based on the defendant's actions that would fall under the color of office but still seeks to recover based on those official acts. *Id.* So "courts must determine whether, despite the disclaimer, the facts of the case make it likely that the plaintiff will hold a defendant liable for its official acts for which it possesses a colorable federal defense." *Id.*

We find the First Circuit's reasoning to be persuasive. While we agree with the First Circuit that disclaimers can sever the connection requirement at the second prong, the disclaimer must be more than a strategy to avoid the federal officer removal statute. And here, we find that Pine Hill's disclaimers amount to artful pleading because 3M plans to assert that one of the causes of the PFAS contamination is from AFFF that was released at Maxwell Air

25-10746                Opinion of the Court                13

Force Base.  Allowing Pine Hill's disclaimer to be dispositive on the question of causation would require an Alabama state court "to determine the nexus between the charged conduct and [3M's] federal authority" which the First Circuit persuasively explains "is not a valid means of precluding removal." *Id.* at 188 (internal quotation marks omitted).

Unsurprisingly, 3M has been litigating this issue in several jurisdictions because of its prominent role as an AFFF producer for the military for several decades.  *See, e.g., Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 847 (7th Cir. 2024); *New Hampshire v. 3M Co.*, 132 F.4th 556, 557 (1st Cir. 2025); *Maine v. 3M Co.*, 159 F.4th 129, 130 (1st Cir. 2025); *Maryland v. 3M Co.*, 130 F.4th 380, 385–86 (4th Cir. 2025).[5]  We find that our decision is in good company with the

---

[5] The two First Circuit cases were resolved on different grounds.  First, when New Hampshire sued 3M, the First Circuit affirmed the district court's grant of a motion to remand to state court because 3M's removal was untimely. *New Hampshire v. 3M Co.*, 132 F.4th 556, 561–63 (1st Cir. 2025).  Then, when Maine sued 3M, the First Circuit reversed the district court's grant of a motion to remand because it held that 3M had met the requirements of the federal officer removal statute.  *Maine v. 3M Co.*, 159 F.4th 129, 138–39 (1st Cir. 2025). The First Circuit focused on the third prong—that 3M had a colorable federal defense.  *Id.* at 139.

The Seventh Circuit affirmed the grant of a motion to remand to state court based on a concession at oral argument.  *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 849 (7th Cir. 2024).  Illinois "clearly and unequivocally conceded at oral argument that it would not seek relief against 3M for mixed PFAS contamination," and if any "morsel of contamination" came from the military

14                    Opinion of the Court                    25-10746

Fourth Circuit in that a disclaimer is not dispositive on whether the federal officer removal statute applies.  *See Maryland*, 130 F.4th at 390.

Thus, 3M met the second prong of the federal officer removal statute.

## C.

For the third prong, the contractor must raise a colorable federal defense.  *Caver*, 845 F.3d at 1142.  Like the second prong, this is not a high bar.  *Id.* at 1145.  "The colorable federal defense need only be plausible; its ultimate validity is not to be determined at the time of removal."  *Id.* (internal quotation marks omitted).

3M asserts that it would invoke the federal government contractor defense that limits the state tort liability of government contractors.  Government contractors are not subject to state tort liability when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988).

---

base, then Illinois would be barred from recovery.  *Id.*  This is akin to an express disclaimer that protects the state court from deciding whether the defendant acted under federal authority.

We agree that 3M's notice of removal plausibly alleges the three requirements.[6] First, 3M plausibly alleges that the "Naval Sea Systems Command participated in the design of AFFF" where it "created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling," and that such specifications were "reasonably precise." Second, 3M plausibly alleges that 3M's products "appeared on the D[epartment of Defense] Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that [it] conformed to the" required specifications of the military. Third, 3M plausibly alleges it did not know of any dangers that the government wasn't already aware of because the government knew that "AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues." Because it is plausible that the PFAS contamination at issue could have come from Maxwell Air Force Base,

---

[6] Pine Hill asks us to look outside the record to the MDL court's determination that 3M did not use the approved precise specification for the AFFF. As 3M notes, Pine Hill only facially challenged 3M's notice of removal, so we only look at the complaint and the notice of removal. Further, the MDL court explained that factual disputes existed at the summary judgment stage so 3M could not establish the defense at that time. *In Re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:24-CV-03794, 2026 WL 883873, at *3 (D.S.C. Mar. 31, 2026). "The Court did not rule, however, that 3M could *never* establish the defense." *Id.*

16                    Opinion of the Court                    25-10746

it is plausible that 3M could be shielded from liability if it is found that the PFAS contamination was from AFFF sources.

Pine Hill pushes back by arguing that the issue here involves the contamination of the Alabama River by PFAS products supplied to the paper mills.  But because it is plausible that AFFF from the Maxwell Air Force Base at least partially contaminated the Alabama River—the source where Pine Hill draws its water supply—Pine Hill cannot escape the implication of the federal defense.

Thus, 3M has met the third prong of the federal officer removal statute.

### IV.

The district court erred in finding that 3M's removal wasn't proper under the federal officer removal statute.  Thus, the district court's order remanding the case to state court is **VACATED** and we **REMAND** for further proceedings in the district court.

25-10746                 NEWSOM, J., Concurring                 1

NEWSOM, Circuit Judge, concurring in the judgment:

I concur in the judgment vacating the district court's decision and remanding for further proceedings. I write separately because in two respects the path I would take to vacatur is different (if only slightly) from the majority's.

The majority correctly explains that a private party asserting jurisdiction under the federal-officer removal statute "must satisfy a three-pronged test." Maj. Op. at 5 (quoting *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017)). I'll call those three the "acting under" prong, the "relates to" prong, and the "colorable federal defense" prong. *See id.* I'd apply the first two a bit differently than the majority seems to.

**I**

Under the first prong, the private party must demonstrate that it is "acting under [a federal] officer." 28 U.S.C. § 1442(a)(1). We've said that in order to meet this standard, the private party must make two showings. First, it must show that it was engaged in an effort "to assist, or to help carry out, the duties or tasks of the federal superior." *Caver*, 845 F.3d at 1143 (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 152 (2007)) (emphasis omitted). Second, "the relationship between the private person and the federal officer must be one of 'subjection, guidance, or control.'" *Id.* (quoting *Watson*, 551 U.S. at 151).

At the outset, Pine Hill contends that because 3M stopped selling AFFF to the military in 2000, the company is no longer "*acting*"—present tense—under the authority of a federal officer. And

that matters, Pine Hill says, because in *Georgia v. Meadows* we held that the federal-officer removal statute "does not apply to *former* federal officers." 88 F.4th 1331, 1338 (11th Cir. 2023). For its part, the majority distinguishes *Meadows* on the ground that our decision there applied only to the attempted removal of a state *criminal* prosecution, and "did not comment on what sort of conduct could give rise to *civil* liability of individuals or corporations who formerly acted under federal officers." Maj. Op. at 7 (emphasis added).

I'm not sure that the majority's distinction of *Meadows* is wrong, but I don't think it's necessary. The fact is that 3M is very much still acting—in the present tense—under the authority of a federal officer. Official government reports reflect that as of the time of this writing, 3M has been awarded more than 2000 federal contracts worth tens of millions of dollars since the start of fiscal year 2026 alone. *See* USASpending, *3M Profile*, https://perma.cc/5SM8-H7X8. Hundreds of those contracts are for the manufacture of goods. *See id.* And at least some of those goods are required to be produced pursuant to bespoke specifications similar to those that governed the AFFF that 3M once made for the military. *See, e.g., id*; 3M, https://perma.cc/K3NR-PPYU. So 3M qualifies for acting-under status—provided, that is, it satisfies our doctrinal criteria.

It does. First, it seems clear beyond peradventure that in manufacturing bespoke goods for the government, 3M is assisting a federal superior in carrying out its tasks and duties—*i.e.*, "help[ing] federal officers fulfill a basic governmental task that the

government otherwise would have had to perform." *Caver*, 845 F.3d at 1143–44 (analogizing its facts to those in a case where "a corporation that supplied the Navy with turbines satisfied the 'acting under' requirement" (citing *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1179, 1181 (7th Cir. 2012))); *see also Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017) ("[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it manufactured for the government." (emphasis removed)).

To be clear—and circling back briefly to the timing issue—it's of no moment that the production activities that qualify 3M for acting-under status might be different from those with respect to which it's being sued. Section 1442(a)(1) requires only that the case be "against . . . any person acting under" a federal officer "for or relating to *any act* under color of such office . . . ." 28 U.S.C. § 1442(a)(1) (emphasis added). And the statute's broad sweep makes sense. Requiring that the acts targeted in the suit be identical to those in which the removing party is currently engaged would preclude federal-officer removal for all current federal contractors sued for acts related to past assignments. Again, 3M still manufactures tailor-made products for the government. That's enough to show that the company is "assist[ing] or help[ing] carry out[] the duties or tasks of the federal superior." *Caver*, 845 F.3d at 1143 (quoting *Watson*, 551 U.S. at 152).

Second, 3M's relationship with the government qualifies as one of "subjection, guidance, or control." *Id.* (quoting *Watson*, 551

4                    NEWSOM, J., Concurring                    25-10746

U.S. at 151). By requiring 3M to manufacture products to its own specifications, the federal government is enlisting the company to "help[] [it] to produce an item that it needs." *Watson*, 551 U.S. at 153. We needn't grapple with the tougher question whether selling the government off-the-rack goods would satisfy the subjection-guidance-or-control criterion. It's enough that where, as here, a company manufactures products tailor-made to the government's precise specs, it crosses a line from merely complying with regulatory requirements to genuinely performing work "on behalf of the government." *Caver*, 845 F.3d at 1144.

## II

Next up, the relates-to prong. As a baseline, I agree with the majority that to satisfy this second requirement a removing defendant must show some form of "'causal connection between what the officer has done under asserted official authority' and the claims in the suit filed against it." Maj. Op. at 8 (quoting *Caver*, 845 F.3d at 1142). Importantly, though—and the majority recognizes as much—the Supreme Court recently embraced a *very* generous causation standard that "sweeps broadly": The removing defendant need show only "some relation" to the alleged harm that is not "tenuous, remote, or peripheral." *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052, 1060–61 (2026).

My particular reasons for concluding that 3M has met the *Plaquemines*-construed relates-to requirement are a little bit different from the majority's.

25-10746　　　　　　　NEWSOM, J., Concurring　　　　　　　5

**A**

As a preliminary matter, I think it's important to clarify the burden the defendant faces at the removal stage.  Here, Pine Hill insists that because there's no smoking-gun evidence "that any military-grade AFFF manufactured by 3M was supplied to or used at Maxwell [Air Base]" and subsequently made its way into the Alabama River, 3M has failed to prove by a "preponderance" the facts necessary to meet the relates-to requirement.  Br. of Appellee at 9, 13, 20–22.

To be sure, a defendant bears *some* burden to show its entitlement to invoke the federal-officer removal statute, but I think that Pine Hill's "preponderance" standard sets too high a bar.  I say so for two reasons.  First, the Supreme Court has clarified that "demanding an airtight case on the merits in order to show the required causal connection" would "defeat the purpose of the removal statute." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999), *superseded by statute on other grounds by* Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545.  Requiring 3M (at the pleadings stage) to prove by a preponderance of the evidence that its federal activities—opposed to, for example, its sales to private paper mills—caused the river's pollution would likewise encroach into the "merits" and thereby usurp the jury's factfinding role.  Second, and relatedly, Pine Hill's merits-sounding standard contradicts the general statutory prescription that "[a] defendant . . . desiring to remove any civil action" file a "notice of removal" that "contain[s] *a short and plain statement* of the grounds for removal."  28 U.S.C. § 1446(a) (emphasis added); *cf. Dart Cherokee Basin Operating Co.,*

*LLC v. Owens*, 574 U.S. 81, 84 (2014) (holding that a removing party need not submit evidence to support its amount-in-controversy allegation).

At the pleadings stage, it seems to me, 3M need only make a plausible showing that at least some of the alleged pollution of the Alabama River is attributable to its Maxwell-related AFFF sales. And it has done so. In support of its notice of removal, 3M cited (1) government documents that list 3M's products on the Navy's Qualified Products list, (2) a report "identifying PFAS in groundwater resulting from multiple AFFF release areas on the Maxwell base," (3) a note in the same report observing that groundwater "flowed in the direction of the Alabama River," and (4) a scientific study that indicates PFAS levels in the Alabama River increase as one gets closer to Maxwell. Given those data, it's at the very least plausible that the AFFF released from Maxwell came from 3M and that the groundwater that flowed in the direction of the river actually reached it. That's enough.

**B**

As for the "merits" of the relates-to prong, I don't think it's necessary to conclude, as the majority does, that Pine Hill's attempt to disclaim any damages relating to 3M's sale of AFFF to the federal government "amount[s] to artful pleading." Maj. Op. at 12. I think there's a path of less resistance.

The parties vigorously debate the "gravamen" of Pine Hill's complaint. *Compare* Br. of Appellant at 32–34, *with* Br. of Appellee at 23–26. The town asserts that it's suing 3M solely for its conduct

25-10746            NEWSOM, J., Concurring                7

in providing PFAS to paper mills, and as proof it cites its disclaimer of any damages related to 3M's sale of military-grade AFFF to Maxwell. *See* Br. of Appellee at 29–30. Pine Hill's point, of course, is that because its suit is properly understood to focus exclusively on 3M's private-sector manufacturing, it doesn't "relate[] to" its government work in the relevant sense. 3M, by contrast, insists that no matter what sort of relief Pine Hill purports to swear off, a fair reading of the town's complaint betrays a broader and more general focus on 3M's pollution of the Alabama River. *See* Br. of Appellant at 32–34. And the connection between *that* injury and 3M's manufacturing activities for Maxwell Air Base, the company says, is anything but "tenuous, remote, or peripheral." *Plaquemines Parish*, 146 S. Ct. at 1061.

As I see it, no matter how Pine Hill's complaint is conceptualized, the town's suit meets the statutory standard. Even, that is, if we accept Pine Hill's framing—that the gravamen of its complaint is solely about the damages resulting from 3M's paper-mill sales—the suit is still inescapably "relate[d] to" 3M's AFFF sales to the government. The reason is that product liability doesn't exist in the air. Rather, to prevail on (for instance) its negligence claim under Alabama law, the town will have to prove, among other elements, that 3M's conduct proximately caused an injury. *See Hilyer v. Fortier*, 227 So. 3d 13, 22 (Ala. 2017). And to do so, it will necessarily have to prove what portion of its alleged loss is attributable to which of 3M's activities. The need to allocate causation and harm among those activities means that liability for the one necessarily implicates liability for the other.

8                    NEWSOM, J., Concurring                    25-10746

Perhaps a simplified example will make it more concrete: Imagine that 75% of the actual share of pollution is attributable to private-sector paper-mill sales, and 25% to federal-sector AFFF sales—with respect to which 3M claims a federal defense. Imagine further that the pollution causes $10 million of damage. Theoretically, because it has a defense to $2.5 million of that liability, 3M should have to pay only $7.5 million. But if a state-court jury attributes 100% of the pollution to 3M's private-sector activities, and none to its government activities, then the company will be on the hook for the full $10 million. In that scenario, 3M would be deprived of its right to litigate its federal defense in federal court, which is the whole point of the federal-office removal statute.

★ ★ ★

For these reasons, I quite agree with the majority's bottom line: The district court erred in rejecting 3M's effort to invoke the federal-office removal statute. It's just that I reason my way to that conclusion a little bit differently.